**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

---

STATE OF VERMONT,

                Plaintiff,

    v.

3M COMPANY; E. I. DU PONT DE NEMOURS
AND COMPANY; THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC; CORTEVA,
INC.; and DUPONT DE NEMOURS, INC.,

                Defendants.

Case No. 2:25-cv-00660

**NOTICE OF REMOVAL**

JURY TRIAL DEMANDED

---

        Defendant 3M Company ("3M"), by and through undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Superior Court of the State of Vermont, Chittenden Unit, to the United States District Court for the District of Vermont. 3M is entitled to remove this action based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). Although 3M previously removed this action to this Court based on federal officer jurisdiction—and 3M's appeal of the Court's order remanding this case to state court is pending before the Second Circuit—3M is removing this case for a second time because the July 9, 2025 testimony of Dr. Graham Fogg, an expert witness for the Plaintiff State of Vermont ("State"), revealed a separate basis for federal officer removal.

        In this case, the State seeks to hold 3M and others liable for the alleged contamination of Vermont's natural resources and property with chemicals known as PFAS. From the inception of the litigation, the State has insisted that it is not seeking to recover for any sites where any part of the contamination stemmed from products that 3M manufactured for the U.S. Military pursuant to

detailed specifications issued by the Department of Defense. The State took that position in order to prevent 3M from asserting the government contractor defense and exercising its rights under the federal officer removal statute. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ Dr.

Fogg's recent deposition was the result of the State itself choosing to supplement its expert disclosures belatedly and contrary to the then existing scheduling order for this case. That supplemental disclosure, however, did not reveal what Dr. Fogg only conceded at his deposition and represents yet another example of the State avoiding disclosure of the true nature and scope of its claims. 3M is timely filing this Notice of Removal within 30 days of that testimony and to protect its right to litigate this case in federal court (in the event that the Second Circuit affirms the Court's previous remand order).

As further grounds for removing this action, 3M states as follows:

## PRELIMINARY STATEMENT

1.      The State seeks to hold 3M and other Defendants liable in this action based on alleged conduct in designing, manufacturing, marketing, and/or selling per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonic acid ("PFOS"), and perfluorohexane sulfonic acid ("PFHxS"), as well as PFAS-containing products. The State alleges that releases of PFAS in Vermont have resulted in contamination of the State's natural resources and property. *See, e.g.*, Second Amended Complaint ("SAC") ¶¶ 1-12 (attached as Exhibit 1).

2.      Last week, however, it became clear that the alleged widespread PFAS contamination at issue in this action plausibly has resulted in part from the use, storage, and/or

disposal of PFAS-containing aqueous film-forming foams ("AFFF") that 3M and others developed and sold to the U.S. military in accordance with rigorous military specifications ("MilSpec") issued by the Department of Defense ("DOD"). AFFF is a firefighting foam that is highly effective in extinguishing liquid fuel-based fires. AFFF's effectiveness is a result of their PFAS components, including PFOA/PFOS and/or their precursors.

3.    The alleged PFAS contamination at issue in this case plausibly overlaps and is commingled with PFAS from AFFF use at military facilities in Vermont. The State admits that MilSpec AFFF has been used, stored, and/or released at military installations in Vermont: the State itself has brought a separate action (the "AFFF action") to recover for alleged PFAS contamination of wide-ranging sites and natural resources that purportedly has resulted from the use of AFFF at military installations and elsewhere in Vermont. *See, e.g.*, Am. Compl. ¶¶ 113, 328, *State of Vermont v. 3M Co., et al.*, No. 2:19-cv-02281 (D.S.C.) (attached as Exhibit 2) ("AFFF Compl."). Yet the State consistently has sought to maintain that this putative "non-AFFF" PFAS action does not overlap with its "AFFF" action, and has alleged that it disclaims AFFF-related relief in this case. *See* SAC ¶ 13. But the alleged PFAS contamination at issue in this case plausibly overlaps and is commingled with PFAS from AFFF use at military facilities in Vermont despite the State's disclaimer to the contrary.

4.    To avoid removal, the State posited the theory that any alleged contamination in Vermont resulting from PFAS in MilSpec AFFF is limited to a two-mile radius around only certain known AFFF sites. ███████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████ At a minimum, a factfinder will need to determine whether, at each site for which

3

the State seeks recovery, some portion of the contamination is derived from MilSpec AFFF. Under the federal officer removal statute, that determination must be made in federal court.

5.      ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████

6.      As to the alleged PFAS contamination at issue in this case that plausibly has resulted from MilSpec AFFF, 3M intends to assert the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which bars the State from establishing, among other things, liability for the design and manufacture of MilSpec AFFF and for the provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action to have its federal defense adjudicated in a federal forum. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government

otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008). The State has long sought to avoid the impact of the federal officer removal statute with respect to AFFF produced pursuant to military specification but only through this recent deposition testimony has its gambit been exposed.

7.     The State alleges in this action that it "is not seeking to recover through this Complaint any relief for contamination or injury related to [AFFF]" (SAC ¶ 13). ████████████ ██████████████████████████ despite the State's protestations, its requests for relief here *does* encompass alleged damages attributable to PFAS-containing MilSpec AFFF.  The State seeks recovery for potential PFAS contamination of natural resources and/or particular sites in Vermont where PFAS from MilSpec AFFF plausibly has commingled with PFAS from non-AFFF sources. ██████████████████████ 3M is entitled to a federal forum to litigate its federal contractor defense, including the nature and scope of the State's putative disclaimer of any relief related to AFFF. As multiple courts of appeals have recognized, "[i]f the contamination came from AFFF, then the government contractor defense could apply . . . even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF." *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024). Any commingling would require a factfinder "to apportion the contamination between that stemming from [a non-AFFF source] (which would not be subject to the government contractor defense) and that sourced from AFFF (which would potentially be subject to the defense)," necessitating the federal forum. *Id.*; *see Maryland v. 3M Co.*, 130 F.4th 380, 390 (4th Cir. 2025) (rejecting state's disclaimer of AFFF contamination given 3M's "plausible . . . allegations that some of the PFAS contamination at issue even in the non-AFFF complaints may come from their Military AFFF production").

8.      The State's effort to split its claims between putative AFFF and non-AFFF actions also cannot prevent 3M "from raising the production of MilSpec AFFF as a defense or an alternate theory" with regard to the State's damages. *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021); *see Maryland*, 130 F.4th at 392 ("we hold that 3M's Military AFFF production is inextricably related to the States' general allegations of PFAS contamination, notwithstanding their attempts to draw a line between 3M's federal and non-federal work"); *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180 (1st Cir. 2024) ("In reviewing whether the removing party met its burden, Courts must credit that party's theory of the case for why removal under § 1442(a)(1) was appropriate." (internal quotation marks omitted)).

9.      This Notice of Removal is timely. Since filing its initial Complaint in 2019, and in subsequent filings, the State has purported to disclaim recovery related to PFAS from AFFF and has carefully avoided disclosing any basis for federal jurisdiction related to MilSpec AFFF. The 30-day removal clocks under 28 U.S.C. § 1446(b) were therefore not triggered prior to Dr. Fogg's recent testimony. *See Cutrone v. Mortg. Elec. Regis. Sys., Inc.*, 749 F.3d 137, 143, 147 (2d Cir. 2014) ("If removability is not apparent from the allegations of an initial pleading or subsequent document, the 30-day clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered.").

10.      ████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ was the first clear and unambiguous demonstration of removability based on federal officer jurisdiction related to MilSpec AFFF. This Notice of Removal is being timely filed within 30 days of that revelation.

11.     This Notice of Removal is not precluded either by 3M's prior removal of this action

based on separate grounds as to separate products governed by military specifications or by the

Court's prior order remanding this case to state court (which is now on appeal and awaiting

decision by the Second Circuit). "The removal statute does not categorically prohibit the filing of

a second petition of removal following remand." *Brown v. Jevic*, 575 F.3d 322, 328 (3d Cir. 2009).

To the contrary:  it "contemplates a valid second petition for removal that alleges new facts in

support of the same theory of removal." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 493 (5th

Cir. 1996); *accord One Sylvan Road N. Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 62-63 (D.

Conn. 1995); *see also* 14C Federal Practice & Procedure (Wright & Miller) § 3739 (4th ed.). That

is the situation here: 3M is now removing the case pursuant to the federal officer removal statute

based on a distinct plausible basis for removal—*i.e.*, that the State's claims are "for or relating to"

PFAS-containing MilSpec AFFF (28 U.S.C. § 1442(a)(1))—unrelated to its prior removal. Nor

does the prior removal on a different factual basis affect the timeliness of removal on this basis.

*See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("federal officer

defendant's thirty days to remove commences when the plaintiff discloses sufficient facts for

federal officer removal, *even if* the officer was previously aware of a different basis for removal"

(emphasis added)).

12.     Because 28 U.S.C. § 1446(b) permits 3M to remove a case within 30 days of when

the State provides it with a pleading or other paper clearly and unequivocally disclosing a basis for

federal jurisdiction—and because the July 9, 2025 deposition testimony of the State's witness

disclosed a new basis for federal officer jurisdiction—3M is timely removing this case a second

time to avoid any possible timeliness argument based on the date of that deposition and to protect

its right to litigate this case in federal court if the Second Circuit affirms the Court's prior remand order.

## BACKGROUND

13.     On June 26, 2019, the State filed this action in the Superior Court of the State of Vermont, Chittenden Unit, where it was assigned Docket No. 547-6-19 Cncv. The SAC is the currently operative complaint in the case and is attached to this Notice of Removal as Exhibit 1.

14.     The State has brought this putative "non-AFFF" action to hold 3M and other Defendants liable for alleged PFAS contamination in Vermont, including contamination with PFOA, PFOS, PFHxS, and certain other PFAS chemicals. *See, e.g.*, SAC ¶¶ 1-3, 9-12, 71-86. The State generally alleges that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold the PFAS at issue and products containing them, including in Vermont. *See, e.g.*, *id.* ¶¶ 4-8, 18-34. The State further alleges that Defendants' PFAS have been released in Vermont and caused contamination of the State's natural resources and property, including groundwater, surface waters, wildlife, soils, and sediments. *See, e.g.*, *id.* ¶¶ 87-88, 246-289. According to the SAC, PFAS have been detected "in locations throughout Vermont." *E.g.*, *id.* ¶ 246; *see also id.* ¶¶ 261-262, 269-270.

15.     The SAC pleads nine causes of action against 3M and other Defendants including: Civil Action for Natural Resource Damages and Restoration (*id.*, First Cause of Action); Groundwater Protection Act, 10 V.S.A. § 1410 (*id.*, Second Cause of Action); Strict Liability for Design Defect and/or Defective Product (*id.*, Third Cause of Action); Strict Liability for Failure to Warn (*id.*, Fourth Cause of Action); Negligence (*id.*, Fifth Cause of Action); Public Nuisance (*id.*, Sixth Cause of Action); Private Nuisance (*id.*, Seventh Cause of Action); Trespass (*id.*, Eighth

Cause of Action); and 10 V.S.A. § 6615(a)(5) (*id.*, Ninth Cause of Action).[1] The State seeks to hold 3M and other Defendants liable for claimed injuries to the State's natural resources and property, and among other requests for relief, seeks compensatory damages (including natural resource damages) and punitive damages. *Id.* at pp. 97-99.

16.     The SAC alleges: "The State is not seeking to recover . . . any relief for contamination or injury related to Aqueous Film Forming Foam, a firefighting material that contains PFAS and which the State is addressing through a separate legal action." SAC ¶ 13.

17.     On June 26, 2019 (the day this action was filed), the State also filed its putative AFFF action. Like in this case, the complaint in the AFFF case alleges PFAS contamination of the State's natural resources and property, including groundwater, surface waters, wildlife, soils, and sediments "throughout" the State; but there, the State alleges that the contamination resulted from Defendants' AFFF products, which contained and released PFAS (including PFOA and PFOS). *E.g.*, Ex. 2, AFFF Compl. ¶¶ 377, 379, 442, 448; *see id.* ¶¶ 1-17, 89-134, 327-384. The State specifically alleges that the AFFF was manufactured pursuant to a MilSpec issued by DOD (*see id.* ¶¶ 104-105) and used at military facilities in Vermont, including the Air National Guard facility in South Burlington and the Camp Ethan Allen Training Site in Jericho/Underhill (*see id.* ¶¶ 113, 328, 356, 364).

18.     On July 31, 2019, 3M and other Defendants removed the AFFF action to federal court; the Judicial Panel on Multidistrict Litigation then transferred it to the U.S. District Court for the District of South Carolina for inclusion in the *In re AFFF Products Liability Litigation* multi-

---

[1] On May 28, 2020, the state court dismissed the First Cause of Action and limited the State's trespass claims to properties owned by the State. *State v. 3M Co.*, 2020 WL 13368654, at *5-7 (Vt. Super. Ct. May 28, 2020) In addition to the claims against 3M, the SAC asserts claims for actual and constructive fraudulent transfer against Defendants other than 3M. *See* SAC, Tenth through Fifteenth Causes of Action.

district litigation, MDL No. 2873. *State of Vermont v. 3M Co., et al.*, No. 2:19-cv-02281 (D.S.C.), ECF Nos. 1, 35.

19.    On January 3, 2024, 3M removed this action to this Court pursuant to the federal officer removal statute. *See* Notice of Removal, *State of Vermont v. 3M Co., et al.*, No. 2:24-cv-00019 (D. Vt.), ECF No. 1. 3M alleged in its notice of removal that it had conducted an investigation and concluded that any PFAS-containing waste from its former facility in Rutland, Vermont, plausibly derived at least in part from 3M's manufacture of certain products—copper-clad laminates ("CCLs")—made for use by the U.S. government in conformity with a MilSpec that required the CCLs to be made with PFAS. *See id.* ¶¶ 4, 24-31. 3M thus asserted that it could invoke its federal government contractor defense. *Id.* ¶ 6. 3M's notice of removal did not base federal officer jurisdiction on use of 3M's AFFF products in Vermont. Following removal, the case was assigned to Judge William K. Sessions III.

20.    On April 12, 2024, Judge Sessions granted the State's Motion to Remand and ordered that the case be remanded to state court. *See Vermont v. 3M Co.*, No. 2:24-cv-19, 2024 WL 1596887 (D. Vt. Apr. 12, 2024). The Court concluded that 3M's notice of removal was not timely under 28 U.S.C. § 1446(b)(3) because 3M supposedly "could have ascertained its claimed basis for removability" more than 30 days before it filed the removal notice. *Id.* at *5.

21.    On April 30, 2024, 3M appealed the Court's remand order to the Second Circuit. The appeal was docketed as case number 24-1250 (2d Cir.). Following briefing, oral argument was held on February 18, 2025, and 3M's appeal remains pending.

22.    While 3M's appeal of the remand order has been pending before the Second Circuit, discovery has continued in state court. The State has continued to maintain that this case does not relate to AFFF. The State claimed to have determined that AFFF did not impact any of the PFAS

sites that it has put at issue in this case by drawing a two-mile radius around each site it has put at issue.  The State claimed that, outside this two-mile radius, AFFF would not comingle with the non-AFFF PFAS that is allegedly the focus of this lawsuit.

23.     The State's own expert, however, 

24.     

25.     Moreover, because the State's requested relief includes both past and future damages and injunctive relief, *see* SAC pp. 97-99,

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL
## UNDER 28 U.S.C. §§ 1442 AND 1446 ARE MET

26.     Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C.

§§ 126 and 1442(a) because the Superior Court of the State of Vermont is located within the

District of Vermont.

27.     3M is not required to notify or obtain the consent of any other Defendant in this

action in order to remove the State's action as a whole under § 1442(a)(1). *See Durham*, 445 F.3d

at 1253; *Bradford v. Harding*, 284 F.2d 307, 309-310 (2d Cir. 1960); *Linden v. Chase Manhattan

Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS

News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

28.     Pursuant to 28 U.S.C. § 1446(a) and L.R. 81, the state-court file will be transmitted

to this Court.

29.     3M's removal of this action is timely under 28 U.S.C. § 1446(b). The 30-day

removal clocks under § 1446(b)(1) or (b)(3) begin to run only when the plaintiff provides the

defendant with either an "initial pleading or subsequent document [that] has *explicitly

demonstrated* removability." *Cutrone*, 749 F.3d at 147 (emphasis added). As the Second Circuit

has held, "defendants have no independent duty to investigate whether a case is removable," so

they have no deadline to file a notice of removal "[i]f removability is not apparent from the

allegations of an initial pleading or subsequent document." *Id.* at 143.

30.     This Notice of Removal is timely. Until July 9, 2025, the State had never served

3M with a pleading or paper explicitly demonstrating that this case is removable because the State

may be seeking to recover for PFAS that derives from MilSpec AFFF. To the contrary, the State

had consistently disclaimed any basis for federal officer removal related to AFFF, alleging that it

"is not seeking to recover . . . any relief related to [AFFF]," SAC ¶ 13, and had made clear that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

31.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

32.    3M maintains that it properly and timely removed this case to this Court on January 3, 2024, pursuant to the federal officer removal statute, after uncovering this case's connection to MilSpec CCLs. But if the Second Circuit affirms this Court's prior remand order, this Notice of Removal pursuant to the federal officer removal statute would be timely. That is because 3M is removing this case now on a different factual basis: the connection between this case and MilSpec AFFF, which was first revealed by the State on July 9, 2025. *See, e.g.*, *Durham*, 445 F.3d at 1253 ("federal officer defendant's thirty days to remove commences when the plaintiff discloses sufficient facts for federal officer removal, *even if* the officer was previously aware of a different basis for removal" (emphasis added)).

33.     Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Superior Court of the State of Vermont, Chittenden Unit.

34.     3M reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

35.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action for or relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115-117 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135 (2d Cir. 2008); 28 U.S.C. § 1442(a)(1) (providing for removal of actions against the United States' officers and agents when the actions are "for or relating to any act under color of such office").

36.     Removal rights under the federal officer removal statute are broad, as Congress intended, and "the statute as a whole must be liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy

"should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

37.     All requirements for removal under § 1442(a)(1) are satisfied here because the Notice of Removal alleges that the plaintiff's injuries are at least in part caused by or related to MilSpec AFFF. *See, e.g.*, *Maryland*, 130 F.4th at 391 (vacating remand of Maryland's and South Carolina's PFAS cases to state court where 3M "plausibly alleged that the PFAS intermingled to the point that it is impossible to identify their source, [such that] 3M's Military AFFF contributed to at least a 'portion of their relevant conduct'") (quoting *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020)); *Nessel*, 2021 WL 744683, at *3 (denying motion to remand in PFAS case against AFFF manufacturers because, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand because federal officer removal was proper in lawsuit against manufacturers of MilSpec AFFF). Indeed, the MDL Court presiding over consolidated proceedings related to AFFF cases has concluded on multiple occasions that removal under § 1442(a)(1) was proper when the notice of removal plausibly alleged that the plaintiff's injuries are, at least in part, caused by and/or related to MilSpec AFFF. *See In re AFFF*, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019) ("*AFFF I*"); Order at 3-5, *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873, ECF No. 320 (D.S.C. Sept. 27, 2019) ("*AFFF II*"); Order at 3-6, *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-2873, ECF No. 325 (D.S.C. Oct. 1, 2019) ("*AFFF III*") (denying motion to remand putative non-MilSpec AFFF case).

15

A.    **MilSpec AFFF.**

38.    In the late 1960s/early 1970s, the U.S. military began using MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the U.S. Naval Research Laboratory developed AFFF (with some assistance from industry participants), and its researchers were granted the first AFFF patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

39.    The design, manufacture, and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the DOD. The applicable specification, Mil-F-24385, was first promulgated in 1969 and has been revised a number of times since then.[4] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[5] Prior to such listing, "a manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for

---

[2] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through the April 2020 amendment (MIL-PRF-24385F(4)) are available at https://tinyurl.com/yxwotjpg.

[5] MIL-PRF-24385F(4) § 3.1 (2020).

[6] DoD, SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[7] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[8]

40.    From its inception until recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants"—the class of PFAS chemicals that includes PFOA and PFOS.[9] Even today, the AFFF MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[10] Indeed, the AFFF MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS from AFFF "while still meeting all other military specification requirements."[11]

41.    3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more AFFF products manufactured by 3M were on the Navy's Qualified Products List for MilSpec AFFF from 1970 until 2010 (even though 3M had phased out production of AFFF beginning in 2000).[12] The military used MilSpec AFFF manufactured by 3M throughout the United States, including in Vermont.

---

[7] DoD, SD-6, *supra* note 6, at 1.

[8] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[9] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[10] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[11] *Id.* § 6.6.

[12] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

Indeed, in its AFFF case, the State is expressly seeking to hold 3M (among other Defendants) liable for manufacturing PFAS-containing MilSpec AFFF used at and around military facilities in Vermont.

42.     Notably, the State in this action seeks to recover for alleged contamination from some of the exact same PFAS chemicals—PFOA, PFOS, and PFHxS—that allegedly were contained in MilSpec AFFF and are at issue in the State's AFFF action. *Compare, e.g.*, SAC ¶¶ 1, 4, 8-9 (seeking recovery for PFOA and PFOS), *with* AFFF Compl. ¶ 5 ("AFFF concentrate contains PFAS, including PFOA and PFOS, used to meet performance standards for fire extinguishing agents."). ███████████████████████████████████

███████████████████████████████████████████████████████████████ In its AFFF action, the State seeks to recover for alleged PFAS contamination of its natural resources and property—including groundwater, surface waters, wildlife, soil, and sediment throughout Vermont—based on express allegations that such contamination stems from use of PFAS-containing AFFF at military facilities in Vermont where MilSpec AFFF would have been used, including the Air National Guard facility in South Burlington and the Camp Ethan Allen Training Site in Jericho/Underhill. *See, e.g.*, AFFF Compl. ¶¶ 327-328. The Complaint in this putative non-AFFF action seeks to recover for alleged PFAS contamination of some of the same natural resources in Vermont, including groundwater, surface waters, wildlife, soils, and sediments. *See* SAC ¶ 246.

43.     The State purports to exclude from this action any PFAS deriving from AFFF by excluding any PFAS sites that are located within two miles of known or potential AFFF sources that the State identified. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████ Rather, PFAS from AFFF sources necessarily would be commingled with PFAS from the putative "non-AFFF" contamination for which the State seeks recovery here, and thus the State's claims are at least in part "for or relating to" 3M's production and sale of MilSpec AFFF. 28 U.S.C. § 1442(a)(1).

44.    Based on the opinions and testimony offered by the State's witness—and contrary to the purported disclaimer in the State's pleadings to date—PFAS from use of MilSpec AFFF at military facilities necessarily would migrate off-base to the surrounding environment where it plausibly has commingled with and become indistinguishable from PFAS from non-AFFF sources in Vermont. For example, the State has put a number of sites at issue in this case that are in and around the Air National Guard base in Burlington, Vermont—including the City of South Burlington landfill and the Burlington-North wastewater treatment plant. ████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████. As a result, the State's effort to recover for alleged PFAS contamination in this

putative "non-AFFF" case provides a basis for 3M to assert its federal government contractor defense.

45.    Because the alleged PFAS contamination at issue in this action is, at least in part, plausibly attributable to MilSpec AFFF use at military or other facilities, which is indistinguishable from the same PFAS derived from other products, 3M is entitled to remove this case as a whole pursuant to federal officer jurisdiction.[13] That is because "[i]t is entirely possible that Plaintiff['s] injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF." *Nessel*, 2021 WL 744683, at *3. That commingling presents "important causation and allocation questions" that a "factfinder must" resolve "in federal court." *Maryland*, 130 F.4th at 392.

46.    The State's attempt to disclaim seeking any relief for PFAS contamination from AFFF (*see* SAC ¶ 13) does not preclude removal to federal court. *See Maryland*, 130 F.4th at 390-92; *Express Scripts, Inc.*, 119 F.4th at 180 (holding that defendant properly removed case under the federal officer removal statute, notwithstanding the plaintiff's alleged disclaimer of relief related to federal conduct, because "[t]o credit the disclaimer would permit [plaintiff] to recover based on what, when considering through [defendant's] theory of removal, were acts under a federal officer," and plaintiff's "attempts at artful pleading cannot serve as an end run around the federal officer removal statute"). ███████████████████████

---

[13] In addition to AFFF use at military facilities, PFAS in Vermont also plausibly derives from use of MilSpec AFFF at civilian airports in Vermont. So-called "Part 139" airports historically have used MilSpec AFFF and, beginning in 2006, the U.S. government required them to use AFFF meeting MilSpec standards. *See* FAA Part 139 CertAlert 06-02, Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8, 2006). The State itself has alleged that PFAS contamination in Vermont stems from AFFF use at the Southern Vermont Airport. *See* AFFF Compl. ¶ 328. The Southern Vermont Airport is a Part 139 airport that was required to use MilSpec AFFF. *See* Part 139 Airport Certification Status List (Excel file), *available at* https://www.faa.gov/airports/airport_safety/part139_cert/part_139_airport_certification_status_list.

███████████████████████████████████████████ a factfinder would need to "decide … important causation and allocation questions" as to the nature of the contamination, which are "merits questions that belong in federal court." *Maryland*, 130 F.4th at 392; *Baker*, 962 F.3d at 944-46 & n.3; *see also Nessel*, 2021 WL 744683, at *3 (denying State of Michigan's motion to remand and concluding that federal officer removal was proper notwithstanding the complaint's allegation that Michigan was not seeking relief for MilSpec AFFF; "Plaintiffs' artful pleading does not obviate the facts on the ground."). As the Seventh Circuit recently held, "[i]f the contamination came from AFFF, then the government contractor defense could apply. . . . even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF." *Raoul*, 111 F.4th at 848.

47.    Because the State's claims in this case plausibly arise, at least in part, from manufacture and/or disposal of MilSpec products that were required to contain PFAS, 3M is entitled to remove this case as a whole under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). As shown below, all the elements of federal officer jurisdiction are met when a plaintiff asserts claims based on alleged PFAS contamination and the notice of removal avers that such PFAS contamination is at least in part caused by PFAS from MilSpec AFFF products.

**B.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.**

48.    As shown below, all the elements of federal officer jurisdiction are met when a plaintiff asserts claims based on alleged PFAS contamination and the notice of removal avers that such PFAS contamination is at least in part caused by PFAS from MilSpec AFFF products.

*1.    The "Person" Requirement Is Satisfied.*

49.    The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of a "person" under the statute. *See Isaacson*, 517 F.3d at 135-36. For purposes of § 1442(a)(1), the term "person" includes

corporations. *Id.* (quoting 1 U.S.C. § 1); *accord Badilla v. Midwest Air Traffic Control Serv.*, 8 F.4th 105, 120 (2d Cir. 2021).

### 2.    The "Acting Under" Requirement Is Satisfied.

50.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *See Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 152 (2007); *Isaacson*, 517 F.3d at 137. "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021) (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017)).

51.    The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination at issue in this action stems at least in part from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)). The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements

in formulations."[14] Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF.

52.    In designing, manufacturing, and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, MilSpec AFFF products were subject to various tests, including qualifying tests, by the U.S. Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DOD.[15] For these reasons, 3M has satisfied the "acting under" requirement. *See, e.g.*, *AFFF I*, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing MilSpec AFFF under the guidance of the U.S. military); *AFFF II*, at 3-5; *AFFF III* at 3-5; *Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8-9.

### 3.    The "Under Color Of Federal Office" Requirement Is Satisfied.

53.    The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35-36 (1st Cir. 2022) (explaining that 28 U.S.C. § 1442 permits removal

---

[14] Fulfilling the Roosevelts' Vision at 37.

[15] *See* DOD, SD-6, *supra* note 6, at 1.

of actions "for *or relating to* any act under color of [federal] office" (citing Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545)); *Agyin*, 986 F.3d at 174 n.2 (citation omitted) (noting that the 2011 amendment was meant "to broaden the universe of acts that enable Federal officers to remove to federal court"); *accord Sawyer*, 860 F.3d at 258; *Papp*, 842 F.3d at 813; *Isaacson*, 517 F.3d at 137-38 (holding that it is sufficient if the act that allegedly caused the plaintiff's injuries occurred while the defendant was performing its official duties).[16]

54.    Here, at least some of the State's claims against 3M for alleged PFAS contamination of natural resources and property are for, or relate to, 3M's design, manufacture, and sale of MilSpec AFFF—which was designed and manufactured according to DOD military specifications, and which has been used, stored, and/or released at military facilities and elsewhere in Vermont. *See supra* ¶¶ 38-41. As a result, the State's claims against 3M relate to acts taken under color of federal office and satisfy this element. *See Maryland*, 130 F.4th at 391 (nexus element satisfied where 3M "plausibly alleged that PFAS intermingled to the point that it is impossible to identify their source," such that MilSpec AFFF "contributed to at least" part of the contamination); *AFFF I*, 2019 WL 2807266, at *3 (nexus element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards."); *AFFF II*, at 5 (nexus element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); *AFFF III* at 5-6 (same); *Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of [perfluorinated chemicals ("PFCs")] in AFFF and the design and manufacture of AFFF for the government.").

---

[16] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications." *Albrecht*, 2011 WL 5109532, at *5.

55.    Courts "credit Defendants' theory of the case" when determining whether the requisite nexus exists. *Isaacson*, 517 F.3d at 137; *Maryland*, 130 F. 4th at 389; *accord Express Scripts, Inc.*, 119 F.4th at 192 (holding that defendant properly removed based on federal officer removal statute and that the plaintiff's "disclaimer . . . did not justify remand" because the court had to "credit" the removing defendant's "theory of the case" that its federally authorized and non-federally authorized conduct were "indivisible"); *Agyin*, 986 F.3d at 175 ("Not only must the words of § 1442 be construed broadly but a court also must credit the defendant's theory of the case when evaluating the relationship between the defendants' actions and the federal officer" (internal quotation marks and brackets omitted)); *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present"). As averred in this Notice of Removal, the State's allegations of PFAS contamination plausibly arise at least in part from MilSpec AFFF. Crediting 3M's averments, the State's claims sufficiently relate to 3M's actions under color of federal office.

### 4.    The "Colorable Federal Defense" Requirement Is Satisfied.

56.    The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense. The Second Circuit has repeatedly held that this defense supports removal under § 1442(a)(1). *See Isaacson*, 517 F.3d at 139; *Cuomo*, 771 F.3d at 116.

57.    At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted.'" *Papp*, 842 F.3d at 815. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139. At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice,

pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[17] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

58.    Under the government contractor defense recognized by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, a defendant is not liable for acts related to the design and manufacture of equipment or supplies, or the provision of warnings concerning such equipment or supplies, "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. 3M satisfies these elements for purposes of removal.

59.    The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation,

---

[17] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not determine credibility, weigh the quantum of evidence or discredit the source of the defense at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal quotation marks omitted)).

performance, testing, storage, inspection, packaging, and labeling.[18] Those specifications are "reasonably precise," including in requiring the use of PFAS to manufacture MilSpec AFFF.[19] In addition, in the past and continuing to the present, the DOD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See AFFF I*, 2019 WL 2807266, at *3 (noting that a colorable defense was alleged where AFFF MilSpec "included specifications for the chemical class that includes PFOS/PFOA"); *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

60.    With respect to the second requirement, 3M's products have appeared on the DOD Qualified Products List,[20] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See AFFF I*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); *Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications.").

61.    Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary

---

[18] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 9, *supra*.

[19] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.

[20] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014), cited at note 12, *supra*.

authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[21] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[22] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[23] By no later than 2001, DOD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[24] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[25] More recently,

---

[21] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

[22] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/ fulltext/u2/a136612.pdf.

[23] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[24] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-2 (D.S.C.)).

[25] *See* EPA, Revised Draft Hazard Assessment, *supra* note 21.

in a November 2017 report to Congress, the DOD acknowledged the concerns raised by the EPA

regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a

"mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-

based fires."[26] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF

contain "surfactants,"[27] and recognizes that PFAS, including PFOS and PFOA, will be present

(subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[28] *See AFFF I*,

2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of

dangers associated with its AFFF products of which the military was not already aware,

[defendant] points to materials such as a November 2017 Department of Defense report to

Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in

drinking water . . . ."); *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks

of PFC-based AFFF products but continues to purchase them supports the position that the

government approved reasonably precise specifications for the claimed defective design.").

62.     At minimum, these facts constitute colorable evidence that Naval Sea Systems

Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after

weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod.

Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A

defendant is not required to warn the government where 'the government knew as much or more

than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as

---

[26] DOD, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[27] MIL-PRF-24385F(4) § 3.2 (2020).

[28] *Id.* § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13.

63.    3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries that were caused in whole or in part by 3M's compliance with military specifications, the State is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

64.    In the *In re AFFF* MDL, the MDL court has found—based on an extensive record— that the government contractor defense asserted by 3M and other AFFF manufacturers presents genuine issues of fact for trial. *See In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition more than merely "colorable."

65.    Accordingly, 3M is entitled to remove this action as a whole to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). When any claim or portion of a claim meets the requirements for removal under § 1442(a)(1), a defendant is entitled to remove the action as whole to federal court. *See, e.g.*, *Moore*, 25 F.4th at 35; *Baker*, 962 F.3d at 945 ("[I]t is enough for . . . removal that at least some of the pollution arose from the federal acts."); *Maryland*, 130 F.4th at 391; *Sawyer*, 860 F.3d at 257 (similar); 14C Wright & Miller, *Federal Practice and Procedure* § 3726 (the "entire action" is removable "even if only one of the controversies it raises involves a federal officer or agency")

WHEREFORE, 3M hereby removes this action from the Chittenden Superior Court of the State of Vermont to this Court pursuant to 28 U.S.C. § 1442(a)(1).

Respectfully submitted,

July 18, 2025

*/s/ Ritchie E. Berger*
Ritchie E. Berger, Esq.
Dinse P.C.
209 Battery Street, P.O. Box 988
Burlington, VT 05401
(802) 864-5751
rberger@dinse.com

Daniel L. Ring*
Richard F. Bulger*
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
dring@jenner.com
rbulger@jenner.com

*Counsel for Defendant 3M Company*

*Applications for admission *pro hac vice*
forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2025, I caused a true and correct copy of the foregoing document, with its exhibits, to be served upon the following parties by First Class Mail and/or Email, as indicated below:

Laura B. Murphy, Esq.
State of Vermont
109 State Street
Montpelier, VT  05609
(802) 828-3186
laura.murphy@vermont.gov

Michael A. Olsen, Esq.
Mayer Brown LLP
71 S. Wacker Drive Chicago,
IL 60606
(312) 782-0600
molsen@mayerbrown.com

Katherine Hacker, Esq.
Amy McCalib, Esq.
Daniel R. Brody, Esq.
Bartlit Beck LLP
1801 Wewatta St., Suite 1200
Denver, CO  80202
(303) 592-3141
Kat.hacker@bartlitbeck.com
amy.mccalib@bartlitbeck.com
dan.brody@bartlitbeck.com
dupont@bartlitbeck.com

Adam L. Hoeflich, Esq.
Bartlit Beck LLP
54 West Hubbard Street
Chicago, IL  60654
(312) 494-4473
Adam.hoeflich@bartlit-beck.com
DuPont-PFOA-Bartlitbeck.com@bartlit-beck.com

Matthew F. Pawa, Esq.
Benjamin A. Krass, Esq.
MacKennan Graziano, Esq.
Gillian Cowley, Esq.
Kyle-Landis Marinello, Esq.
Pawa Law Group, P.C.
1280 Centre Street, Suite 230
Newton Center, MA  02459
(617) 641-9550
mpawa@pawalaw.com
bkrass@pawalaw.com
mgraziano@pawalaw.com

Jennifer E. McDonald, Esq.
Kelsey Schweitzer, Esq.
Gina Puls, Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT  05402-0190
jmcdonald@drm.com
kschweitzer@drm.com
gpuls@drm.com

1

gcowley@pawalaw.com
klm@pawalaw.com

Richard F. Bulger, Esq.
Daniel L. Ring, Esq.
Tyler D. Alfermann, Esq.
Daniel Rottenberg, Esq.
Priya Desai, Esq.
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
rbulger@jenner.com
dring@jenner.com
talfermann@jenner.com
drottenberg@jenner.com
pdesai@jenner.com

Cynthia Betz, Esq.
Lanny Kurzweil, Esq.
Ryan Richman, Esq.
Candee Wilde, Esq.
Nakul Shah, Esq.
Salvatore P. D'Alia, Esq.
McCarter & English LLP
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
(973) 639-7984
cbetz@mccarter.com
lkurzweil@mccarter.com
rrichman@mccarter.com
cwilde@mccarter.com
nshah@mccarter.com
sdalia@mccarter.com

Gregory A. Weimer, Esq.
Kirkpatrick & Goldsborough, PLLC
1233 Shelburne Rd., Ste. E-1
Lakewood Commons
South Burlington, VT 05403
(802) 651-0960
gweimer@vtlawfirm.com

Margaret Raymond Flood, Esq.
Martha N. Donovan, Esq.
Kimbrilee M. Weber, Esq.
Norris McLaughlin
400 Crossing Blvd.
8th Floor, P.O. Box 5933
Bridgewater, NJ 08807
(908) 252-4228
mraymondflood@norris-law.com
mdonovan@norris-law.com
kmweber@norris-law.com

Shayna S. Cook, Esq.
Laura A. Sexton, Esq.
Brian P. O'Donoghue, Esq.
Kenneth M. Baum, Esq.
Craig Woods, Esq.
Goldman Ismail Tomaselli Brennan & Baum LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
scook@goldmanismail.com
lsexton@goldmanismail.com

Kyle McGee, Esq.
Viola Vetter, Esq.
Jason Wilson, Esq.
Gordon Novod, Esq.
Frank H. Griffin IV, Esq.
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com

2

bodonoghue@goldmanismail.com
kbaum@goldmanismail.com
cwoods@goldmanismail.com

Heather E. Ross, Esq.
Sheehey, Furlong & Behm P.C.
30 Main St., 6th Floor
P.O. Box 66
Burlington, VT  05402
(802) 864-9891
hross@sheeheyvt.com

Tracie J. Renfroe, Esq.
Sarah Warburg-Koechlin, Esq.
Mitchell B. Bryant, Esq.
King & Spalding LLP
1100 Louisiana Street, Suite 4100
Houston, TX  77002
trenfroe@kslaw.com
swarburg-koechlin@kslaw.com
mbbryant@kslaw.com

Andrew J. Calica
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036
acalica@kslaw.com

Keri Arnold, Esq.
Wilkinson Stekloff LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
karnold@wilkinsonstekloff.com

Randall L. Christian, Esq.
Bowman and Brooke LLP
2901 Via Fortuna Drive, Suite 500
Austin, Texas, 78746
randall.christian@bowmanandbrooke.com

Claire Grega, Esq.
Amanda Rauer, Esq.

gnovod@gelaw.com
fgriffin@gelaw.com

Matthew J. Blaschke, Esq.
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
mblaschke@kslaw.com

Randall J. Butterfield, Esq.
Carmen R. Toledo, Esq.
Nicholas H. Howell, Esq.
King & Spalding LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
rbutterfield@kslaw.com
ctoledo@kslaw.com
nhowell@kslaw.com

Brian Stekloff, Esq.
Wilkinson Stekloff LLP
2001 M Street NW, Suite 1000
Washington, DC 20036
bstekloff@wilkinsonstekloff.com

Sarah A. Meadows, Esq.
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
Charleston, WV 25301
smeadows@tcspllc.com

James C. Fitzpatrick, Esq.
Seth D. Rothman, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza, 15th Floor
New York, NY 10004
james.fitzpatrick@hugheshubbard.com
seth.rothman@hugheshubbard.com

Thomas J. Rechen, Esq.
James E. Regan, Esq.

McCarter & English LLP
1600 Market St., Suite 3900
Philadelphia, PA 19103
cgrega@mccarter.com
arauer@mccarter.com

Snigdha Mamillapalli, Esq.
Joseph E. Boccia, Esq.
McCarter & English LLP
CityPlace I
185 Asylum St.
Hartford, CT 06103
jregan@mccarter.com
trechen@mccarter.com
smamillapalli@mccarter.com
jboccia@mccarter.com

Antonin Robbason, Esq.
Ryan Smith & Carbine Ltd.
98 Merchants Row, PO Box 310
Rutland, VT 05702
aizr@rsclaw.com

Ali Spindler, Esq.
Irwin Fritchie Urquhart Moore & Daniels LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
aspindler@irwinllc.com

By:  */s/ Ritchie E. Berger*
     Ritchie E. Berger, Esq.
     Dinse P.C.
     209 Battery Street, P.O. Box 988
     Burlington, VT 05401
     (802) 864-5751
     rberger@dinse.com

4