**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| STATE OF VERMONT, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 2:25-cv-00660-MKL |
| | ) |
| v. | ) |
| | ) |
| 3M COMPANY, EIDP, INC., THE CHEMOURS | ) |
| COMPANY, THE CHEMOURS COMPANY | ) |
| FC, LLC, CORTEVA, INC., and DUPONT DE | ) |
| NEMOURS, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF STATE OF VERMONT'S MOTION TO REMAND**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

    I.    The State's two lawsuits. ......................................................................... 3

    II.   The State's AFFF lawsuit is transferred to a multi-district litigation. ................... 5

    III.  After years of litigation in state court, 3M removes the non-AFFF case to federal court—twice. .................................................................................................. 5

ARGUMENT ..................................................................................................... 11

    I.    3M failed to comply with the removal statute and this Court's rules. .............. 11

    II.   3M's removal is untimely. ...................................................................... 13

    III.  This case is not removable under the "federal officer" doctrine. ..................... 17

        A.   The State's express disclaimer of any relief for injuries caused by AFFF precludes federal officer jurisdiction. ....................................................................... 17

        B.   3M has not met its burden of demonstrating a plausible connection between AFFF and the sites in this case. ................................................................................ 21

        C.   Any causal connection is too miniscule to hale the State into federal court. ........ 24

CONCLUSION ................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbo-Bradley v. City of Niagara Falls*,
  73 F.4th 143 (2d Cir. 2023) ............................................................................... 13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 23

*Att'y Gen. of New Jersey v. Dow Chem. Co.*,
  2024 WL 3361395 (D.N.J. July 9, 2024) ................................................................ 19

*Bailey v. Monsanto Co.*,
  176 F. Supp. 3d 853 (E.D. Mo. 2016) ..................................................................... 24

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ................................................................................... 24

*Batchelor v. Am. Optical Corp.*,
  185 F. Supp. 3d 1358 (S.D. Fla. 2016) ................................................................... 19

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) ............................................................................... 19, 24

*Connecticut v. EIDP, Inc.*,
  2024 WL 5135601 (D. Conn. Dec. 17, 2024) .................................................... 18, 20

*Connecticut v. Exxon Mobil Corp.*,
  83 F.4th 122 (2d Cir. 2023) .......................................................................... 17, 21, 23

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
  749 F.3d 137 (2d Cir. 2014) ..................................................................................... 13

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014) ................................................................................................... 23

*Dearien v. Union Carbide Corp.*,
  530 F. Supp. 3d 622 (S.D.W. Va. 2021) ................................................................. 15

*Diallo v. Puerta*,
  2024 WL 640066 (E.D.N.Y. Feb. 15, 2024) ........................................................... 12

*Elliott v. Jaquez*,
  777 F. Supp. 3d 136 (E.D.N.Y. 2025) ..................................................................... 12

*Farrow v. Foster Wheeler Energy Corp.*,
    2008 WL 11508373 (W.D. Wash. Aug. 28, 2008) ................................................................... 19

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
    463 U.S. 1 (1983) ............................................................................................................................ 21

*Grosch v. Tyco Fire Prods. LP*,
    2023 WL 5993548 (D. Ariz. Sept. 15, 2023) ........................................................................... 21

*Hayden v. 3M Co.*,
    2015 WL 4730741 (E.D. La. Aug. 10, 2015) .......................................................................... 19

*Hopkins v. Buffalo Pumps, Inc.*,
    2009 WL 4496053 (D.R.I. Dec. 1, 2009) ................................................................................. 19

*Illinois ex rel. Raoul v. 3M Co.*,
    693 F. Supp. 3d 948 (C.D. Ill. 2023) ........................................................................................ 20

*Illinois ex rel. Raoul v. 3M Co.*,
    111 F.4th 846 (7th Cir. 2024) ........................................................................................... 18, 19

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    2022 WL 4291357 (D.S.C. Sept. 16, 2022) ............................................................................... 5

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) ........................................................................................................ 11

*In re Standard & Poor's Rating Agency Litig.*,
    23 F. Supp. 3d 378 (S.D.N.Y. 2014) ........................................................................................ 21

*Kelleher v. A.W. Chesterton Co.*,
    2015 WL 7422756 (S.D. Ill. Nov. 23, 2015) ........................................................................... 19

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .................................................................................................... 23

*Lockwood v. Crane Co.*,
    2012 WL 1425157 (C.D. Cal. Apr. 25, 2012) ........................................................................ 19

*Maguire v. A.C.&S., Inc.*,
    2015 WL 4934445 (S.D.N.Y. Aug. 18, 2015) ........................................................................ 19

*Maine v. 3M Co.*,
    2023 WL 4758816 (D. Me. July 26, 2023) .............................................................................. 18

*Marie-Dessisso v. JP Morgan Chase Bank, N.A.*,
    2015 WL 5732127 (E.D.N.Y. Sept. 28, 2015) ........................................................ 12

*Maryland v. 3M Company*,
    130 F.4th 380 (4th Cir. 2025) .............................................................. 20, 23

*Matter of Proceeding for Support Under Fam. Court Act*,
    2017 WL 6327549 (E.D.N.Y. Dec. 11, 2017) ........................................................ 12

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    952 F.3d 452 (4th Cir. 2020) .............................................................. 24

*Moorer v. Incorporate Vill. of Hempstead*,
    2020 WL 4003605 (E.D.N.Y. July 15, 2020) ........................................................ 13

*Nessel v. Chemguard, Inc.*,
    2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ........................................................ 20

*New Hampshire v. 3M Co.*,
    132 F.4th 556 (1st Cir. 2025) .......................................................... 13, 14

*New Hampshire v. 3M Co.*,
    665 F. Supp. 3d 215 (D.N.H. Mar. 29, 2023) ........................................................ 18

*New York State Cnty. of Nassau Supreme Ct. v. Powell*,
    2018 WL 9986665 (E.D.N.Y. Aug. 8, 2018) ........................................................ 12

*Polito v. Hanover Ins. Grp., Inc.*,
    2018 WL 3598873 (W.D.N.Y. July 27, 2018) ........................................................ 12

*Pratt v. Asbestos Corp. Ltd.*,
    2011 WL 4433724 (N.D. Cal. Sept. 22, 2011) ........................................................ 19

*Puerto Rico v. Express Scripts, Inc.*,
    119 F. 4th 174 (1st Cir. 2024) .......................................................... 20

*Rhode Island v. Shell Oil Prod. Co.*,
    979 F.3d 50 (1st Cir. 2020) .............................................................. 19

*Romulus v. CVS Pharmacy*,
    770 F.3d 67 (1st Cir. 2014) .............................................................. 15

*Sheppard v. Northrop Grumman Sys. Corp.*,
    2007 WL 1550992 (E.D. La. May 24, 2007) ........................................................ 19

iv

*Somlyo v. J. Lu-Rob Enters., Inc.*,
   932 F.2d 1043 (2d Cir. 1991) ................................................................................ 13

*Taylor v. Medtronic, Inc.*,
   15 F.4th 148 (2d Cir. 2021) .......................................................................... 12, 13

*United Food & Com. Workers Union v. CenterMark Props. Meriden Square.*,
   30 F.3d 298 (2d Cir. 1994) ........................................................................... 21, 23

*Vermont v. 3M Co.*,
   2020 WL 13368654 (Vt. Super. Ct. May 28, 2020) ................................................ 5

*Vermont v. 3M Co.*,
   2024 WL 1596887 (D. Vt. Apr. 12, 2024) .............................................. 1, 6, 16

*Westbrook v. Asbestos Defs. (BHC),*
   2001 WL 902642 (N.D. Cal. July 31, 2001) ...................................................... 19

**Statutes**

28 U.S.C. § 1442(a)(1) ......................................................................................... 17

28 U.S.C. § 1446(b)(1) ......................................................................................... 13

28 U.S.C. § 1446(b)(3) .................................................................................. 12, 15

28 U.S.C. § 1446(d) ............................................................................................. 11

28 U.S.C § 1446(a) ................................................................................... 2, 11, 12

**Rules**

L.R. 81 ................................................................................................................. 11

**INTRODUCTION**

This is one of the largest civil cases ever litigated in Vermont and a matter of the highest importance to the State of Vermont (the State). The State has sued 3M Company (3M) and other companies for making and selling per- and polyfluoroalkyl substances (PFAS), also known as "forever chemicals," despite knowing they were highly toxic and will never go away absent an expensive cleanup. The parties have engaged in hard-fought litigation in state court for over six years.

Now, on the eve of a critical September 12 deadline for summary judgment/expert motions and an even more critical trial-ready date of November 7, defendant 3M suddenly claims to have "new information" that warrants wresting this case from state court at the eleventh hour. It tried the same thing last year when it claimed to only recently have learned that it had a factory in Vermont that allegedly made a product in the 1970s at the direction of the federal government, but Judge Sessions found 3M's removal to be untimely. *Vermont v. 3M Co.*, 2024 WL 1596887, at *5–6 (D. Vt. Apr. 12, 2024).

3M's latest attempt to remove is based only on its conjectural possibility that two sources of PFAS contamination have commingled. One source is a firefighting product known as aqueous film forming foam (AFFF) that 3M says it made for the federal government; the other source is all the other, non-AFFF PFAS contamination from defendants' consumer and industrial products, which were used in produce such as carpets, fabrics, and paper. In this case, the State has explicitly sought relief only for non-AFFF sites; just as explicitly, the State has *disclaimed* any relief for AFFF contamination and thus has excluded potential AFFF sites from the case. In its notice of removal, 3M claims it only discovered during an expert witness deposition on July 9 ███████████████████████████████████████████████████████████████████ ████████████████████████████████—which 3M says makes it plausible to assume there is a

1

site in this case partially contaminated by AFFF.  And because 3M allegedly made AFFF as a federal contractor, 3M now says this potential cross-contamination by AFFF justifies removing a case encompassing ██████████████ of sites.  But 3M's attempt to remove fails on three grounds.

First, 3M failed to comply with the removal statute and court rules.  3M did not file the state court orders, pleadings, and process documents required by 28 U.S.C § 1446(a) and Local Rule 81(a).  As many other courts have held, this violation requires remand.

Second, while the State does not concede that the mere possibility of commingling of AFFF and non-AFFF contamination is a basis to remove, even assuming it *were* a sufficient basis, 3M's removal is untimely.  3M was put on notice long ago of the possibility of PFAS traveling long distances and AFFF commingling with non-AFFF contamination.  In 2019, the State's initial complaint alleged that PFAS can migrate "great distances" in groundwater and the ████████████████████████████████████████████████████████████ ████████████████████  The State also alleged in its initial complaint that PFAS contamination was "ubiquitous" in Vermont and that there were both non-AFFF and AFFF sources of contamination.  Thus, even accepting for argument's sake 3M's theory that the mere possibility of commingling is a basis to remove, 3M's thirty-day time period expired long ago.

Third, 3M has not demonstrated a causal nexus between its purported federal officer activity (the manufacturing of AFFF) and the claims in this non-AFFF case.  3M cannot overcome the State's express and unambiguous legal disclaimer, set forth in its initial and amended complaints, that the State is not seeking any recovery in this case for AFFF contamination; numerous other courts have held that such a disclaimer defeats federal officer removal.  Nor does 3M's assertion of ████████████████████████████████████

███████████████████████ mean that such cross-contamination is actually plausible

under the facts of the case, despite 3M's distortion of the expert's testimony to try to make it so.

3M identifies only two allegedly cross-contaminated sites but one is not even at issue in this case

and the other is a facility that receives waste from offsite and is not connected to ground or

surface waters.  The State also has excluded surface waters from the case altogether.  Finally,

even if 3M's "mere possibility" theory somehow equaled plausibility, such a connection at a few

sites—in a case involving ███████████ of sites—would be too miniscule to draw the State's

case out of state court.

The State respectfully requests that the Court remand the case to state court at its earliest

opportunity.

## BACKGROUND

### I.    The State's two lawsuits.

On June 26, 2019, Vermont filed two lawsuits in state court against 3M and other

manufacturers of PFAS.  One lawsuit sought to recover for PFAS contamination caused by

AFFF, which the State knew would be removed and transferred to a multi-district litigation

(MDL) in South Carolina dealing with AFFF cases nationwide.  AFFF is a firefighting product

that caused contamination at numerous airports (including military airports) and firefighting

training facilities around the country.  The other lawsuit—*i.e.*, this lawsuit—sought recovery for

PFAS contamination caused by products *other than* AFFF, *i.e.*, a large number of consumer and

industrial products that contaminated natural resources at sites throughout Vermont, including in

landfills, hazardous waste sites, wastewater treatment facilities, farm fields, public water

systems, and private drinking water wells.  *See* Exh. 1 ¶¶ 2, 5, 6, 181, 186.[1]  The State filed its

---

[1] Except where indicated otherwise, "Exh." refers to the exhibits attached to the Krass
Declaration, which is being filed with this motion.

non-AFFF case separately to avoid the delays inherent in MDLs and because it wanted to litigate these important state-law claims in its own courts. In both complaints, the State alleged that 3M and other defendants manufactured PFAS, and products containing PFAS, and marketed and sold those products in Vermont despite knowing PFAS were toxic, would escape into the environment, and do not break down.[2]

From the start, the non-AFFF complaint alleged that PFAS is highly mobile and ubiquitous throughout the State. For example, the State's initial non-AFFF complaint alleged that PFAS contamination travels "great distances" in groundwater and other media, that it "continues to spread," is now "ubiquitous" in Vermont, and has "contaminated State natural resources and property throughout the State."[3] The State's initial AFFF complaint made similar (sometimes verbatim) allegations.[4] The State's initial non-AFFF complaint acknowledged the presence of AFFF in the State, but made a legal disclaimer that it was not seeking any recovery

---

[2] While there are many different types of PFAS chemicals, the State has limited this case to seven specific PFAS chemicals—PFOS, PFOA, PFNA, PFHxS, PFHpA, PFBS, and Gen-X. Second Notice of Removal (SNOR) Exh. 1 ¶ 1.

[3] Exh. 1 ¶¶ 1 ("widespread contamination"), 2 ("ubiquitous contamination caused by these chemicals in Vermont"), 8 ("Defendants have caused widespread contamination"), 9 ("contamination throughout the State"), 41 (PFAS "migrate long distances through soil and groundwater"), 43 (PFAS "migrate into and cause extensive contamination and injury of State natural resources and property"), 209 ("There is widespread PFAS contamination and injury of soil throughout the State"), 216 ("PFAS has contaminated State natural resources and property throughout the State"), 247(c) (PFAS "mix with groundwater and migrate great distances"), 282 (PFAS "continues to spread in and contaminate more State natural resources and property throughout the State").

[4] Exh. 2 ¶¶ 56 (PFAS are "mobile in the environment, and migrate long distances through soil and groundwater"), 58 (PFAS "migrate into and cause extensive contamination of State natural resources and property"), 134 ("3M knew that PFAS chemicals had the ability to move throughout groundwater"), 294 ("AFFF-related PFAS continues to move through the environment and contaminate State natural resources"), 334(c) ("When [PFAS] are released into the environment [they] have a tendency to mix with groundwater and migrate great distances"), 347(c) (same), 357 (defendants' AFFF-related PFAS "continues to spread in and contaminate more State natural resources and property throughout the State").

4

for "contamination or injury related to Aqueous Film Forming Foam," which it stated it was "addressing through a separate legal action," Exh. 1 ¶ 13—*i.e.*, the AFFF case filed the same day.

## II.    The State's AFFF lawsuit is transferred to a multi-district litigation.

As expected, 3M and other defendants removed the AFFF case soon after it was filed on the basis that they allegedly manufactured AFFF according to a military design specification (MilSpec) and that this created federal officer jurisdiction.  Exh. 3.  The AFFF case was transferred to the MDL in South Carolina with thousands of other AFFF cases; the State did not seek remand.  The State's AFFF case remains pending in the MDL and has not made case-specific progress over the past six years.[5]

## III.    After years of litigation in state court, 3M removes the non-AFFF case to federal court—twice.

***The state court proceedings.***  The non-AFFF case has moved forward in state court. After defendants' motions to dismiss were denied as to most claims, *Vermont v. 3M Co.*, 2020 WL 13368654 (Vt. Super. Ct. May 28, 2020), the case was designated as complex and assigned first to Judge Toor and, after she retired, to Judge Shafritz.  The parties have since engaged in more than five years of complex discovery, involving hundreds of discovery requests, millions of pages of documents, and dozens of depositions.  As described below, the State's expert disclosures have focused on hundreds of specific sites contaminated by non-AFFF PFAS; these locations, as well as ██████████ of private drinking water supplies, are the sites for which

---

[5] The MDL court denied 3M's summary judgment motion on its federal contractor defense and has approved an approximately $10 billion settlement between 3M and a nationwide class of public water systems.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357 (D.S.C. Sept. 16, 2022) (summary judgment denial); Final Approval Order and Judgment, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG (D.S.C. Mar. 29, 2024) (Dkt. No. 4754) (settlement).

the State seeks to recover damages in this action.  The case does not include sites with known or potential AFFF contamination. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ As 3M notes in its notice of removal, these two sites are expressly at issue in the state's AFFF complaint.  Exh. 2 ¶ 73; SNOR ¶¶ 17, 42.[6]  In addition, the State in 2024 excluded an entire category of natural resources from this case, *i.e.*, surface waters, by excluding them from their expert disclosures' analysis of damages.

*3M's first notice of removal (January 2024).*  In early 2024, with key discovery deadlines approaching, 3M filed its first notice of removal in this Court.  3M claimed to have just learned that its Rutland, Vermont facility made a copper-clad laminate product (unrelated to AFFF) for the military for a few years in the 1970s, which purportedly gave rise to federal officer jurisdiction over the entire case.  Judge Sessions granted the State's motion to remand in April 2024 on the basis that 3M's removal was untimely.  *3M Co.*, 2024 WL 1596887, *appeal pending*, No. 24-1250 (2d Cir.).  3M's appeal of the remand order is still pending and the non-AFFF case has continued to proceed in state court.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[6] ████████████████████████████████████████████████████████

██████████████████████████████ Krass Aff. ¶ 5.  As such, the term does not necessarily indicate there is an AFFF source or that the removed site itself is an AFFF source.  This was a conservative approach.

Friedman's list of excluded sites did not go unnoticed—3M introduced the document at his deposition. Exh. 8 at 245:7–23.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

***Case documents and witnesses raise the possibility of AFFF migration*** ███████

███ ***(January–February 2025).*** Consistent with the State's initial complaint, ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

***Dr. Fogg's July 2025 deposition.*** 3M deposed Dr. Fogg again on July 9 and 10, 2025.

██████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████ But this is an inaccurate characterization of

Dr. Fogg's testimony.

████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



These statements are the factual basis of 3M's removal.

Later in the same deposition, ███████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████

**3M's second notice of removal.**  Shortly after this deposition, on July 18, 2025, 3M filed

its second notice of removal.  3M contends that ███████████████████████████
████████████████████████████████████████████████████████████

███████████  3M alleges there are two sites where this commingling "plausibly" occurred because

of the Air National Guard (ANG) base: (1) the South Burlington landfill and (2) the Burlington-

North wastewater treatment facility.  *Id.* ¶ 44.  As set forth above, the South Burlington landfill

was excluded from the case in 2024.  As to the Burlington-North wastewater treatment facility

(WWTF), 3M does not say how far the facility is from the ANG base or explain how AFFF from

the base could have gotten into the facility.  As set forth in the Declaration of Eamon Twohig of

the Vermont Department of Environmental Conservation, the Burlington-North WWTF receives

its waste from offsite, *i.e.*, sewage pipes and trucks transporting waste to it, not from

groundwater.  Twohig Decl. ¶ 5.  Nor does river water enter this facility—it has a discharge pipe

that discharges into the Winooski River, not the other way around.  *Id.* ███████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████

**The upcoming trial in state court.**  When 3M removed, the non-AFFF case was (and is)

near the end of expert discovery.  Defendants have deposed the State's twenty-two experts and

the State expects to finish deposing defendants' twenty-nine experts by the August 22 date in the

case management order (with a few exceptions agreed to by the parties to accommodate

schedules).  Exh. 15.  That Order establishes a pre-trial motions deadline of September 12 and a

trial-ready date of November 7, 2025.  *Id.*  The state court's last act before this second removal

was to grant the State's contested motion for a status conference "to hear from counsel regarding

the remaining deadlines, expected motion practice, and proposed length, scheduling" and

procedures for a lengthy and complex trial; the Court agreed that "a status conference would be

helpful to the parties and the court."  Exh. 16.  After 3M removed, the state court rescheduled the

status conference to September 5, stating that the "hearing will be continued if the case remains

in federal court at that time."  Exh. 17.

## ARGUMENT

**I.    3M failed to comply with the removal statute and this Court's rules.**

This case should be remanded because 3M failed to comply with the procedural

requirements of 28 U.S.C. § 1446(a) and this Court's Local Rules.  Section 1446(a) provides that

the removing defendant "*shall file*" with the notice of removal "a copy of all process, pleadings,

and orders served upon such defendant or defendants in such action."  28 U.S.C. §1446(a)

(emphasis added).  Local Rule 81 provides: "A notice of removal *must* be accompanied by (1) *all*

documents required by 28 U.S.C. § 1446(a)."  L.R. 81(a) (emphases added).[7]  "[S]tatutory

procedures for removal are to be strictly construed," *In re Methyl Tertiary Butyl Ether Prods.

Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks omitted), and "nothing in

the statute provides a court with any discretion to allow a party to cure a failure to meet the

---

[7] This requirement is separate from the removing party's obligation to notify the state court,
which may then transfer the state court file.  *See* 28 U.S.C. § 1446(d); L.R. 81(b).

statute's requirements once the thirty-day period for removal lapses," *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 153 (2d Cir. 2021).

3M did not include with its second notice of removal any of the service-of-process documents, the pleadings served on it (including the initial complaint, the First Amended Complaint, or any answers to any of the complaints), or any of the state court orders. The only required document it filed was the State's Second Amended Complaint. Attached hereto is a copy of excerpts of the state court docket, Exh. 18, which shows a number of documents 3M failed to serve.[8] 3M had thirty days to comply from the date that triggered its right to remove, 28 U.S.C. § 1446(b)(3), which 3M says was July 9. 3M failed to do so.

Courts in the Second Circuit have repeatedly remanded cases for failure to comply with this procedural requirement. For example, in *Elliott v. Jaquez*, the court remanded where defendants "did not attach state-court orders which had been previously served on them in the state litigation," and held that "[b]ecause attachment of these orders was required per 28 U.S.C. § 1446(a), Defendants' failure to include them in their removal notice is grounds for remand." *Elliott v. Jaquez*, 777 F. Supp. 3d 136, 150 (E.D.N.Y. 2025). Similarly, in *Diallo v. Puerta*, the court remanded because the defendant failed to file pleadings served in state court. 2024 WL 640066, at *4 (E.D.N.Y. Feb. 15, 2024).[9]

To be sure, some courts in this Circuit have held this requirement is curable, on the ground that "[p]rocedural rules such as the directions found in section 1446(a) are not jurisdictional."

---

[8] *See* the highlighted docket entries in Exh. 18.

[9] For other examples, *see New York State Cnty. of Nassau Supreme Ct. v. Powell*, 2018 WL 9986665, at *2 (E.D.N.Y. Aug. 8, 2018); *Polito v. Hanover Ins. Grp., Inc.*, 2018 WL 3598873, at *5–6 (W.D.N.Y. July 27, 2018); *Matter of Proceeding for Support Under Fam. Court Act*, 2017 WL 6327549, at *3 (E.D.N.Y. Dec. 11, 2017); *Marie-Dessisso v. JP Morgan Chase Bank, N.A.*, 2015 WL 5732127, at *2 (E.D.N.Y. Sept. 28, 2015).

*Moorer v. Incorporate Vill. of Hempstead*, 2020 WL 4003605, at *1 (E.D.N.Y. July 15, 2020). But the procedural defect at issue in *Taylor* was similarly non-jurisdictional, as the Second Circuit itself pointed out, yet the Court held it had no discretion due to the mandatory language of the statute. 15 F.4th at 151 n.2, 152. The cases holding this defect to be curable do not comport with that mandatory language. Nor do they involve this Court's Local Rule 81. The case should be remanded on this ground alone.

## II.    3M's removal is untimely.

3M's removal also fails to comply with the removal statute because it is untimely. Under 28 U.S.C. § 1446(b)(1), "[a] defendant has up to thirty days from receipt of an initial pleading to file a notice of removal." *Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 148 (2d Cir. 2023). If a defendant wishes to remove after that, it must meet two requirements: (1) "the case stated by the initial pleading must be not removable," and (2) "a defendant must file the notice of removal within thirty days after receipt of a paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* (internal quotation marks omitted). A defendant must "apply a reasonable amount of intelligence in ascertaining removability." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 143 (2d Cir. 2014) (internal quotation marks omitted). And in ascertaining removability, a paper must be "viewed alongside preceding documents from th[e] case." *New Hampshire v. 3M Co.*, 132 F.4th 556, 561 (1st Cir. 2025). Courts "rigorously enforce" the thirty-day deadline. *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991). If "a notice of removal is untimely, the case must be remanded to the state court." *Abbo-Bradley*, 73 F.4th at 146.

Here, ███████████████████████████████████████████████████
████████████████████████████████████████████████ As set forth below, this allegation of *possible* AFFF migration does not suffice to show actual *plausible* migration

reaching any particular site, so there is no evidence of cross-contamination sufficient to support removal. *See* § III, *infra*. But even if 3M's speculation sufficed to establish plausibility, 3M's removal would be untimely because ████████████████████████████████ ████████████████████ was reasonably ascertainable long before 3M removed. *See Abbo-Bradley*, 73 F.4th at 149 ("As any grounds for removal between Plaintiffs' initial and amended complaints remains the same," removal was untimely).

*First*, the initial complaint filed in 2019 put 3M on notice that PFAS contamination travels "great distances," including in groundwater, Exh. 1 ¶ 247(c), and that such contamination "continues to spread," *id.* ¶ 282. It further alleged that PFAS contamination is "widespread," "ubiquitous," and found "throughout the State." *Id.* ¶¶ 2, 8, 9. 216. The complaint further notified 3M that the State was seeking relief for AFFF contamination in a separate lawsuit and disclaimed any relief related to AFFF, which informed 3M about potentially overlapping AFFF contamination—otherwise the State would have had nothing to disclaim. *Id.* ¶ 13. Thus, even accepting for argument 3M's contention ████████████████████████████████ ████████████████ that simply left the case where it had originally been, *i.e.*, with clear notice to 3M of PFAS contamination that moves long distances, is ubiquitous in the state, and that comes in part from AFFF. In *New Hampshire*, the First Circuit held that 3M's removal of a sister state's non-AFFF case was untimely based on similar statements in the state's legal papers putting 3M on notice of potentially overlapping contamination. 132 F.4th at 562–63 (state legal brief in non-AFFF case describing "pervasive" PFAS contamination and disclaiming any recovery for contamination from AFFF put 3M on notice).

*Second*, other papers received by 3M in this case long before July 9 informed 3M of the very fact that it says it only learned from the ████████████████—namely, the possibility

14

that PFAS contamination from AFFF can travel long distances in groundwater.  In addition to the

initial complaint, on January 22, 2025, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

This deposition constituted an "other paper" from which 3M could have ascertained that it is

possible for PFAS to reach drinking water supplies more than two miles from an AFFF source.

*See Romulus v. CVS Pharmacy*, 770 F.3d 67, 78 (1st Cir. 2014) (noting deposition transcripts

constitute an "other paper" within the meaning of section 1446(b)(3)).  And on February 21,

2025, 3M received DuPont's expert disclosure of ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████    In short ██████████ testimony was not

news at all.

        3M also claims it was news ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████    In

---

[10] A co-defendant's amended pleading, motion, or other paper can trigger the removal clock of
28 U.S.C. § 1446(b)(3).  *See Dearien v. Union Carbide Corp.*, 530 F. Supp. 3d 622, 630–32
(S.D.W. Va. 2021) (co-defendant's answer triggered clock: "By its terms, [the statute] contains
no requirement that any of these documents be created by or received from a plaintiff.").
*Dearian* noted that, though the Second Circuit's *Cutrone* decision has language that "when read
in isolation" suggests the paper must come from the plaintiff, a "closer reading" reveals *Cutrone*
did not address the issue.  *Id.* at 631.

[11] ████████████████████████████████████████████████████████████

fact, the State's 2019 complaint alleged that PFAS migrate over long periods of time.  Exh. 1 ¶¶

217 ("PFAS are "resistan[t] to biodegradation" and therefore "continue[] to move through

groundwater [and] surface waters"), 222–23 (PFAS will continue to "move[] through

groundwater" until they are remediated or treated).

      *Third*, 3M alleges that AFFF could have migrated ████████████████████████

(which themselves have been excluded from the case since July 15, 2024) ██████████████

█████████████████████████, but this, too, is old news.  State testimony long before

2025 supported the proposition that AFFF could migrate ███████████████ State

witnesses also testified in 2023 and 2024 that AFFF had entered the Winooski River.  Exh. 19 at

335:3–337:1; Exh. 20 at 257:10–259:23; Exh. 8 at 263:19–24.

      A final fact that 3M needed to know in order to remove was that it (allegedly) made its

AFFF products according to a government specification.  3M does not appear to contend that it

lacked proper notice of this fact until July 9, with good reason.  As this Court held in remanding

this case the first time, "a company like 3M that commonly works with MilSpecs can be

expected to be aware of when its products are made to such specifications."  *3M Co.*, 2024 WL

1596887, at \*5; *see also id.* \*5 n.5 (collecting cases).  Moreover, in its first motion to remand,

filed January 2024, the State expressly stated that 3M had removed Vermont's AFFF case on the

theory that 3M and others "manufactured AFFF according to military design specifications."

State of Vermont's Motion to Remand at 1–2, *State of Vermont v. 3M, et al.*, No. 2:24-cv-00019-

_____

███████████████████████
████████████████████████████████████████████████████

[12] *E.g.*, Exh. 21 at 238:9–19 ("it's certainly possible for AFFF that was discharged to . . . surface water to mix in and become part of the PFAS cycle"); ██████████████████ Exh. 22 at 199:13–200:6 (it was "a possibility" that AFFF from fire department facilities could drain into tributaries or watersheds that drain into Lake Memphremagog).

WKS (D. Vt. Jan. 26, 2024) (Dkt. No. 10).  This constituted additional notice on the MilSpec issue.

In short, 3M's removal was untimely because any basis for its theory of federal jurisdiction that exists now also existed long ago, either at the outset of the case or in all events when 3M received any of the foregoing papers.

## III.  This case is not removable under the "federal officer" doctrine.

Even if the Court finds 3M's removal timely, 3M has not met its burden to show this case is removable under the federal officer statute.  To remove under the federal officer statute, 28 U.S.C. § 1442(a)(1), a defendant must "(1) show that it is a person within the meaning of the statute who acted under a federal officer, (2) show that it performed the actions for which [it is] being sued under color of federal office, and (3) raise a colorable federal defense."  *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 142–43 (2d Cir. 2023) (alteration in original) (internal quotation marks omitted).  Under the first and second factors, there must be a "causal nexus" between the defendant's federal actions and the plaintiff's claims.  *Id.* at 144–45.  The "defendant always has the burden of establishing that removal is proper."  *Id.* at 132 (internal quotation marks omitted).

3M has not met its burden to show there is a causal nexus between its production of AFFF and the non-AFFF claims in this case.

## A.  The State's express disclaimer of any relief for injuries caused by AFFF precludes federal officer jurisdiction.

The State's express legal disclaimer of any recovery for contamination related to AFFF negates any nexus between the complaint and 3M's purported production of AFFF for the federal government, making 3M's government contractor defense irrelevant.  The disclaimer states: "The State is not seeking to recover through this Second Amended Complaint any relief for

contamination or injury related to Aqueous Film Forming Foam." SNOR Exh. 1 ¶ 13. The State

of Maine used this exact same disclaimer in a PFAS case it filed against 3M, and the Maine

federal district court found this language to be "express, unambiguous and plain"; the court held

that it "fits within the category of express disclaimers courts have found effective to justify a

remand order." *Maine v. 3M Co.*, 2023 WL 4758816, at *10 (D. Me. July 26, 2023), *appeal

pending*, No. 23-1709 (1st Cir.). The same is true here.

Two other federal district courts have similarly upheld disclaimers in non-AFFF PFAS

cases brought by states against 3M and other defendants. The Connecticut federal district court

held that Connecticut's "express disclaimer is exactly the type that defeats federal officer

removal jurisdiction." *Connecticut v. EIDP, Inc.*, 2024 WL 5135601, at *4 (D. Conn. Dec. 17,

2024), *appeal pending*, No. 25-11 (2d Cir.). And the New Hampshire federal district court

reached the same conclusion because the disclaimer meant "there is no scenario under which 3M

could be found liable for any damages caused by AFFF." *New Hampshire v. 3M Co.*, 665 F.

Supp. 3d 215, 221, 227–28 (D.N.H. Mar. 29, 2023), *aff'd on other grounds*, 132 F.4th 556 (1st

Cir. 2025).

The Seventh Circuit similarly relied on a disclaimer to remand another statewide PFAS

case removed by 3M. *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024). In *Raoul*,

the State of Illinois said that if any site were found to be even partially contaminated by AFFF,

then Illinois would not seek any relief at all for that site in its state court action. *Id.* at 849. The

Seventh Circuit held this disclaimer made 3M's federal contractor defense "wholly irrelevant,"

18

and it affirmed the remand of the case to state court. *Id.*[13]  The Third Circuit and First Circuit

have relied on similar disclaimers to remand lawsuits.[14]

 This conclusion in *Maine*, *Connecticut*, *New Hampshire*, *Raoul*, *Hoboken*, and *Rhode*

*Island* has been echoed in many other cases where courts have held that there is no federal

officer jurisdiction when a plaintiff has specifically limited its claims to injuries from products

other than those allegedly made at the direction of a federal officer.[15]  As these decisions have

reasoned, to allow removal of such cases "would affirm [the] right to assert a defense against a

claim that does not exist."  *Kelleher v. A.W. Chesterton Co.*, 2015 WL 7422756, at *2 (S.D. Ill.

Nov. 23, 2015).  Put differently, 3M is not entitled to a federal forum to address a defense to a

claim that the State has disclaimed.

 Ignoring the weight of authority upholding disclaimers, 3M relies heavily on a decision

from the Fourth Circuit reversing remand orders in PFAS cases brought by Maryland and South

---

[13] 3M quotes a passage in *Raoul* which suggested that partial disclaimers are ineffective, *see, e.g.*, SNOR ¶ 7, but 3M neglects to mention that *Raoul* ultimately remanded the case to state court because the disclaimer at issue was (like Vermont's) comprehensive.

[14] *See City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) (holding plaintiffs' "disclaimers are no ruse," because plaintiffs had a right to "carve out a small island that would needlessly complicate their cases"); *Rhode Island v. Shell Oil Prod. Co.*, 979 F.3d 50, 60 (1st Cir. 2020) (disclaimer of injuries from federal fossil fuel sales meant there was "simply no nexus between anything for which [the plaintiff] seeks damages and anything the [defendant] allegedly did at the behest of a federal officer"), *vacated on other grounds*, 141 S. Ct. 2666 (2021).

[15] *See, e.g.*, *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363–65 (S.D. Fla. 2016); *Kelleher*, 2015 WL 7422756, at *2–3; *Maguire v. A.C.&S., Inc.*, 2015 WL 4934445, at *2 (S.D.N.Y. Aug. 18, 2015); *Hayden v. 3M Co.*, 2015 WL 4730741, at *3–4 (E.D. La. Aug. 10, 2015); *Lockwood v. Crane Co.*, 2012 WL 1425157, at *2 (C.D. Cal. Apr. 25, 2012); *Pratt v. Asbestos Corp. Ltd.*, 2011 WL 4433724, at *1 (N.D. Cal. Sept. 22, 2011); *Hopkins v. Buffalo Pumps, Inc.*, 2009 WL 4496053, at *6–7 (D.R.I. Dec. 1, 2009); *Farrow v. Foster Wheeler Energy Corp.*, 2008 WL 11508373, at *2 (W.D. Wash. Aug. 28, 2008); *Sheppard v. Northrop Grumman Sys. Corp.*, 2007 WL 1550992, at *7 (E.D. La. May 24, 2007); *Westbrook v. Asbestos Defs. (BHC)*, 2001 WL 902642, at *3 (N.D. Cal. July 31, 2001); *cf.*, *Att'y Gen. of New Jersey v. Dow Chem. Co.*, 2024 WL 3361395, at *6 (D.N.J. July 9, 2024) (collecting cases upholding disclaimers in other contexts).

Carolina.  *See Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025).  But *Maryland* supports the

State's position.  In *Maryland*, the court embraced the Seventh Circuit's holding that a plaintiff's

express disclaimer of *any* recovery for AFFF in a non-AFFF case is effective and thus a plaintiff

making such a disclaimer "may remain in state court."  *See id.* at 392 & n.6 (discussing *Raoul*

and finding "its reasoning is sound").  However, the court found that Maryland and South

Carolina had "made clear" they "envision recovering for mixed [AFFF and non-AFFF] PFAS

contamination from numerous geographic locations."  *Id.* at 392.  Here, like Illinois, Vermont

disclaims any recovery for a site that is even partially contaminated by AFFF.  *Maryland*

supports remand.

        3M also relies on *Puerto Rico v. Express Scripts, Inc.*, 119 F. 4th 174 (1st Cir. 2024), but

this was another case where the court found the plaintiff's disclaimer was only partial.  Puerto

Rico disclaimed relief related to the defendants' work for the federal government, but still sought

recovery for conduct that was partly federal in nature.  *Id.* at 191.  Here, Vermont's disclaimer is

comprehensive.  *See Connecticut*, 2024 WL 5135601, at *6 ("*Express Scripts* . . . can be

distinguished factually" because Connecticut's "disclaimer is not 'incomplete'").

        3M also relies on another very different case, *Nessel v. Chemguard, Inc.*, 2021 WL

744683 (W.D. Mich. Jan. 6, 2021).  In *Nessel*, the plaintiffs tried to distinguish between different

types of AFFF (commercial grade and military grade), and the court held that they provided "no

evidence in support" of their allegation that the injuries from commercial AFFF and MilSpec

AFFF would be distinguishable.  *Id.* at *3.  By contrast, in this action Vermont disclaims relief

from *any* kind of AFFF contamination, whether commercial or MilSpec.  More fundamentally,

*Nessel* contradicts the many decisions in which disclaimers have been given effect.  On this

basis, two courts have concluded that *Nessel* is simply incorrect.  *Illinois ex rel. Raoul v. 3M Co.*,

693 F. Supp. 3d 948, 957–58 (C.D. Ill. 2023), *aff'd*, 111 F.4th 846; *Grosch v. Tyco Fire Prods. LP*, 2023 WL 5993548, at *7 n.6 (D. Ariz. Sept. 15, 2023).  *Nessel* should not be followed here.

The overwhelming weight of authority supports giving effect to the State's disclaimer in this action.  Remand is required on this basis as well.

**B. 3M has not met its burden of demonstrating a plausible connection between AFFF and the sites in this case.**

3M has also failed to identify any sites at issue in this case where commingling of its AFFF with non-AFFF contamination has occurred or is even plausible—another reason 3M has failed to meet its burden to show a causal nexus between the State's claims and 3M's alleged federal conduct.  *See Exxon Mobil*, 83 F.4th at 145.

"The defendant always has the burden of establishing that removal is proper."  *Id.* at 132 (internal quotation marks omitted).  Additionally, when a plaintiff challenges the defendant's jurisdictional allegations, the removal must be supported by "competent proof" and justified by a "preponderance of the evidence."  *United Food & Com. Workers Union v. CenterMark Props. Meriden Square.*, 30 F.3d 298, 305 (2d Cir. 1994) (internal quotation marks omitted).  The importance of scrutinizing removal is "at its zenith where, as here, the suit was brought by a State itself, as the claim of sovereign protection from removal in such circumstances arises in its most powerful form."  *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 392 (S.D.N.Y. 2014) (internal quotation marks omitted).[16]

3M takes testimony merely stating that ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████ hat this case "*does* encompass alleged damages attributable to MilSpec-containing

---

[16] *Accord Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.").

AFFF." SNOR ¶ 7 (emphasis in original). But ███████████████████████████

██████████████████ is a far cry from an actual, plausible factual basis that there has been AFFF

cross-contamination at any of the sites at issue in this case. ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ Additionally, contrary

to 3M's assertions, ████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

3M, moreover, identifies only two sites in its notice of removal: the City of South

Burlington landfill and the Burlington-North wastewater treatment facility. SNOR ¶ 44. But the

South Burlington landfill is not at issue in this case.[17] As to the wastewater treatment facility,

3M can only say that it is "in and around the Air National Guard base" and make vague

references ██████████████████████████████ *Id.* ¶ 44. 3M neglects to mention how

far the facility is from the ANG base or how AFFF from the base plausibly could have gotten

into the wastewater treatment facility. 3M also makes a general reference to ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████ 3M's allegations regarding possible commingling are not enough to meet its

burden.

---

[17] ██████████████████████████████████████████████████
██████████████████████████████████████████

In fact, 3M's own caselaw recognizes that simply alleging that commingling "may have" happened because it is "possible" for PFAS to travel does not make commingling *plausible*.[18] 3M cites *Maryland v. 3M Co.*, which requires "a plausible allegation that federal jurisdiction is proper"—an allegation that is "analyzed under the same scrutiny as Rule 8's pleading requirements." 130 F.4th at 387 (internal quotation marks omitted) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)).  And under the Rule 8 standard, "plausibility" "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility. . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  3M's speculative allegations about "possible commingling" cannot support removal.  *See Exxon Mobil*, 83 F.4th at 144 (defendant did not meet "burden of providing candid, specific and positive allegations" of the elements of federal officer removal (internal quotation marks omitted)).

What is more, the available evidence here is that, *in actual fact*, any AFFF groundwater plumes in Vermont have not contaminated sites ████████████████ potential AFFF sources, including the Burlington-North WWTF.  State witnesses have repeatedly testified that there is no evidence of AFFF sources of PFAS contamination at the sites at issue in this case.[19] ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████ And with

---

[18] 3M cites *Express Scripts* for the proposition that courts "must credit [the removing party's] theory of the case" in federal officer removal.  SNOR ¶ 8.  But crediting a party's theory of the case does not mean removal is proper based on pure speculation.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) ("[A] defendant seeking to remove an action may not offer mere legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction.").  Moreover, where the plaintiff submits evidence rebuffing the defendant's allegations, the standard is a "preponderance of the evidence" even in the federal officer context.  *See United Food & Com. Workers Union*, 30 F.3d at 305.

[19] *E.g.*, Chapman Decl. ¶ 7; ██████████████████████████ Exh. 26 at 153:20–24.

respect to contamination of drinking water wells, ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ With

respect to the Burlington-North WWTF, this facility receives its waste from offsite sources and

discharges into the Winooski River, not the other way around.  Twohig Decl. ¶ 5 ("there is no

basis to conclude that AFFF from the ANG base has reached the Facility"); ████████████

████████

     In short, 3M has failed to identify a single plausible example of actual commingling and

thus fails to carry its burden.

### C. Any causal connection is too miniscule to hale the State into federal court.

     Even if *arguendo* 3M could assert plausible AFFF contamination at a single site or even a

few sites, courts have rejected federal officer jurisdiction where the federal defense is based on

such a tiny fraction of the case.  *See City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d

Cir. 2022) (crediting "estimate[] that the Department of Defense is responsible for less than

1/800th of the world's energy consumption" and rejecting federal officer removal jurisdiction

"on so small a slice of the pie").[20]

---

[20] *Accord Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020) (recognizing that it is
reasonable "to require a removing defendant to allege more than a de minimis amount of federal
transactions to establish jurisdiction"); *Mayor & City Council of Baltimore v. BP P.L.C.*, 952
F.3d 452, 466–68 (4th Cir. 2020) (remanding because "the relationship between Baltimore's
claims and any federal authority . . . is too tenuous to support removal under § 1442"), *vacated
on other grounds*, 593 U.S. 230 (2021); *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 870 (E.D.
Mo. 2016) (amount of PCBs manufactured for the federal government "is simply too small to
satisfy the requirement that there be a causal connection").

The Court should do likewise here.  The acts for which 3M has been sued include

producing enormous volumes of PFAS chemicals for some 75 years, combined with a campaign

of deception by 3M over the same period, all causing contamination across Vermont and all

unrelated to AFFF.  *See* SNOR Exh. 1 ¶¶ 71–124.  Not even 3M has contended that this long-

lasting and extensive course of conduct somehow occurred because of a federal government

request to produce AFFF.

## CONCLUSION

The State respectfully requests that this case be immediately remanded to Vermont state

court.

Dated: August 11, 2025                              Respectfully submitted,

                                                    STATE OF VERMONT

                                                    CHARITY R. CLARK
                                                    ATTORNEY GENERAL

                                                    */s/ Laura B. Murphy*
                                                    Laura B. Murphy
                                                    Assistant Attorney General
                                                    109 State Street
                                                    Montpelier, VT 05609-1001
                                                    (802) 828-3186
                                                    laura.murphy@vermont.gov

                                                    Matthew F. Pawa
                                                    Benjamin A. Krass
                                                    Kyle Landis-Marinello
                                                    MacKennan Graziano (*pro hac vice* forthcoming)
                                                    Pawa Law Group, P.C.
                                                    1280 Centre Street, Suite 230
                                                    Newton Centre, MA  02459

                                                    Kyle J. McGee (*pro hac vice*)
                                                    Viola Vetter (*pro hac vice*)
                                                    Grant & Eisenhofer P.A.
                                                    123 Justison Street
                                                    Wilmington, DE 19801
                                                    (302) 622-7000