# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

STATE OF VERMONT,

                Plaintiff,

    v.

3M COMPANY; E. I. DU PONT DE NEMOURS
AND COMPANY; THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC; CORTEVA,
INC.; AND DUPONT DE NEMOURS, INC.,

                Defendants.

Case No. 2:25-cv-00660

JURY TRIAL DEMANDED

## DEFENDANT 3M COMPANY'S OPPOSITION TO
## PLAINTIFF STATE OF VERMONT'S MOTION TO REMAND

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 3

    I.    PFAS And MilSpec AFFF ............................................................... 3

    II.    The State's Two Suits ...................................................................... 4

ARGUMENT ....................................................................................................... 6

    I.    3M Properly Removed This Case Under The Federal-Officer
        Removal Statute ............................................................................. 7

        A.    3M Plausibly Alleges The Elements Of Federal-Officer
            Removal ............................................................................. 7

        B.    The State's Disclaimer Is Mere Artful Pleading And Legally
            Irrelevant .......................................................................... 13

    II.    The State's Procedural Objections To Removal Lack Merit ........................... 16

        A.    3M's Removal Was Timely ................................................. 16

        B.    This Court Has The Materials Required By Section 1446(a) .............. 23

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan,*
    986 F.3d 168 (2d Cir. 2021)................................................................7, 8, 11, 12, 16

*Akin v. Ashland Chem. Co.,*
    156 F.3d 1030 (10th Cir. 1998) ..................................................................18, 21

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.,*
    2022 WL 4291357 (D.S.C. Sept. 16, 2022)...................................................12

*Baker v. Atl. Richfield Co.,*
    962 F.3d 937 (7th Cir. 2020) ..................................................................8, 12, 14

*Becker v. Montgomery,*
    532 U.S. 757 (2001).....................................................................................24, 25

*Boyle v. United Techs. Corp.,*
    487 U.S. 500 (1988)......................................................................................4, 12

*City of Hoboken v. Chevron Corp.,*
    45 F.4th 699 (3d Cir. 2022) ...............................................................................16

*City of Irondale v. 3M Co.,*
    2025 WL 2419238 (N.D. Ala. Aug. 19, 2025) .......................................................15

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def.*
*Ass'n of Phila.,*
    790 F.3d 457 (3d Cir. 2015)....................................................................................8

*Connecticut v. EIDP, Inc.,*
    2024 WL 5135601 (D. Conn. Dec. 17, 2024).......................................................16

*Cook v. Randolph Cnty.,*
    573 F.3d 1143 (11th Cir. 2009) ...........................................................................24

*Countryman v. Farmers Ins. Exch.,*
    639 F.3d 1270 (10th Cir. 2011) ...........................................................................23

*Covington v. Indem. Ins. Co. of N. Am.,*
    251 F.2d 930 (5th Cir. 1958) ...............................................................................24

*Cuomo v. Crane Co.,*
    771 F.3d 113 (2d Cir. 2014)..............................................................4, 11, 12, 15

*Curiale v. A. Clemente, Inc.,*
    2023 WL 4362722 (D.N.J. July 5, 2023).............................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
    749 F.3d 137 (2d Cir. 2014).................................................................2, 17, 18, 20, 21, 22, 23

*Dart Cherokee Basin Operating Co. v. Owens*,
    574 U.S. 81 (2014).................................................................................................7, 11, 25

*Dietrich v. Boeing Co.*,
    14 F.4th 1089 (9th Cir. 2021) .........................................................17, 18, 20, 21, 22

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ...........................................................................17

*Enbridge Energy, LP v. Nessel*,
    No. 24-783 (U.S.)................................................................................................25

*Foman v. Davis*,
    371 U.S. 178 (1962) .............................................................................................24

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008)..............................................................................7, 8

*Kircher v. Putnam Funds Tr.*,
    547 U.S. 633 (2006)..............................................................................................7

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
    707 F.3d 1136 (9th Cir. 2013) ........................................................................24, 25

*London v. Polishook*,
    189 F.3d 196 (2d Cir. 1999).................................................................................11

*Martinez v. Dep't of Transp.*,
    2025 WL 733429 (3d Cir. Mar. 7, 2025) ............................................................24

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) ..........................................1, 2, 7, 8, 9, 10, 11, 13, 14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    399 F. Supp. 2d 340 (S.D.N.Y. 2005)...............................................................24

*Moltner v. Starbucks Coffee Co.*,
    624 F.3d 34 (2d Cir. 2010)...................................................................................21

*Moore v. Elec. Boat Corp.*,
    25 F.4th 30 (1st Cir. 2022)...................................................................................12

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)...............................................................................................8

*Nadler v. Mann*,
    951 F.2d 301 (11th Cir. 1992) .............................................................................12

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Nessel v. Chemguard, Inc.*,
2021 WL 744683 (W.D. Mich. Jan. 6, 2021) .......................................................................15

*New Hampshire v. 3M Co.*,
132 F.4th 556 (1st Cir. 2025)..............................................................................................20

*Powers v. Chesapeake & Ohio Ry. Co.*,
169 U.S. 92 (1898)...............................................................................................................25

*Puerto Rico v. Express Scripts, Inc.*,
119 F.4th 174 (1st Cir. 2024)....................................................................................8, 13, 14

*Illinois ex rel. Raoul v. 3M Co.*,
111 F.4th 846 (7th Cir. 2024) .............................................................................................15

*Rhode Island v. Shell Oil Prods. Co.*,
979 F.3d 50 (1st Cir. 2020).................................................................................................16

*Riehl v. Nat'l Mut. Ins. Co.*,
374 F.2d 739 (7th Cir. 1967) ..............................................................................................24

*Rocha v. Brown & Gould, LLP*,
61 F. Supp. 3d 111 (D.D.C. 2014)......................................................................................25

*Romulus v. CVS Pharmacy, Inc.*,
770 F.3d 67 (1st Cir. 2014).................................................................................................22

*Sawyer v. Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) ..............................................................................................12

*Taylor v. Medtronic, Inc.*,
15 F.4th 148 (2d Cir. 2021) ................................................................................................24

*Usatorres v. Marina Mercante Nicaraguenses, S.A.*,
768 F.2d 1285 (11th Cir. 1985) ..........................................................................................24

*Vermont v. 3M Co.*,
2024 WL 1596887 (D. Vt. Apr. 12, 2024)............................................................................5

*Vermont v. 3M Co.*,
2025 WL 2394534 (2d Cir. Aug. 19, 2025)............................................2, 5, 17, 18, 20, 22, 23

*Vitiello v. Contracting*,
2016 WL 1239259 (E.D.N.Y. Mar. 29, 2016)....................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................................10

*Walton v. Bayer Corp.*,
643 F.3d 994 (7th Cir. 2011) .........................................................................................23, 24

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007) ................................................................................................7

*Williams v. Boehrer*,
  530 F. App'x 891 (11th Cir. 2013) ........................................................................24

*Willingham v. Morgan*,
  395 U.S. 402 (1969) .....................................................................................7, 12, 25

*Woodroffe v. Florida*,
  611 F. App'x 679 (11th Cir. 2015) ........................................................................24

**Statutes**

28 U.S.C. § 1442 ..........................................................................................6, 7, 8

28 U.S.C. § 1446 ..........................................2, 11, 16, 17, 18, 20, 21, 23, 24

28 U.S.C. § 1447 ........................................................................................24

**Treatises**

Black's Law Dictionary (5th ed. 1979) ..............................................................8

14C Wright & Miller, *Federal Practice and Procedure*
  (4th ed. 2025) .................................................................................12, 24

## INTRODUCTION

This case belongs in federal court. The State attempts to recover for alleged presence of PFAS in its natural resources through two separate suits: one seeks recovery for contamination allegedly caused by PFAS from aqueous film-forming foam (AFFF), while the other (this suit) purports to exclude damages for contamination caused by AFFF. That is the only difference between them, and it is crucial because 3M manufactured AFFF in part for the federal government according to precise military specifications (MilSpec), giving rise to a federal government-contractor defense—and thus federal jurisdiction. The State has insisted that a boundary separated the two suits, disclaiming recovery for PFAS from AFFF and purportedly excluding all sites with any possible AFFF contamination from this "non-AFFF" suit by ███████████████████████ ██████████████████████████████████████

In July 2025, however, testimony from the State's expert revealed that this boundary is a sham and, on the State's *own legal theory*, this suit implicates MilSpec AFFF. Contradicting years of State protestations, that new testimony demonstrates that the State seeks to recover in this case at sites where—under its expert's view—PFAS from AFFF is plausibly commingled with PFAS from non-AFFF sources. 3M thus has a colorable federal government-contractor defense as to such sites. It promptly removed this case so that a federal court and factfinder can decide the extent to which the alleged contamination stems from products made according to MilSpec.

The State nevertheless resists removal, but nothing in its motion to remand defeats this Court's jurisdiction. The State's substantive arguments against removal are meritless. It primarily asserts that its disclaimer negates any connection between this suit and 3M's production of AFFF. But federal appellate courts have repeatedly rejected that contention—most recently the Fourth Circuit in another PFAS suit by other States against 3M, *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025). As *Maryland* makes clear, States' "artful crafting of their complaints" that "attempts

to draw a line between 3M's federal and non-federal work" cannot frustrate federal-court jurisdiction. *Id.* at 392–93. The same is true here: Removal is proper because 3M's notice of removal—relying on new testimony by a State expert—plausibly alleges that 3M's production of MilSpec AFFF is "inextricably related to" the claims in this case. *Id.* at 391. The State's disclaimer cannot nullify the need for a federal forum to decide "the important causation and allocation questions" that will determine the scope and availability of 3M's government-contractor defense. *Id.* at 392.

The State's remaining, procedure-based objections to removal are makeweights. The State contests the timeliness of 3M's notice of removal. But 3M removed the case within *seven days* of receiving the "paper from which it may first be ascertained that the case is one which is or has become removable" based on AFFF commingling, 28 U.S.C. § 1446(b)(3): the deposition transcript documenting the State's expert's belated revelation (assuming that revelation alone, without further independent investigation by 3M, triggered the removal clock). The State does not and cannot point to any prior paper 3M received from anyone showing that this case implicates Mil-Spec AFFF on the State's *own* legal theory. The State argues instead that 3M has long known of commingling. But under Second Circuit precedent—including a decision issued last week in this very case—timeliness turns not on a defendant's subjective knowledge but on whether a defendant received a paper that made the basis for removal "certain[ ]." *Vermont v. 3M Co.*, 2025 WL 2394534, at *3–4 (2d Cir. Aug. 19, 2025); *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 142–43 (2d Cir. 2014). Indeed, even with that new expert testimony from the State, 3M still had to identify sources of MilSpec AFFF and determine whether any of the sites at issue here might plausibly have PFAS from those sources based on the State's new theory. Given the State's years-long campaign of denying commingling and obscuring the case's true scope, it cannot credibly contend that 3M should have removed even sooner.

The State stretches even further in urging remand on the ground that 3M's notice did not attach certain state-court filings. Every circuit to address the issue has rejected that specious contention. Federal jurisdiction turns on timely removal, not on ministerial matters. Between this proceeding and a prior removal in this litigation, the state court itself had already transmitted the bulk of the state-court record, and 3M has now filed the process, pleadings, and orders. The State identifies no prejudice that could plausibly justify remanding based on that formality.

This Court should not reward the State's gamesmanship. It should reject the State's attempt to obfuscate the scope of the suit and deprive 3M of the federal forum to which it is entitled.

## BACKGROUND

### I.    PFAS And MilSpec AFFF

PFAS are chemicals used in a wide variety of products. Dkt. 1-1 ¶¶ 2, 5, 39 (State's Second Amended Complaint) ("Compl."). PFAS are also key ingredients in AFFF, a firefighting foam used by the U.S. military on bases, airfields, and ships to extinguish fuel-based fires. Dkt. 1, ¶¶ 38–41 ("NOR"). Where fuel fires are "inevitable and potentially devastating," AFFF saves lives. *Id.*

Although the U.S. Naval Research Laboratory developed AFFF, the government needed chemical manufacturers' assistance to maintain a sufficient supply. NOR ¶¶ 38–41. The Department of Defense (DOD) thus developed detailed military specifications (MilSpec) for use by private manufacturers. *Id.* AFFF suppliers must follow rigorous inspection procedures to "'ensure supplies . . . conform to [the] prescribed requirements.'" *Id.* ¶ 39. The Navy carefully tests products for compliance. *Id.* ¶ 52. Until recently, the specifications mandated any AFFF produced for the military contain "fluorocarbon surfactants"—a class of PFAS. *Id.* ¶ 40. While the AFFF MilSpec no longer identifies PFAS by name, it still requires their presence. *Id.* ¶ 40 & n.11.

3M manufactured and sold MilSpec AFFF to the federal government for over three decades. *Id.* ¶ 41. The military has used 3M's MilSpec AFFF at facilities across the country, including

in Vermont.  *Id.*  Those sites include the Air National Guard facility in South Burlington and the

Camp Ethan Allen Training Site in Jericho/Underhill.  *Id.* ¶ 42.

## II.    The State's Two Suits

In June 2019, Vermont filed two separate actions against 3M and other defendants.  NOR

¶¶ 13, 17.  Both suits assert that 3M "designed, manufactured, . . . sold, and/or otherwise supplied"

products containing PFAS.  Compl. ¶ 33; Dkt. 1-2 ¶ 50 ("AFFF Compl.").  Both suits allege that

PFAS compounds contaminated the State's natural resources and seek recovery for that alleged

contamination.  Compl. ¶¶ 8, 13; AFFF Compl. ¶¶ 12, 17.  One suit, however, seeks damages for

and abatement of harms allegedly caused by PFAS from AFFF, *see* AFFF Compl. ¶¶ 1–17, 89–

134, 327–84, 442, 448 & pp. 107–08, while the other (this suit) purportedly does not.  The State

seeks damages in this case for and abatement of all PFAS contamination in Vermont but expressly

disclaims recovery for "contamination or injury related to Aqueous Film Forming Foam."  Compl.

¶ 13; *see also id.* ¶¶ 1–12, 18–34, 17–88, 246–89 & pp. 97–99; NOR ¶¶ 14–16.

Without opposition by the State, 3M removed the AFFF case to the U.S. District Court for

the District of Vermont, asserting jurisdiction under the federal-officer removal statute.  *See* NOR

¶ 18 (citing *State of Vermont v. 3M Co.*, *et al.*, No. 2:19-cv-02281 (D.S.C.), Dkts. 1, 35).  3M

invoked the federal government-contractor defense, which immunizes government contractors

from state tort liability when they produce equipment for the military pursuant to reasonably pre-

cise specifications issued by the government.  *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir.

2014) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)).  The Judicial Panel on

Multidistrict Litigation then transferred that case to the AFFF MDL.

In January 2024, 3M first removed this "non-AFFF" action, asserting jurisdiction under

the federal-officer removal statute.  NOR ¶ 19 (citing Notice of Removal, *Vermont v. 3M Co., et

al.*, No. 2:24-cv-00019 (D. Vt.), Dkt. 1).  Specifically, after investigation, 3M discovered that it

had made PFAS-containing copper-clad laminates at a facility in Rutland, Vermont, pursuant to a U.S. military specification requiring the use of PFAS. *Id.* ¶¶ 1–7. That, in turn, gave rise to a colorable federal government-contractor defense. At this Court's direction and consistent with local practice, the state court transmitted a record of the state-court proceedings. *Vermont v. 3M Co., et al.*, No. 2:24-cv-00019 (D. Vt.), Dkts. 3, 29.

The State moved to remand the case to state court, and Judge Sessions granted the State's motion. *See Vermont v. 3M Co.*, 2024 WL 1596887, at *5–6 (D. Vt. Apr. 12, 2024). The Court concluded that 3M's original removal was untimely and did not reach the merits of the removal. *Id.* Just days ago, the Second Circuit vacated and remanded that remand order, holding that 3M's removal was timely. *Vermont*, 2025 WL 2394534, at *3–4.

While the Second Circuit considered the appeal, the litigation proceeded in state court. NOR ¶ 22. The State continued to insist that this suit has no connection to AFFF. To that end, the State ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Ex. 1 at 21 (Friedman Discl.); *see also* Mot. 6. Mr. Friedman said the ████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████ Ex. 1 at 21. Friedman maintained that ████████████████ ████████████████████████████████████████ *Id.*

In April 2025, however—long after the applicable deadlines, and without the court's permission—the State supplemented its expert disclosures, necessitating additional depositions. NOR at p. 2. During a further deposition on July 9 and 10, 2025, of Dr. Graham Fogg—the State's expert on movement of PFAS through the environment—Dr. Fogg revealed that ████████████

████████████████████████████████████████████████████████ *Id.* ¶ 23.  He

agreed that ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████ Dkt. 1-3 at 203:3–204:8, 211:2–23, 213:14–

23; 214:8–217:14 (7/9/2025 Deposition of Dr. Fogg).

    3M therefore promptly removed to this Court on July 18, 2025, explaining in its notice of

removal that Dr. Fogg's testimony revealed that, contrary to the State's many prior representations,

████████████████████████████████████████████████████████████████████

█████████████████████████ NOR ¶¶ 4–5, 23–25, 42–44. ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 2 at 5–7 (Hokkanen Supp.

Discl.).  Based on Dr. Fogg's testimony, the same PFAS compounds from both MilSpec AFFF

and non-AFFF sources are allegedly "commingled" at those sites.  NOR ¶¶ 42–44.  And those

particular PFAS compounds █████████████████████████████████████████████

NOR ¶ 42.

    Following 3M's July 18 removal, this Court directed the state court to transmit the "com-

plete original file."  Dkt. 5.  On July 29, the state court transmitted records not already on file with

this Court from the earlier removal proceeding, *see* Dkt. 34, and transmitted additional hard-copy

materials that the Court received on August 12, Dkt. 56.  For the avoidance of any doubt, 3M

refiled the state-court process, pleadings, and orders on August 15 and 16, 2025.  Dkts. 73–80.

## ARGUMENT

    The federal-officer removal statute authorizes any officer of the United States, "*or any*

*person acting under* that officer," to remove a civil action if the action is "for or relating to any act

under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).  "One of the primary

purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Section 1442(a)(1) therefore "must be 'liberally construed'" in favor of removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *see also Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008).[1]

Federal-officer removal is an exception to the ordinary well-pleaded complaint rule. *Maryland*, 130 F.4th at 388 (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)). A court must "'credit the defendant['s] theory of the case'" in assessing removability. *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021) (alteration omitted). A notice of removal need not provide "[e]vidence" proving jurisdiction; it "need include only . . . plausible allegation[s]" of jurisdictional facts. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

3M's notice of removal readily clears that bar. The State's substantive and procedural objections to removal all contravene well-settled law and provide no valid basis to remand.

## I.    3M Properly Removed This Case Under The Federal-Officer Removal Statute

### A.    3M Plausibly Alleges The Elements Of Federal-Officer Removal

A private defendant seeking removal under § 1442(a)(1) must plausibly allege three elements: (1) the defendant is a "person" that "act[ed] under [a federal] officer"; (2) the case is "for or relating to" the defendant's action "under color of" federal authority, and (3) the defendant has a colorable federal defense. 28 U.S.C. § 1442(a)(1); *see Isaacson*, 517 F.3d at 135–39. 3M's notice of removal establishes all three elements of federal-officer removal.

#### 1.    3M Is A Person Acting Under Federal Authority

The State does not dispute that 3M is a "person" that "act[ed] under" federal authority. *See*

---

[1] The State's assertion that courts should "scrutiniz[e] removal" more stringently because a State is the plaintiff (Mot. 21) lacks merit in the federal-officer-removal context. The Supreme Court's clear direction that the federal-officer removal statute should be interpreted "liberally," *Watson*, 551 U.S. at 147–48, has no carveout for suits by States, *e.g.*, *Maryland*, 130 F.4th at 389–90.

*Isaacson*, 517 F.3d at 136 ("'person'" in § 1442 "includes corporate persons"); NOR ¶ 49.  This element is satisfied where "'a contractor seeks to remove a case involving injuries arising from equipment that it manufactured for the government.'"  *Agyin*, 986 F.3d at 175; NOR ¶¶ 50–52.

### 2. 3M Plausibly Alleges A Nexus Between The Alleged PFAS Contamination And 3M's Production Of MilSpec AFFF

The State's claims in this case also have a nexus to the acts that 3M took under color of federal office.  Dr. Fogg's recent testimony revealed, contrary to the State's prior statements, that the State is seeking to recover for sites where PFAS from MilSpec AFFF may be present.  That testimony, combined with 3M's plausible allegations that no ready way exists to distinguish commingled PFAS from AFFF and non-AFFF sources in the environment, establishes a nexus between the purported PFAS contamination the State alleges and 3M's production of MilSpec AFFF.

The federal-officer removal statute authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action that is "for *or relating to* any act under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).  Even before Congress "'broaden[ed]'" § 1442(a)(1) in 2011 by adding the "or relating to" language, *Agyin*, 986 F.3d at 174 n.2, the Second Court held that the "hurdle" created by this nexus requirement "is quite low," *Isaacson*, 517 F.3d at 137.  The "or relating to" language Congress added now requires only a "'connection'" or "'association.'"  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *see, e.g.*, *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 186 (1st Cir. 2024); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471–72 (3d Cir. 2015); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943–44 (7th Cir. 2020).  As the Fourth Circuit recently recognized in a nearly identical PFAS case, "a company like 3M satisfies the nexus element for removal if the factfinder will need to identify the sources of pollutants," at least some of which were "manufactur[ed] . . .

for the federal government." *Maryland*, 130 F.4th at 391; *accord Baker*, 962 F.3d at 945 & n.3.

3M's plausible allegations easily clear the low "for or relating to" bar. The State alleges that natural resources at sites across the State are contaminated with PFAS stemming exclusively from non-AFFF sources. Compl. ¶¶ 1, 8, 12–13, 17. But Dr. Fogg's ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ NOR ¶¶ 23–25. The State has asserted in its "AFFF" case that there are multiple locations in Vermont where MilSpec AFFF was used, including the Burlington Air National Guard Base and Camp Ethan Allen Training Site. *Id.* ¶ 42. And based on Dr. Fogg's new testimony ████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████ *Id.* ¶¶ 5, 23–25, 43. In other words, on the State's own case theory, its expert's testimony reveals that at least some sites at issue—including sites downriver from the Winooski and thousands of private wells—*do* contain PFAS from Mil-Spec AFFF. *Id.* ¶ 44.

3M's notice of removal alleges that the same PFAS compounds from both MilSpec AFFF and non-AFFF sources are "commingled" at those sites and ████████████████ *Id.* ¶¶ 42, 44; *see supra* at 6. For that reason, there is no ready way to tell what PFAS came from which source at any particular site where commingling occurred. NOR ¶¶ 45–47. Because the State has no reliable way to disentangle the same PFAS from MilSpec AFFF and non-AFFF sources, a fact-finder could not hold 3M liable for *only* non-AFFF PFAS contamination.

Any relief, in turn, "would necessarily implicate work that 3M did for the federal govern-ment"—for which 3M has a federal defense—meaning that "3M's federal work is inextricably related to the charged conduct." *Maryland*, 130 F.4th at 390–91. That is self-evidently true with

respect to the State's request for injunctive relief—"to compel [3M] to abate PFAS" by removing it "from State natural resources and property." Compl. at p. 99. If PFAS from MilSpec AFFF and non-AFFF sources cannot be distinguished in the environment, it is impossible for 3M to abate only PFAS contamination resulting from non-AFFF sources. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (noting "the indivisible nature of the injunctive . . . remedy"). As to damages, the State must at minimum present expert testimony to support "apportion[ing] . . . PFAS contamination . . . from [MilSpec] AFFF compared to non-AFFF products." *Maryland*, 130 F.4th at 391. 3M has a right to a federal forum to contest such evidence. *See id.*

In response, the State attempts to obscure Dr. Fogg's testimony, arguing (Mot. 21–22) he did not provide a basis to believe there is commingled PFAS from MilSpec AFFF and non-AFFF sources at sites at issue in this case. But Dr. Fogg fatally undermined the State's ██████████ ████████████████████████████████████ He testified ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████ Dkt. 1-3 at 200:2–15, 203:8–204:8, 211:2–23, 214:8–217:14. The State highlights (Mot. 22)████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ██████ Dkt. 1-3 at 195:14–20 (7/9/2025 Fogg Dep.); *see also* Ex. 3 at 15:4–11 (7/10/25 Fogg Dep.). The opinion Dr. Fogg did offer is that PFAS *can*—and plausibly *has*—spread further.

The State also argues that 3M failed to identify any *specific* sites with commingled PFAS from MilSpec AFFF and non-AFFF sources. But 3M plausibly alleges that ████████████ ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

NOR ¶¶ 43–44.  The State's calls for more granular detail ignore that 3M need only put forward plausible allegations.  *See Agyin*, 986 F.3d at 180–81; *Dart Cherokee Basin*, 574 U.S. at 87; *cf.* 28 U.S.C. §§ 1446(c)(2)(B), 1455(b)(5) (requiring evidentiary support of removal only for amount in controversy in civil cases and for criminal cases).

In any event, 3M has gone beyond plausible allegations to proof.  Mr. Hokkanen confirmed that ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████  Ex. 2 at 5–7.  That analysis leaves no doubt that there is at least a plausible nexus between 3M's production of MilSpec AFFF and the alleged contamination for which the State seeks to recover.  NOR ¶¶ 53–54.

The State insists that testimony from its own employees will show that there are no sites ████████████████████████  that have PFAS from AFFF.  Mot. 23–24.  But any fact question regarding "causation and allocation" issues are "merits questions" that belong in a federal forum, not questions that bear on the threshold issue of removability.  *Maryland*, 130 F.4th at 392.  As the Second Circuit has explained, "[p]recisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116; *see London v. Polishook*, 189 F.3d 196, 198 (2d Cir. 1999) (declining to resolve question "'[w]here jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits'").

Finally, the State asserts briefly that removal is unwarranted because 3M's theory implicates only a portion of the sites at issue.  Mot. 24–25.  ████████████████████████████████

████████████████████████████████████, NOR ¶ 44; Ex. 2 at 5–7, ████████████████████

███████████████████, Ex. 4 at Charts 1–8 (Brown Discl.). Because part of this case is therefore removable, the whole case is. *Baker*, 962 F.3d at 945 ("the defense need only apply to one claim to remove the case"); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017) (same); *Nadler v. Mann*, 951 F.2d 301, 306 n.9 (11th Cir. 1992) (similar); 14C Wright & Miller, *Federal Practice and Procedure* § 3726 (4th ed. 2025) (same).

### 3.    3M Asserts A Colorable Federal Government-Contractor Defense

Finally, 3M has alleged at least "a 'colorable federal defense.'" *Agyin*, 986 F.3d at 174. This, too, is not a high bar: A defendant "need not win his case before he can have it removed," *Willingham*, 395 U.S. at 407; *see Cuomo*, 771 F.3d at 115–16, but need only plausibly allege a federal defense that is not "'immaterial'" or "'wholly insubstantial and frivolous,'" *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 37 (1st Cir. 2022). 3M easily clears that bar.

The federal government-contractor defense provides that government contractors are not subject to state tort liability when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. 3M's notice of removal plausibly alleges all three requirements. First, the federal government imposed "reasonably precise specifications" for MilSpec AFFF that required the use of PFAS. NOR ¶ 59. Second, the Navy determined that 3M's AFFF products conformed to those specifications. *Id.* ¶ 60. Third, 3M was not aware of any material risk regarding MilSpec AFFF about which the federal government did not know. *Id.* ¶¶ 61–62.

The State does not dispute that 3M alleges a colorable federal defense. Nor could it do so credibly. The State did not oppose removal of its "AFFF" suit. And the MDL court held that the government-contractor defense is available for claims relating to MilSpec AFFF. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, *15 (D.S.C. Sept. 16, 2022).

**B.    The State's Disclaimer Is Mere Artful Pleading And Legally Irrelevant**

The State's principal response is that its disclaimer of "any relief for contamination or in-jury related to [AFFF]," Compl. ¶ 13, "negates" the nexus between the alleged PFAS contamina-tion and 3M's production of MilSpec AFFF, Mot. 17.  That contention is incorrect as a matter of law, and federal appellate courts have repeatedly rejected it.

A plaintiff's disclaimer of a particular basis or item of recovery does not defeat federal jurisdiction unless it leaves "no possibility that a state court" would decide questions that deter-mine whether a federal defense applies.  *Express Scripts*, 119 F.4th at 187.  As the Fourth Circuit recently held in this same context, a disclaimer like the State's is irrelevant if the state court will still have to "determine the nexus 'between the charged conduct and federal authority.'"  *Mary-land*, 130 F.4th at 389 (quoting *Express Scripts*, 119 F.4th at 188).  *Maryland* illustrates the point. There, two States each filed two "overlapping" suits seeking recovery for alleged PFAS contami-nation—an AFFF suit, and a "non-AFFF" suit that disclaimed recovery for AFFF.  *Maryland*, 130 F.4th at 385–86.  3M removed the "non-AFFF" suits based on allegations that PFAS from MilSpec AFFF and non-AFFF sources had commingled and were indistinguishable in the environment.  *Id.* Those States tried "to immunize their complaints" in the non-AFFF cases "from federal officer removal with their purported disclaimers" of AFFF contamination.  *Id.* at 389.  The Fourth Circuit rejected that attempt.  It held that, given 3M's plausible allegations of commingling and indistin-guishability, the factfinder would "have to disentangle" questions of "causation" and "apportion-ment," which only "highlight[ed] how the charged conduct relates to [3M's] federal work."  *Id.* at 391.  The court accordingly vacated the district courts' decisions remanding those cases to state court because such "important" "merits questions" "belong in federal court."  *Id.* at 392.

That reasoning applies step for step in this case.  Dr. Fogg revealed that the wall the State tried to construct between this case and AFFF has no foundation.  Given ███████████████

██████████████████████████████████████████████

██████████████████████████████████████ NOR ¶¶ 23, 42–44.

As in *Maryland*, the State's disclaimer does not change the reality that the factfinder must attempt to ascertain whether and to what extent alleged PFAS contamination stems from MilSpec AFFF or non-AFFF sources. *See supra* at 9–10. In other words, the state court still must "determine the nexus 'between the charged conduct'" (alleged PFAS contamination) "'and federal authority'" (3M's production of MilSpec AFFF). *Maryland*, 130 F.4th at 389. Thus, as in *Maryland*, the State's disclaimer is merely "artful pleading" and of no moment. *Id.* at 389–90.

*Maryland* is the latest in a line of decisions rejecting attempts to gerrymander cases using disclaimers to avoid removal. In *Baker*, the Seventh Circuit rejected the plaintiffs' effort to avoid removal of their suit alleging lead and arsenic pollution by disclaiming damages resulting from freon production for the federal government. 962 F.3d at 945 & n.3. The court held that, because the plaintiffs sought recovery for lead and arsenic—and because the defendant plausibly alleged that some of those chemicals came from products manufactured for the government—the nexus element was satisfied notwithstanding the disclaimer. *See id.* at 943–45 & n.3. Similarly, the First Circuit in *Express Scripts* disregarded the disclaimer by a plaintiff (Puerto Rico) that sued a defendant for allegedly inflating drug prices but disavowed "relief relating to any federal program" or "contract" (including Medicare). 119 F.4th at 179, 181–82. The court explained that, because the defendant plausibly alleged it had undertaken a single, "indivisib[le]" course of negotiations, "crediting the disclaimer" would mean the Commonwealth "could recover" in state court for federal activity. *Id.* at 191–92. Indeed, the court overseeing the AFFF MDL recently rejected such claim-splitting maneuvers based on the court's "knowledge and experience managing th[e] MDL," finding "unconvincing artful pleading, disclaimers, omission of AFFF exposure, and bare

14

conclusory allegations." *See* Ex. 5 at 1–2 (AFFF MDL Court).  Other courts are in accord.[2]

The cases the State invokes for its contrary position provide it no support.  The State cites *Illinois ex rel. Raoul v. 3M Company*, 111 F.4th 846 (7th Cir. 2024), but there the Seventh Circuit rejected the disclaimer argument the State makes here.  In *Raoul*, Illinois sued 3M, alleging PFAS contamination from a single facility; 3M removed, asserting that some of the alleged contamination might be MilSpec AFFF from a downstream arsenal. 111 F.4th at 847–48.  Illinois disclaimed relief for AFFF contamination, but the court explained (consistent with *Maryland*) that 3M's federal government-contractor defense remained "viab[le]" because "a factfinder would need to apportion the contamination" between the alleged sources.  *Id.* at 848–49.  The Seventh Circuit ultimately remanded to state court only because, during argument, Illinois *further* "clearly and unequivocally conceded . . . that it would not seek relief against 3M for mixed PFAS contamination," and could recover only if the evidence showed that "100% of th[e] contamination" in a "designated area" came "from the [3M] [f]acility" and that not "even a morsel of contamination" came from elsewhere.  *Id.* at 849.  The State here has not made that further concession and indeed contests 3M's allegations of commingling, confirming that 3M is entitled to a federal forum.  And even if the State were to try to do so now, 3M's plausible allegations based on Dr. Fogg's testimony would still mean that the factfinder must decide whether any given location has "even a morsel" of PFAS from MilSpec AFFF, *id.*—a question that belongs in federal court, *Cuomo*, 771 F.3d at 116.

The State also cites a handful of district-court decisions that permitted States to split their claims as the State attempts here.  Mot. 18–21.  But those decisions improperly failed to defer to 3M's plausible allegations of commingling and indistinguishability or to credit the defendant's

---

[2] *See, e.g.*, *City of Irondale v. 3M Co.*, 2025 WL 2419238, at *7–8 (N.D. Ala. Aug. 19, 2025); *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021); *Curiale v. A. Clemente, Inc.*, 2023 WL 4362722, at *6 (D.N.J. July 5, 2023).

theory of the case, as Second Circuit precedent requires. *See Agyin*, 986 F.3d at 175. None grappled meaningfully with the problem with the State's position here: Because of commingling of identical PFAS from MilSpec AFFF and non-AFFF sources, any verdict for the plaintiff would necessarily rest in part on MilSpec AFFF. In addition, all but one have been overtaken by subsequent precedent in the relevant circuit (*Maryland*, *Express Scripts*, and *Raoul*, respectively), and the other (*Connecticut v. EIDP, Inc.*, 2024 WL 5135601 (D. Conn. Dec. 17, 2024)) is currently on appeal before the Second Circuit, *see* No. 25-11 (2d Cir.), where *Agyin* is controlling precedent.[3] Indeed, the AFFF MDL court has since rejected disclaimers like the State's as "unconvincing." *See* Ex. 5 at 1. In short, the State's artful disclaimer does not defeat 3M's plausible allegations.

## II.    The State's Procedural Objections To Removal Lack Merit

Unable to refute 3M's ground for removal on the merits, the State retreats to two procedural arguments to try to keep this thoroughly federal case out of federal court: It contests the timeliness of 3M's removal—filed within *one week* of receiving a paper reflecting the State's new position—and it assails the completeness of the *attachments* to 3M's notice of removal. Both objections fail.

### A.    3M's Removal Was Timely

3M timely removed this case under 28 U.S.C. § 1446, which affords a defendant 30 days after being served with a "paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). From the start, the State has done everything

---

[3] In footnotes, the State also cites (Mot. 19 & n.14) two decisions in climate-change cases that have no bearing here. One did not discuss a disclaimer or thorny causation questions and involved an alleged "misinformation campaign." *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 60 (1st Cir. 2020). The other was a "global" case where "less than 1/800th" of the conduct was government-related; the court concluded that such a "small island" could be "carve[d] out" and therefore refused—rightly or wrongly—"to hang [its] jurisdiction on so small a slice of the pie." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 712–13 (3d Cir. 2022). No such "carv[ing] out" is possible here. *Id.* The State's remaining citations are district-court decisions involving personal injuries that largely predate the on-point circuit precedent. Mot. 19 n.15, 21.

possible to avoid revealing that this action has any connection to MilSpec AFFF. But within a week of the State finally showing its true cards through Dr. Fogg's testimony (related to his out-of-time supplemental disclosures), 3M removed this case to federal court. The State's assertions that 3M unduly delayed are misguided and completely inconsistent with its own view of this case.

### 1. 3M Promptly Removed Following The State's Belated Revelation

Under 28 U.S.C. § 1446, a notice of removal is timely if filed within 30 days after the defendant receives a "paper from which it *may first be ascertained* that the case is one which is or has become removable." *Id.* § 1446(b)(3) (emphasis added). In the specific context of federal-officer removal, courts "extend section 1442's liberal interpretation to section 1446." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

The Second Circuit has held that "ascertain" means "'to find out or learn with certainty.'" *Vermont*, 2025 WL 2394534, at *3; *see Dietrich v. Boeing Co.*, 14 F.4th 1089, 1093 (9th Cir. 2021) (same). That court has thus held that § 1446(b)(3) requires a "bright line rule": To start the removal clock, a document must "explicitly specif[y]" the information that serves as the basis for federal jurisdiction, *Cutrone*, 749 F.3d at 143, 145. "[V]ague" or "indeterminate" language and "evasive or ambiguous statements" are not enough. *Id.* at 144, 146. "Defendants have no independent duty" to undertake an "investigation" to determine that a case is removable. *Id.* at 143, 145. That clear rule avoids "uncertainties" for defendants and saves courts from "expend[ing] copious time determining what a defendant should have known or have been able to ascertain." *Id.* at 145. Though *Vermont* left open whether *Cutrone*'s "*explicitly specifies*" requirement would apply in a case where "neither party clearly controls" the jurisdictional facts, 2025 WL 2394534, at *3, here the fact that the State is seeking under its own legal theory to recover for sites with commingled PFAS from MilSpec AFFF—despite its protestations to the contrary—was squarely in the State's control, *see infra* at 18–19, 21–22.

In any event, at the very least, *Vermont* requires that the paper provide the defendant "certainty." *Vermont*, 2025 WL 2394534, at *3; *see Dietrich*, 14 F.4th at 1093 (same). As other courts have said in the federal-officer removal context, that means the paper 3M receives must provide "clear and unequivocal notice" of the basis for removal. *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998). "[T]he 'unequivocally clear and certain' test hews to the text of § 1446(b)(3)" and avoids probing a defendant's "subjective knowledge." *Dietrich*, 14 F.4th at 1094.

Before July 9, 2025, when the State first revealed (through Dr. Fogg) its view that ███████ █████████████████████████████████████████████████, 3M had received no paper making "explicit[ ]," *Cutrone*, 749 F.3d at 145, or "certain[ ]," *Vermont*, 2025 WL 2394534, at *3, that the State seeks damages for sites with PFAS from MilSpec AFFF. To the contrary, the State has gone out of its way to *avoid* suggesting that this case has anything to do with AFFF in order to keep this case out of federal court. In its complaint, the State disclaimed "relief for contamination or injury related to [AFFF]." Dkt. 74-1 (Orig. Compl. ¶ 13); Dkt. 77-33 (First Am. Compl. ¶ 13) (same); Dkt. 1-1 (Second Am. Compl. ¶ 13) (same). The State's witnesses likewise consistently testified that the State was excluding any site where it had ████████████████████████████████████████ ████████████████████████████████████████" Ex. 6 at 148:18–149:13 (10/7/24 Moran Dep.); Ex. 7 at 77:21–24 (10/1/24 Chapman Dep.) ("release of AFFF" is "not subject to this case"); Ex. 8 at 77:10–13 (12/17/24 Brown Dep.) ████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████ Ex. 6 at 148:18–25, 152:14–18. Other such assertions by the State abound.[4]

---

[4] *See also, e.g.*, Ex. 9, General Objection No. 15 (Vermont's Resps. & Objs. to 3M's Requests for Admission (Nov. 30, 2023)) ("The State objects to the RFAs to the extent that they seek documents

To implement that no-AFFF approach, the State employed a purportedly ███████ ████ buffer zone.  Ex. 1 at 21.  One of its experts, Mr. Friedman, █████████████ ██████████████████████████████████████████ *Id.*; Mot. 6. ████ ████████████████████████████████████████████████████████████████████ ██████ Ex. 1 at 21.

Until Dr. Fogg's July 2025 testimony, the State thus steadfastly maintained that it was *not* seeking to recover for any site with commingled PFAS.  But that testimony fundamentally changed the landscape.  He opined ████████████████████████████████████████ ████████████████████████████████████████████████████████ Dkt. 1-3 at 211:2–23 (7/9/25 Fogg Dep.); *see id.* at 203:1–11, 213:14–23, 214:8–15.  The transcript of that testimony—the "paper" 3M received—combined with 3M's subsequent investigation, made clear for the first time that many private wells and other sites where the State seeks recovery in this case *do* plausibly have PFAS from MilSpec AFFF.

3M swiftly removed following that late-breaking admission.  Even assuming that testimony alone triggered the removal clock, 3M had at least 30 days from the date it received Dr. Fogg's

---

or information concerning PFAS contamination caused by the use, storage, or disposal of Aqueous Film Forming Foam, which is the subject of a separate case by Vermont."); Ex. 10, General Objection No. 18 (Vermont's Resps. & Objs. to 3M's First Set of Interrogatories (Sept. 30, 2020)) (similar); Ex. 11, General Objection No. 18 (Vermont's Seventh Supp. Resp. to 3M's First Set of Interrogatories (May 23, 2023)) (similar); Ex. 12, General Objection No. 18 (Vermont's Eighth Supp. Resp. to 3M's First Set of Interrogatories (Oct. 4, 2024)) (similar); Plaintiff State of Vermont's Motion to Remand at 2, *State of Vermont v. 3M Co.*, No. 2:24-cv-00019 (D. Vt. Jan. 26, 2024) ("The State filed this non-AFFF case separately (with an express disclaimer of recovery for AFFF contamination) because it strongly desired to litigate PFAS claims in its own courts."); Brief for Plaintiff-Appellee at 7, *State of Vermont v. 3M Co.*, No. 24-1250 (2d Cir. Oct. 1, 2024) ("In this non-AFFF case, the State expressly disclaims any relief stemming from AFFF contamination."); Ex. 13 at 1 (Letter from Benjamin Krass to Tracie Renfroe (June 2, 2023)) ("[T]he State is not seeking to recover in this case any relief for contamination or injury related to Aqueous Film Forming Foam ('AFFF'), which the State is addressing through a separate legal action, and the State reserves all rights regarding defendants' requests for information concerning AFFF.").

deposition transcript (July 11, 2025) to remove.  *See* 28 U.S.C. § 1446(b)(3).  3M filed its removal

notice in just a week.  Dkt. 1.  3M's removal was timely.

### 2.    The State's Timeliness Challenge Is Meritless

In support of its spurious timeliness argument, the State invokes (Mot. 14–16) a handful of

documents that it says triggered the removal clock.  But none made clear what Dr. Fogg stated in

his supplemental deposition—that the State *is* seeking to recover for sites with commingled

PFAS—especially in the face of the State's many past assertions to the contrary.

First, the State says 3M should have ascertained the MilSpec-AFFF basis for removal as

far back as the State's *original* complaint.  Mot. 14.  That is disingenuous.  The complaint *dis-

claimed* recovery for AFFF, Dkt. 74-1 ¶ 13, and no paper disclaiming AFFF could give 3M clear

notice that a plaintiff's case encompasses commingling with MilSpec AFFF.  The State points to

generic statements in the complaint that PFAS are "ubiquitous" and can travel "great distances."

Mot. 2.  But requiring a defendant to remove based on such abstract, nonspecific language—de-

spite the plaintiff's emphatic disavowal of recovery for AFFF—invites exactly the type of prob-

lems § 1446(b)(3) and the Second Circuit's "bright line rule" were designed to prevent.  *Cutrone*,

749 F.3d at 145; *see also Dietrich*, 14 F.4th at 1094.

The State's cited authority, *New Hampshire v. 3M Co.*, 132 F.4th 556 (1st Cir. 2025), lends

no support to its argument.  *New Hampshire* did not hold that 3M was required to remove based

on the complaint, and it did not address the effect of New Hampshire's disclaimer of recovery for

AFFF sites on the timing of removal, because the court found that issue waived.  *Id.* at 563.  Here,

by contrast, 3M is raising the effect of the State's disclaimer in response to the State's motion.[5]

---

[5] To the extent *New Hampshire* might be read to deem terms like "widespread" or "statewide" sufficient to give 3M notice, it contradicts precedent from the Second and other Circuits that requires a paper provide the basis for removal "with certainty."  *Vermont*, 2025 WL 2394534, at *3;



The State next invokes (Mot. 14–15) Dr. Fogg's ███████████████████████

████████████████████████████████████████████████████████████████████

██████ Ex. 14 at 341:24–342:8, 408:25–409:5 (1/22/25 Fogg Dep.). But those undefined, indeter-

minate adjectives again shed no light on whether the sites at issue encompass AFFF, let alone show

that ████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ Indeed,

in his January 2025 testimony Dr. Fogg proceeded to explain ██████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ *Id.* at 408:25–409:10. He further stated that PFAS are█

████████████████████████████████████████████████████████████████████

████████████████████████ *Id.* at 412:2–7. Dr. Fogg's January 2025 testimony does

not suffice.

The State's reliance on a DuPont expert's disclosure fares no better. Mot. 15. According

to the State███████████████████████████████████████████████████████████

████████████████████████████████████ *See* Dkt. 53-12 at 4 (an AFFF source has

████████████████████████████████████████████). But that disclosure of the opinion

of another defendant is immaterial to the § 1446(b)(3) timeliness inquiry. As the Second Circuit

has explained, "the removal periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered until

*the plaintiff* provides facts explicitly establishing removability or alleges sufficient information for

---

*Cutrone*, 749 F.3d at 145 ("explicit[ ]"); *see, e.g.*, *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 38 (2d Cir. 2010) (per curiam) ("a bright line rule is preferable"; requiring defendant to "guess" without explicit information creates "uncertainty and risks increasing the time and money spent on litigation"); *Dietrich*, 14 F.4th at 1095 (federal-officer removal not "unequivocally clear and certain" when "information available to Boeing was ambiguous or misleading"); *Akin*, 156 F.3d at 1035 (allegations that injuries sustained "while working at" Air Force base "did not provide unequivocal notice of the right to remove").

the defendant to ascertain removability." *Cutrone*, 749 F.3d at 145 (emphasis added); *accord Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 72, 75 (1st Cir. 2014) (clock is triggered "only when the *plaintiffs'* complaint or *plaintiffs'* subsequent paper provides the defendant with sufficient information to easily determine that the matter is removable"); *Dietrich*, 14 F.4th at 1094.

In any event, Dr. Hahn's report is not clear evidence that the State is seeking to recover at sites with PFAS from MilSpec AFFF; nor could it be, because Dr. Hahn is not the State's expert. DuPont's rebuttal report challenging ████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████ And, again, the State's reliance on Dr. Hahn flies in the face of everything it has argued over the course of this litigation, including the arguments in its remand motion. Against that backdrop, a codefendant's expert's contrary opinion that contradicts the State's assertion does not constitute "certain[ ]," *unequivocal* notice. *Vermont*, 2025 WL 2394534, at *3; *Cutrone*, 749 F.3d at 145; *Dietrich*, 14 F.4th at 1095.

Further, none of the documents on which the State relies told 3M that PFAS from *MilSpec* AFFF are plausibly commingled at sites at issue in this case, meaning that even Dr. Fogg's recent testimony did not trigger the removal clock. The State asserts that 3M should know that it made AFFF according to MilSpec, relying on Judge Sessions' now-vacated decision granting the State's motion to remand this case after 3M removed based on a different product. Mot. 16; *see Vermont*, 2025 WL 2394534, at *3. But this case involves use of 3M products *by other parties*, and not all AFFF was made for the U.S. government pursuant to military specifications. So 3M had to do its own investigation to plot out the State's ████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *See* NOR ¶ 44; Ex. 2

at 5–7. That need for "independent investigation"—triggered by Dr. Fogg's new testimony—indicates the removal clock never began. *Cutrone*, 749 F.3d at 148; *Vermont*, 2025 WL 2394534, at *3. Indeed, even now, the State continues to argue that none of its papers supports 3M's plausible allegations of commingling, Mot. 21–24, even while insisting that 3M should have had enough information to remove this case from the start.

At the earliest, the 30-day clock began to run when 3M received the transcript of Dr. Fogg's July 2025 deposition testimony. 3M removed a week later. That was timely.

### B.    This Court Has The Materials Required By Section 1446(a)

Remarkably, the State leads off its brief with a technical, non-jurisdictional point of procedure: whether 3M filed certain state-court records with its notice of removal. But a record of state-court proceedings to date is on file with this Court. *See* Dkts. 34, 56, 73–80. So this Court has copies of the process, pleadings, and orders in the state-court action. 28 U.S.C. § 1446(a).

Yet the State urges the Court to deem the failure to attach such documents to 3M's notice as fatal to removal. Even if there were merit to that argument, it has now been mooted by 3M's filing of the process, pleadings, and orders. Dkts. 73–80. Every court of appeals to have addressed the issue has determined "that a removing party's failure to attach the required state court papers to a notice of removal is a mere procedural defect that is curable . . . *either before or after the expiration of the thirty-day removal period*." *Countryman v. Farmers Ins. Exch.*, 639 F.3d 1270, 1272–73 (10th Cir. 2011) (emphasis added); *see also Walton v. Bayer Corp.*, 643 F.3d 994, 998–99 (7th Cir. 2011). In *Countryman*, for example, the Tenth Circuit reversed an order remanding to state court on that ground, describing the error as "a *de minimis* procedural defect" that the defendants remedied "[s]hortly after expiration of the thirty-day removal period." 639 F.3d at 1271–72. Similarly, in *Walton*, the Seventh Circuit approved defendants' supplementation of "their removal papers five days after the deadline" to add omitted process materials. 643 F.3d at

998–99.  Analogizing to the Supreme Court's holding that procedural defects in notices of appeal cannot defeat an appeal, the Seventh Circuit held that it would be "disproportionate" to allow a "trivial," "totally inconsequential defect in removal papers" to deprive a defendant of its right to a federal forum.  *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 181–82 (1962)); *see also Becker v. Montgomery*, 532 U.S. 757, 767 (2001) (nonsubstantive "imperfections in noticing an appeal should not be fatal").[6]

"If there were any possible doubts" that the omission were curable, "a reading of 28 U.S.C.A. § 1447" and § 1449 "would remove it."  *Covington*, 251 F.2d at 933.  In those sections, Congress provided district courts with a tool to obtain these materials if needed to remedy any technical foot fault, 28 U.S.C. § 1447, and a mechanism for proceeding without the materials if the state court failed to supply them, *id.* § 1449.  *See Woodroffe v. Florida*, 611 F. App'x 679, 680 (11th Cir. 2015); *Williams v. Boehrer*, 530 F. App'x 891, 896 (11th Cir. 2013).

Against this wall of authority, the State invokes *Taylor v. Medtronic, Inc.*, 15 F.4th 148 (2d Cir. 2021).  But that case did not involve § 1446(a)'s provisions addressing attachment of records.  Instead, *Taylor* addressed the statute's unanimous-consent requirement—a provision (inapplicable to federal-officer removal) that requires all defendants to "join in or consent" to a removal taken under the general removal statute, thereby enabling a nonconsenting defendant to select the state forum and ensuring the "'rapid determination of the proper forum.'"  *Id.* at 150–51.  That

---

[6] *Accord Martinez v. Dep't of Transp.*, 2025 WL 733429, at *3 (3d Cir. Mar. 7, 2025); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 (9th Cir. 2013); *Cook v. Randolph Cnty.*, 573 F.3d 1143, 1150 (11th Cir. 2009); *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 (11th Cir. 1985); *Riehl v. Nat'l Mut. Ins. Co.*, 374 F.2d 739, 742 (7th Cir. 1967); *Covington v. Indem. Ins. Co. of N. Am.*, 251 F.2d 930, 933 (5th Cir. 1958); 14C Wright & Miller, *Federal Practice & Procedure* § 3733 (4th ed. 2025); *Vitiello v. Contracting*, 2016 WL 1239259, at *3 (E.D.N.Y. Mar. 29, 2016); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 399 F. Supp. 2d 340, 356 (S.D.N.Y. 2005).

requirement is thus necessary to enter a federal forum and is a far cry from a requirement that a removing defendant attach various documents that may not even bear on the propriety of the removal.[7]

Here, 3M attached to its notice of removal all the documents this Court needs to assure itself of jurisdiction.  Dkt. 1.  Whatever documents the State decries 3M for not including cannot "be fatal where no genuine doubt exists about who is [removing]."  *Becker*, 532 U.S. at 767.  In any event, at the Court's direction and consistent with local practice, the state court transmitted both a record of state court proceedings in connection with the earlier removal and copies of the more recent proceedings.  *See* Dkts. 5, 34, 56; *State of Vermont v. 3M Co., et al.*, No. 2:24-cv-00019 (D. Vt.), Dkts. 3, 29; *Rocha v. Brown & Gould, LLP*, 61 F. Supp. 3d 111, 113–15 (D.D.C. 2014) (holding state-court transmission satisfied § 1446(a)).  And for the avoidance of doubt, 3M has now filed copies of the process, pleadings, and orders.  Dkts. 73–80.[8]

Consistent with Congress's desire for a federal forum for federal defenses, *Willingham*, 395 U.S. at 407, and the Supreme Court's "liberal" application of another procedural removal requirement of § 1446(a), *Dart Cherokee Basin*, 574 U.S. at 87, this Court should reject the State's procedural ploy, *Powers v. Chesapeake & Ohio Ry. Co.*, 169 U.S. 92, 101 (1898) ("incidental provision as to the time [in then-existing removal statute], must . . . yield to the principal enactment as to the right" to "remove").

## CONCLUSION

For these reasons, the Court should deny the State's motion to remand.

---

[7] The Supreme Court agreed to review another circuit's decision that there are no exceptions to the general rule that a party must *remove* within thirty days.  *See Enbridge Energy, LP v. Nessel*, No. 24-783 (U.S.).  So *Taylor*'s conclusion on the issue it addressed may be overtaken.

[8] 3M is ready to file any other documents upon request.  *See Kuxhausen*, 707 F.3d at 1142.

Dated: August 26, 2025                    Respectfully submitted,

                                          */s/ Lauren R. Goldman*        


                                          Lauren R. Goldman (*pro hac vice*)
                                          Justine Goeke (*pro hac vice*)
                                          GIBSON, DUNN & CRUTCHER LLP
                                          200 Park Avenue
                                          New York, NY 10166
                                          Tel: (212) 351-2375
                                          lgoldman@gibsondunn.com
                                          jgoeke@gibsondunn.com


                                          */s/ Ritchie E. Berger*        


                                          Ritchie E. Berger
                                          Kendall Hoechst
                                          Anne Rosenblum
                                          DINSE P.C.
                                          209 Battery Street, PO Box 988
                                          Burlington, VT 05402
                                          Tel: (802) 864-7571
                                          rberger@dinse.com
                                          khoechst@dinse.com
                                          arosenblum@dinse.com

                                          *Counsel for Defendant 3M Company*