## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

STATE OF VERMONT,

               Plaintiff,

    v.

3M COMPANY; E. I. DU PONT DE NEMOURS
AND COMPANY; THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC; CORTEVA,
INC.; AND DUPONT DE NEMOURS, INC.,

               Defendants.

Case No. 2:25-cv-00660

JURY TRIAL DEMANDED

## DEFENDANT 3M COMPANY'S CONSOLIDATED RESPONSE TO PLAINTIFF'S MOTION TO AMEND COMPLAINT AND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF REMAND

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

ARGUMENT ..................................................................................................... 8

    I.    Recent Developments Confirm That The Rutland Removal Was
        Proper. ........................................................................................ 8

        A.    3M Plausibly Alleged That It "Acted Under" Federal
            Officers At Rutland.............................................................. 9

        B.    3M Plausibly Alleged That The State's Claims "Relate To"
            3M's Production Of MilSpec CCLs At Rutland. ................................. 11

    II.    The State's Proposed Amendment And Disclaimer Provide No
        Basis For Remand. ......................................................................... 14

        A.    The Proposed Disclaimer Would Not Eliminate PFAS From
            MilSpec CCLs From The Case. .......................................................... 15

        B.    The State Cannot Evade A Federal Forum By Altering
            Jurisdictional Facts. ......................................................................... 18

        C.    The Court Should Deny The State's Motion To Amend To
            Add Its Proposed Disclaimer Or, In The Alternative, Should
            Exercise Ancillary Jurisdiction. ........................................................ 21

        CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan,*
  986 F.3d 168 (2d Cir. 2021)................................................................8, 9, 11, 20

*Ayo v. 3M Co.,*
  2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) .............................................11

*Bailey v. Bayer CropScience L.P.,*
  563 F.3d 302 (8th Cir. 2009) .........................................................................23

*Baker v. Atl. Richfield Co.,*
  962 F.3d 937 (7th Cir. 2020) ....................................................................12, 16

*Behrens v. JPMorgan Chase Bank, N.A.,*
  96 F.4th 202 (2d Cir. 2024) ...........................................................................25

*Bombliss v. Sprung,*
  2017 WL 2766438 (C.D. Ill. June 26, 2017) ................................................23

*California by & through Harrison v. Express Scripts, Inc.,*
  2025 WL 2586648 (9th Cir. Sept. 8, 2025) ......................................17, 18, 21

*Chevron USA, Inc. v. Plaquemines Par.,*
  No. 24-813 (June 16, 2025) ............................................................................11

*City of Irondale v. 3M Co.,*
  2025 WL 2419238 (N.D. Ala. Aug. 19, 2025) ..............................................10

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.,*
  996 F.3d 243 (4th Cir. 2021) ....................................................................10, 11

*Cueva v. Allstate Fire & Cas. Ins. Co.,*
  2019 WL 3818035 (W.D. Tex. June 11, 2019) ..............................................23

*Cuomo v. Crane Co.,*
  771 F.3d 113 (2d Cir. 2014).............................................................................21

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
  574 U.S. 81 (2014)........................................................................................9, 11

*District of Columbia v. Merit Sys. Prot. Bd.,*
  762 F.2d 129 (D.C. Cir. 1985)....................................................................24, 25

*Edwards v. CVS Health Corp.,*
  714 F. Supp. 3d 239 (S.D.N.Y. 2024)..............................................................22

*Enbridge Energy, LP v. Nessel,*
  No. 24-783 (U.S.)............................................................................................25

# TABLE OF AUTHORITIES

## (continued)

**Page(s)**

*Haider v. Lyft, Inc.*,
   2023 WL 2711553 (S.D.N.Y. Mar. 30, 2023) ...................................................22

*Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*,
   2021 WL 5194662 (S.D. Ohio Nov. 8, 2021) .................................................24

*W. Va. ex rel. Hunt v. CaremarkPCS Health, L.L.C.*,
   140 F.4th 188 (4th Cir. 2025) ...................................................10, 11, 16

*In re Insulin Pricing Litig.*,
   2025 WL 1576940 (D.N.J. June 4, 2025) .........................................................11

*Isaacson v. Dow Chem. Co.*,
   517 F.3d 129 (2d Cir. 2008) ...........................................................................11

*Maryland v. 3M Co.*,
   130 F.4th 380 (4th Cir. 2025) ...............................8, 10, 12, 13, 14, 15, 16, 17, 23

*Mayor v. Cooper*,
   73 U.S. 247 (1867) ..........................................................................................13

*Mesa v. California*,
   489 U.S. 121 (1989) .........................................................................13, 15, 23

*Myers v. Moore Eng'g, Inc.*,
   42 F.3d 452 (8th Cir. 1994) .............................................................................25

*Pappagallo v. Redco Corp.*,
   2025 WL 2496034 (E.D. Pa. Aug. 29, 2025) ..................................................18

*Puerto Rico v. Express Scripts, Inc.*,
   119 F.4th 174 (1st Cir. 2024) ....................................................9, 10, 13, 16, 17

*Ill. ex rel. Raoul v. 3M Co.*,
   111 F.4th 846 (7th Cir. 2024) ...............................................................13, 15, 16

*Royal Canin U.S.A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025) ...........................................................2, 18, 19, 20, 21

*Steib v. Huntington Ingalls, Inc.*,
   2025 WL 2532696 (E.D. La. Sept. 3, 2025) ...............................................20, 24

*Vermont v. 3M Co.*,
   2024 WL 1596887 (D. Vt. Apr. 12, 2024) .........................................................5

*Vermont v. 3M Co.*,
   2025 WL 2394534 (2d Cir. Aug. 19, 2025) .............................................1, 4, 7, 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Westchester Cnty. v. Mylan Pharms., Inc.*,
  737 F. Supp. 3d 214 (S.D.N.Y. 2024) .................................................................................24

*Willingham v. Morgan*,
  395 U.S. 402 (1969) .........................................................................................17, 23, 25

*Wullschleger v. Royal Canin U.S.A., Inc.*,
  75 F.4th 918 (8th Cir. 2023) ...................................................................................23, 24

**Statutes & Rules**

28 U.S.C. § 1331 ...........................................................................................................18, 24

28 U.S.C. § 1367 ...................................................................................................................24

28 U.S.C. § 1442 ...........................................................................8, 9, 11, 14, 20, 24, 25

28 U.S.C. § 1446 ...................................................................................................................25

28 U.S.C. § 1447 ...................................................................................................................21

Fed. R. Civ. P. 15 ..................................................................................................................22

# INTRODUCTION

This Court has—and should retain—jurisdiction over this federal case. As the Court is aware, this brief concerns the State's motion to remand this case to state court in the face of 3M's original removal in January 2024 (the Rutland Removal). That removal has always been proper, and the State's objections to it have been further undermined in the interim. Faced with that reality, the State seeks to escape federal court by rewriting its complaint. This Court should reject, not reward, the State's attempt to manipulate jurisdiction.

Legal and factual developments in the 20 months since the Rutland Removal have put to rest any question of its validity. The Second Circuit rejected the State's primary, procedure-based objection to the Rutland Removal, holding that the State "did not come close" to demonstrating that 3M's removal was untimely. *Vermont v. 3M Co.*, 2025 WL 2394534, at *3 (2d Cir. Aug. 19, 2025). Other recent case law refutes the State's remaining arguments on the merits of removal. When the State first disclosed that it sought to recover for alleged PFAS contamination at the Rutland Landfill (the Landfill), 3M's own investigation revealed that some of the PFAS allegedly at the Landfill plausibly stemmed from 3M's manufacture of copper-clad laminates (CCLs) pursuant to precise military specifications (MilSpec)—giving rise to a federal government-contractor defense authorizing removal under the federal-officer removal statute. Multiple intervening appellate decisions (and further discovery) have confirmed that this case belongs in a federal forum: 3M plausibly alleged that it acted under the federal government by manufacturing MilSpec CCLs, and the factfinder must try to disentangle that federal activity from other conduct. That is a task for a federal court.

The State all but admits the Rutland Removal was proper by attempting to alter the landscape at the eleventh hour. It seeks leave to amend its complaint to disclaim recovery for

contamination "at or from the Rutland City Landfill."  Dkt. 144 at 3.  That unabashed effort to evade jurisdiction is legally ineffective and inequitable.  The Court should reject it for three reasons.

*First*, the State's purported disclaimer does not affect jurisdiction:  It does not, and cannot, clearly and unequivocally carve out all potential sites that may have been contaminated by PFAS from MilSpec CCLs disposed of at the Landfill.  The State does not specify what contamination "at *or from* the [Landfill]" means.  Dkt. 144 at 3 (emphasis added).  But under the State's own theory about how PFAS moves in the environment, PFAS from the Landfill may have contaminated any site ██████████████████████  Yet the State does not even *identify* the hundreds of wells and the wastewater treatment facility that might have been affected by the alleged PFAS contamination resulting from 3M's federal work.  The factfinder, in turn, would need to decide which specific sites were affected by any PFAS "at or from" the Landfill, and then to what degree those sites were affected (if indeed that analysis is even possible).  The State's reductive disclaimer does not avoid those complicated causation and apportionment inquiries; it simply relabels them.  Under the federal-officer removal statute, 3M is entitled to have those thorny issues resolved in a federal forum.

*Second*, the State's amendment cannot deprive this Court of jurisdiction.  Under long-established principles, the State may not frustrate federal jurisdiction by contradicting already established real-world facts.  The Supreme Court's recent decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), only reinforces that conclusion.

*Third*, even if the State's proposed disclaimer *would* destroy jurisdiction based on the Rutland Removal alone, the Court should exercise its discretion either to deny the State's motion to amend, which is a naked attempt to manipulate jurisdiction, or to retain ancillary jurisdiction over

this case even if it grants the motion to amend and concludes that the disclaimer has some effect. The unfairness of permitting the State to erase jurisdiction through amendment is obvious. If the State never intended to include the Landfill in the suit, it should have made that clear when 3M originally removed in January 2024. Instead, the State clung to the Rutland-related allegations and opposed the Rutland Removal for more than a year and a half; it changes tack now only because its procedural objection was rejected on appeal. The Court should not allow the State to reshape its suit at this late juncture in an effort to deprive 3M of a federal forum.

To be clear, none of the State's jurisdictional jockeying around the Rutland Removal could possibly erase the federal issues in this case: 3M's subsequent removal based on the State's July 2025 revelation that its case encompasses 3M's production of aqueous film-forming foam (AFFF) pursuant to MilSpec (the AFFF Removal) independently establishes this Court's jurisdiction. But to avoid any uncertainty about the case's contours (and ensure a complete record for any appeal), the Court should deny the State's motions to amend and to remand based on the Rutland Removal.

## BACKGROUND

1.      The State brought this suit against 3M and DuPont, seeking relief for alleged PFAS contamination in Vermont. But its operative complaint did not identify the particular sites that it alleged 3M contaminated or the locations for which it sought to recover. *See* Dkt. 1-2 (Compl.). Only in response to discovery requests did the State eventually reveal that it detected PFAS at the Rutland City Landfill. Even then, it did not initially disclose the Landfill as a site for which it seeks recovery. No. 2:24-cv-00019, Dkt. 1 ¶ 11 (Rutland NOR).

Instead, the Vermont Department of Environmental Conservation (the DEC) sent 3M a letter in October 2023—separate from this suit—notifying 3M that the State had become aware that 3M previously operated a manufacturing facility in Rutland. *See* No. 2:24-cv-00019, Dkt. 1-4 at 1. According to the DEC: "Waste materials from the facility were transported between 1955

and 1975 up to five days per week to the Rutland City Landfill, where PFAS has adversely impacted groundwater quality." *Id.* The Department instructed 3M to investigate. *Id.*

2. 3M investigated and "tracked down former employees, obtained historical specifications for the facility, purchased a copy of a discontinued military specification from a third-party vendor, and reconstructed decades-old operating procedures." *Vermont*, 2025 WL 2394534, at *2. 3M's investigation revealed that the Rutland facility had once produced CCLs "for microwave applications" "in electronic military and defense devices and systems." Rutland NOR ¶¶ 24, 28. 3M did so pursuant to MilSpec requiring the use of polytetrafluoroethylene, a specific PFAS compound that is manufactured using PFOA—one of the PFAS compounds for which the State seeks recovery in this case. *Id.* ¶¶ 4, 12, 26, 28. Shortly thereafter, in December 2023, the State confirmed that it was seeking to recover for alleged PFAS contamination at the Landfill. *See id.* ¶ 13; *Vermont*, 2025 WL 2394534, at *2.

In January 2024, 3M timely "removed this action to federal court under the federal officer removal statute, predicated on its assertion of a colorable federal defense to Vermont's claims arising from the military specification requirements." *Vermont*, 2025 WL 2394534, at *1–2. In support, 3M attached (a) the State's discovery responses identifying the Landfill as an allegedly contaminated site for which it seeks recovery; (b) the DEC's letter regarding disposal of PFAS-containing waste at the Landfill; and (c) the MilSpec that expressly required that CCLs contain PFAS. No. 2:24-cv-00019, Dkt. 1-1.

In the Rutland Removal, 3M alleged that "the State's claims in this case *relating to* the Rutland City landfill plausibly arise at least in part from alleged PFAS waste that derived from manufacture of products for which the applicable MilSpec required the use of PFAS to meet the Government's needs." NOR ¶ 37 (emphasis added). 3M also alleged that the "groundwater" at

4

the Landfill likewise potentially contains PFAS from MilSpec CCLs, noting the State's allegation that "PFAS was released at landfills, among other sites." NOR ¶¶ 9, 11–13, 30 (citing Compl. ¶¶ 57, 247). 3M noted that the alleged PFAS contamination, plausibly derived from 3M's MilSpec CCLs, implicates its federal government-contractor defense. NOR ¶¶ 29–31. The State moved to remand. It primarily argued that 3M's removal was untimely but also disputed removal on the merits. Dkt. 139 at 12–15.

Judge Sessions granted the State's motion to remand, concluding that 3M's original removal was untimely without reaching the merits of the removal. *See Vermont v. 3M Co.*, 2024 WL 1596887, at *5 (D. Vt. Apr. 12, 2024). 3M appealed.

3.    While the Second Circuit considered 3M's appeal, discovery continued in state court. Dkt. 1 ¶ 22 (AFFF NOR). In July 2024, the State served its initial expert notices, which identified the contours of the State's claims and its requested relief.

The State disclosed opinions from expert Mark Benotti, Ph.D., on whose declaration the State previously relied to argue that 3M's MilSpec CCLs constituted only a "subset of the waste . . . brought to the Rutland landfill." Dkt. 139 at 14. The State did not disclose any opinions from Dr. Benotti relating to the Rutland facility or the Landfill regarding the two-year period (1973–1975) when 3M manufactured MilSpec CCLs at the facility and disposed of CCL waste at the Landfill. Dr. Benotti's December 2024 deposition confirmed the limits of his testimony: He disclaimed all knowledge of or opinions related to "the amount of waste that would have been transported to the Rutland landfill from 3M's facility" or about the manufacture of MilSpec products at 3M's Rutland facility. Ex. 1 at 238:5–239:3 (12/13/24 Benotti Dep.).

██████████████████████████████

██████████████████████████████

███████████████████████████████████████████████████████████

████ *See* Dkt. 53-7 at 5, 15 (Fogg Discl.); Dkt. 99-2 at 21 (Friedman Discl.).  Since the filing of

its Complaint, the State had strenuously maintained that it was not seeking to recover for alleged

PFAS contamination from AFFF in this litigation—in an effort to prevent removal based on 3M's

production of AFFF pursuant to MilSpec.  The State disclosed the testimony of Scott Friedman (a

damages expert) purporting to carve out PFAS from AFFF from this action.  Mr. Friedman main-

tains he identified sites potentially affected by AFFF by ███████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████ Dkt. 99-2 at 21; *see also* Ex. 2 at

241:19–24 (Friedman Dep.).

Then, in April 2025, the State served out-of-time supplemental expert reports necessitating

further depositions of its experts. ████████████████████████████████████████████

████████████████████████████████ *See* AFFF NOR ¶¶ 22–24.

Having sampled private wells throughout Vermont for PFAS, Dr. Fogg agreed that it ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Dkt. 1-3 at 203:1–204:8, 211:2–23, 213:14–23, 214:8–217:14 (7/9/2025 Fogg Dep.).

The State's theory of how PFAS moves through the environment means that any PFAS at

the Landfill arising from 3M's manufacture of MilSpec CCLs could have spread at least ████████

thereby affecting other at-issue sites.  *See* Ex. 3 ¶¶ 4–6 (Hokkanen Decl.); *accord* Rutland NOR

¶ 9. ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See* Ex. 3 ¶¶ 6–8; Dkt. 99-5 at 32–33, 46–48, 55–56 (Brown Discl.).

Dr. Fogg's testimony also established an additional basis for federal-officer removal: ██

████████████████████████████████████████████████████

████████████████████████████████████████████

██████ AFFF NOR ¶¶ 4–5, 23–25, 42–44; Dkt. 99-3 at 4–7 (Hokkanen Supp. Discl.).

In light of Dr. Fogg's revelations, 3M again promptly removed this case to this Court on July 18, 2025, on that separate and independent ground. Specifically, the State seeks ███████ ████████████████ for sites ████████████████ the State's known or potential Mil-Spec AFFF sites. Dkt. 99-3 at 4–7; Dkt. 99-5 at Charts 1–8 (Brown Discl.). Contrary to the State's many prior representations, the same PFAS compounds from both MilSpec AFFF and non-AFFF sources are—based on Dr. Fogg's testimony—"commingled" at those sites and ██████████████ ████████████████████████████ AFFF NOR ¶¶ 4–5, 25, 42, 44.

4.     On August 19, 2025, the Second Circuit vacated the 2024 remand order on the Rutland Removal. It held that the Rutland Removal was timely and returned the case to this Court to address the merits of removal—specifically, whether 3M "plausibly alleged federal officer removal jurisdiction." *Vermont*, 2025 WL 2394534, at *3–4. After the mandate issued, this Court consolidated the Rutland Removal and the AFFF Removal proceedings. *See* Dkt. 138.

5.     On September 4, 2025, at a status conference before this Court, the State disclosed for the first time that it intended to disclaim relief from the Landfill and to rely on that disclaimer in opposing the Rutland Removal. Dkt. 134 at 5:3–5 ("[T]he State intends to disclaim relief from the Rutland landfill."). On September 11, 2025, the State moved for leave to amend its complaint to include the following disclaimer: "The State disclaims and is not seeking any relief with respect

to contamination at or from the Rutland City Landfill and hereby limits all of its claims and any recovery to exclude such contamination." Dkt. 144 at 3; Dkt. 144-1 ¶ 13. The proposed third amended complaint does not define "at or from the [Landfill]" or specify the sites (or private wells) that would be covered by the purported disclaimer.

The State also filed a supplemental brief asserting new grounds to remand: that its putative disclaimer would "eliminat[e] any alleged basis for federal removal jurisdiction," Dkt. 145 at 2, and that the Court should decline to exercise supplemental jurisdiction, *id.* at 5–8.

## ARGUMENT

### I.    Recent Developments Confirm That The Rutland Removal Was Proper.

3M properly removed this case under the federal-officer removal statute based on the Landfill. Recent case-law developments in the 20 months since that removal reinforce the fundamentally federal nature of this case. Although the State half-heartedly protests that its proposed amendment is not a concession that the Rutland Removal "was ever proper," Dkt. 144 at 2, its last-ditch actions speak for themselves.

Under 28 U.S.C. § 1442(a)(1), federal officers and those "acting under" them may remove certain actions filed in state court to a federal forum. The federal-officer removal statute reflects Congress's longstanding judgment that "those acting at the federal government's direction should be able to defend themselves in federal—not state—court." *Maryland v. 3M Co.*, 130 F.4th 380, 387 (4th Cir. 2025). Its protections are deliberately broad, and courts interpret it accordingly. Rather than "narrow, grudging interpretations[s] of the statute," *id.* at 388, the federal-officer removal statute "'must be liberally construed'" in favor of removal, *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021). It permits removal when: (i) the defendant is a "person" who "act[ed] under" a federal officer, (ii) the lawsuit is "for or relating to" an act taken "under color of" federal office, and (iii) the defendant has a colorable federal defense. 28 U.S.C. § 1442(a)(1); *see also*

*Vermont*, 2025 WL 2394534, at *1.  A private party seeking federal-officer removal "need include only a plausible allegation" that it satisfies each element.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see Agyin*, 986 F.3d at 180–81.

The State has never contested that 3M has a colorable federal defense.  And now that the Second Circuit has rejected the State's main argument for remand—concerning the timeliness of the Rutland Removal—only the State's backup arguments on the first and second elements of removal remain.  Those arguments were not persuasive when pressed 20 months ago, and recent case-law and factual developments further undermine them.

### A.    3M Plausibly Alleged That It "Acted Under" Federal Officers At Rutland.

A private entity is "'acting under'" a federal officer when it "'produce[s] an item'" that the government "'needs' and thus 'helps officers fulfill other basic governmental tasks.'"  *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 185–86 (1st Cir. 2024).  3M alleged that:  it produced PFAS-containing CCLs at its Rutland facility "in accordance with detailed specifications issued by the U.S. military"; the CCLs "were subject to various tests by the U.S. Army"; the CCLs were "approved for use by the military and for inclusion on the Department of Defense's qualified products list," Rutland NOR ¶ 35; 3M sold the CCLs "for use by the government," *id.* ¶ 41; and the government used these CCLs "for microwave applications," *id.*, in "electronic military and defense devices and systems," *id.* ¶ 24.

The State made only two arguments on the "acting under" prong in its prior briefing.  *First*, it argued in opposing the Rutland Removal that 3M failed to demonstrate it "acted under" a federal officer.  Despite 3M's allegations, the State contended that 3M was required to "prove" its allegations with "competent evidence."  Dkt. 139 at 13.  While 3M did put forward such evidence, *see* Dkt. 140 at 21–22, numerous recent decisions confirm that 3M's plausible allegations suffice at this stage.  As the Fourth Circuit said, to carry its burden, 3M need only "plausibly allege that

9

federal jurisdiction . . . is proper." *W. Va. ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 194 (4th Cir. 2025) (citing *Maryland*, 130 F.4th at 387). Or, as the First Circuit put it, "a federal court examines the notice of removal's well-pleaded allegations to see if the removing party has demonstrated 'an adequate threshold showing' for removal." *Puerto Rico*, 119 F.4th at 189. In rejecting a similar argument that 3M's evidence was not sufficient, another court recently concluded that "3M has put forth a plausible case" to support its removal, which "is enough for today's purposes." *City of Irondale v. 3M Co.*, 2025 WL 2419238, at *6 (N.D. Ala. Aug. 19, 2025). Just so here.

*Second*, the State argued that 3M, as a "purported subcontractor," lacked "direct contacts" with the federal government. Dkt. 141 at 8–9; *see* Dkt. 139 at 13–14. But multiple appellate decisions rendered since the original Rutland Removal have rejected that precise argument. The Fourth Circuit recently held that "the absence of a direct contractual relationship with the federal government is not a bar to removing an action under § 1442(a)(1)." *Hunt*, 140 F.4th at 198 (quoting *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 254 (4th Cir. 2021)). The First Circuit similarly emphasized that private contractors need not "directly contract" with the federal government to invoke federal-officer removal. *Puerto Rico*, 119 F.4th at 182 n.2 ("absence of a direct contractual relationship . . . is not a bar"). As the Fourth Circuit explained, the "acting under" test never turned on whether there were "middlemen" between a defendant and the federal government. *Hunt*, 140 F.4th at 198. Instead, the touchstone is whether the federal government "exert[ed] some control over [the defendant]" through "detailed regulation, monitoring, or supervision" of the product provided to the federal government. *Id*. at 197–98.

This consensus makes perfect sense. As another court recently explained, "acting as a subcontractor in order to provide necessary . . . services to effectuate" federal programs is "'a

classic case in which a private corporation acts under a federal officer for purposes of removal.'" *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *10 (D.N.J. June 4, 2025). Otherwise, "the availability of the federal officer removal statute would be significantly curtailed as federal contracts are often carried out, at least in part, through subcontractors." *Arlington*, 996 F.3d at 254.

Here, as the CCL MilSpec demonstrates, 3M has plausibly alleged that the federal government exerted the requisite control over 3M's work to support federal-officer removal. *See* Rutland NOR ¶¶ 24–27 (alleging that "the U.S. Army-Electronics Command" agency had responsibility for "examin[ing], test[ing], and approv[ing]" all CCLs "prior to military procurement"). The State's contrary contention that 3M's allegations did not suffice was unpersuasive when the State first advanced it more than a year and a half ago. Dkt. 140 at 19–22 (citing *Dart Cherokee*, 574 U.S. at 89; *Agyin*, 986 F.3d at 175, 181; *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008); *Ayo v. 3M Co.*, 2018 WL 4781145, at *7–15 (E.D.N.Y. Sept. 30, 2018)). And it is untenable today in light of the intervening decisions of multiple courts of appeals.

### B. 3M Plausibly Alleged That The State's Claims "Relate To" 3M's Production Of MilSpec CCLs At Rutland.

A private defendant invoking federal-officer removal also must plausibly allege that the claims at issue "relat[e] to" the action taken under federal authority.[1] 28 U.S.C. § 1442(a)(1). Recent case law stresses that this so-called "nexus" requirement sets a "low bar," *Hunt,* 140 F.4th at 198–99, and recent developments in the record demonstrate that 3M readily clears that bar.

As 3M alleged in its notice of removal, PFAS from MilSpec CCLs manufactured at the Rutland facility plausibly entered the "groundwater" at the Landfill and—according to the State's operative complaint—were plausibly "released" into the surrounding environment, affecting

---

[1] The Supreme Court granted certiorari and will hear argument this Term on the scope of the "relating to" requirement. *Chevron USA, Inc. v. Plaquemines Par.,* No. 24-813 (June 16, 2025).

numerous sites. Rutland NOR ¶ 9 (citing Compl. ¶¶ 57, 247). Therefore, the State's suit seeking recovery for alleged PFAS contamination plausibly "relat[es] to" 3M's actions taken under federal authority at its Rutland facility. The State does not contest these allegations.

Instead, the State argued only that the amount of PFAS at the Landfill "traceable to 3M's MilSpec production" is "too small" relative to the case as a whole to satisfy the nexus requirement. Dkt. 141 at 9–10; *see also* Dkt. 139 at 14–15 ("3M's allegations regarding copper-clad laminates from 1973-1975 would constitute only . . . a tiny fraction of the case."). It urged the Court, "as a matter of policy, to require [3M] to allege more than a de minimis amount of federal transactions." Dkt. 141 at 9 (quoting *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020)). The State's atextual "de minimis" threshold for removal was meritless then. Dkt. 140 at 23–24 & n.15. There was and is "no support in the statute or precedent for this rule." *Baker*, 962 F.3d at 945. Recent decisions have only further refuted it.

The Fourth Circuit in *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025), found that a district court erred in remanding Maryland's and South Carolina's claims against 3M, and its reasoning forecloses the State's "de minimis" theory. The court held that, in light of 3M's plausible allegations that "[s]ome of the PFAS contamination charged by the States came from Military AFFF," any relief "would necessarily implicate work that 3M did for the federal government." *Id.* at 390. The court explained that those inquiries belong in federal court even if the States' claims involve just a "morsel" of PFAS from 3M's MilSpec product. *Id.* at 392. Far from the "de minimis" rule that the State seeks in this case, the Fourth Circuit adopted just the opposite: If a State's claim concerns even a small amount of a MilSpec product, then the court would "have to disentangle" the defendant's federal and non-federal work, which means that the case "relates to" that federal work and that removal of the entire case is therefore proper. *Id.* at 391.

The Seventh Circuit made the same point in *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024). The court said that 3M would have a "viab[le]" federal defense if a "factfinder would need to apportion the contamination" between alleged PFAS from MilSpec and non-Mil-Spec sources. *Id.* at 848. The only exception, the court explained, is if "100%" of the contamination for which the State sought to recover did not concern federal products. *Id.* at 849. In *Raoul*, the Seventh Circuit ordered remand only because—in that case involving a single site and a downstream source of MilSpec AFFF—Illinois "clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed PFAS contamination" *at all* and "expressly agreed that a factfinder will not need to apportion the PFAS contamination between" military and non-military sources. *Id.* Illinois's concession meant that it sought *zero* relief for contamination plausibly commingled with PFAS from MilSpec products. *Id.* The Seventh Circuit made clear, however, that if Illinois sought relief for "even a morsel" of plausible PFAS from MilSpec AFFF, federal jurisdiction would lie. *Id.*

These recent decisions reflect, as the First Circuit explained recently, the longstanding principle that remand should be granted only if there is "no possibility that a state court" would decide questions that determine whether a federal defense applies. *Puerto Rico*, 119 F.4th at 187. To that end, a federal contractor's alleged federal defense "need not be a lawsuit's defining feature." *Id.* at 186. Instead, "if it is a single 'ingredient in the mass,' then it is 'decisive upon the subject of jurisdiction.'" *Id.* (quoting *Mesa v. California*, 489 U.S. 121, 129 (1989)); *see Mayor v. Cooper*, 73 U.S. 247, 252 (1867). 3M's plausible allegations of commingled PFAS from Mil-Spec CCLs thus more than suffice for the Court to exercise jurisdiction here.

The State's contrary position is also undermined by intervening factual developments, which confirm that its claims regarding PFAS from 3M's MilSpec CCLs are not "de minimis."

The State asserted that PFAS from 3M's MilSpec CCLs "constitute only a fraction of the PFAS-containing products manufactured at Rutland." Dkt. 139 at 14. But that assertion rested on the declaration of an expert who now disclaims (1) "any opinions about the amount of waste that would have been transported to the Rutland landfill from 3M's facility," (2) "any knowledge about [the] manufacture or processing of military specification products at the Rutland facility," and (3) any conclusions about "[t]he nature of the products [or] whether they're mil spec." Ex. 1 at 238:5–239:3. The State also previously argued that PFAS ██████████████████████ ██████████████ but ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ *See* Ex. 3 ¶¶ 4, 6–8. That is not "de minimis" by any measure. In short, 3M plausibly alleged in the Rutland Removal that this Court has jurisdiction under § 1442(a)(1).

## II.    The State's Proposed Amendment And Disclaimer Provide No Basis For Remand.

Faced with the great (and growing) weight of precedent and evidence that undermine its position on the merits, the State tries—at this late date—to sidestep those issues by seeking leave to amend its complaint to include a disclaimer of relief for PFAS contamination "at or from" the Landfill. Dkt. 145 at 1. The State argues that the disclaimer would "eliminat[e] any alleged basis" for federal-officer removal. *Id.* at 2. But the State's "artful pleading" does not deprive this Court of jurisdiction. *Maryland*, 130 F.4th at 390. Further, even if the State's disclaimer *would* have the effect it claims, that is all the more reason for the Court in its discretion to reject rather than reward the State's attempted jurisdictional gerrymandering.

A.    **The Proposed Disclaimer Would Not Eliminate PFAS From MilSpec CCLs From The Case.**

Congress's broad policy in favor of federal-officer jurisdiction means that jurisdiction is proper even when the federal defense is only a "single . . . ingredient in the mass." *Mesa*, 489 U.S. at 129.  Accordingly, a disclaimer would be effective to deprive this Court of jurisdiction *only* if it carved out "'100%'" of the sites plausibly contaminated by even a "'morsel'" of PFAS from MilSpec CCLs deposited at the Landfill.  *Maryland*, 130 F.4th at 392 (quoting *Raoul*, 111 F.4th at 849).  The State's question-begging disclaimer—which leaves complex factual and expert disputes at issue—does not come close.

As 3M alleged in its notice of removal, PFAS from MilSpec CCLs plausibly entered the "groundwater" at the Landfill, Rutland NOR ¶ 12, and, according to the State's Complaint, was plausibly "released" into the surrounding environment, affecting numerous sites, *id.* ¶ 9 (citing Compl. ¶¶ 57, 247).  These allegations have now been expanded by the State's own expert, Dr. Fogg, who articulated the State's new theory that ██████████████████████████ ████████████████████████████ Dkt. 1-3 at 203:1–204:8, 211:2–23, 213:14–23; 214:8– 217:14; Ex. 3 ¶ 4.  Yet the State's disclaimer does not "clearly and unequivocally" █████████ ████████████████████████████████████████ ███████████████████ *Raoul*, 111 F.4th at 849.  The State does not even explain what it means by "contamination at or from" the Landfill.  Dkt. 144-1 ¶ 13.  Because the disclaimer does not clearly and unequivocally cover all the "areas where the contamination" is plausibly sourced (even in part) from MilSpec CCLs, it does not eliminate federal-officer removal jurisdiction.  *Raoul*, 111 F.4th at 849.

Even if the State's disclaimer could be construed more broadly, it would still be ineffective because of the inescapable causation and apportionment issues that remain.  As multiple courts

have held, a "disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Maryland*, 130 F.4th at 389 (quoting *Puerto Rico*, 119 F.4th at 188); *see Hunt*, 140 F.4th at 195–96; *Baker*, 962 F.3d at 944. The Fourth Circuit's decision in *Maryland* is particularly instructive. As noted above, that case involved allegations of commingled PFAS from MilSpec and non-MilSpec sources. *Maryland*, 130 F.4th at 385–86. Both Maryland and South Carolina tried to "to immunize their complaints from federal officer removal with . . . purported disclaimers." *Id.* at 389. The Fourth Circuit squarely rejected their attempts. Given 3M's plausible allegations of commingling and indistinguishability of PFAS from MilSpec AFFF and non-AFFF sources, the factfinder must "disentangle" questions of "causation" and "apportionment" between 3M's federal work and other sources of PFAS. *Id.* at 391–92. The *Maryland* court explained that these "merits" questions regarding "the sources of pollutants," including some products manufactured for the federal government, "belong in federal court." *Id.*; *see also* Dkt. 99 at 13–14.

The State's disclaimer here is inextricably bound up with the same knotty issues. The State defines its disclaimer as contamination "at *or from* the Rutland landfill." Dkt. 145 at 1 (emphasis added). Yet for each site in the area, a factfinder will need to decide whether any "morsel" of PFAS, *Maryland*, 130 F.4th at 392, came "from" the Landfill, *see* Dkt. 145 at 1. As in *Maryland*, whether PFAS came "from" MilSpec CCLs at the Landfill—implicating 3M's "production for the federal government"—or "from [3M's] more general manufacturing operations outside those confines" are "*merits questions* that a federal court should decide." 130 F.4th at 391. That is because the answers to those questions determine the availability and scope of 3M's federal government-contractor defense.

16

That the State's disclaimer would bar it from "recover[ing] for PFAS contamination" from the Landfill is irrelevant. *Maryland*, 130 F.4th at 392. The legal effect of a putative disclaimer turns on the task it leaves to the "factfinder," not the scope of a plaintiff's recovery. *Id.*; *accord Willingham v. Morgan*, 395 U.S. 402, 409 (1969) (federal-officer removal is based, in part, on the federal interest for federal contractors to "have the opportunity to present their version of the facts to a federal, not a state, court"). Here, the State "envision[s] recovering" for plausibly commingled "PFAS contamination from numerous geographic locations" other than the Landfill. *Maryland*, 130 F.4th at 392. Determining *whether* PFAS came solely from sources other than MilSpec CCLs at the Landfill leaves a court to decide "important causation and allocation questions" that go to the merits, *i.e.*, how much PFAS came from where? *Id.* But a disclaimer is valid only if it "eliminate[s] the possibility" that a court must decide *any* causation and allocation issues about a defendant's federal work. *Puerto Rico*, 119 F.4th at 194. The State's proposed disclaimer does no such thing; instead, given 3M's plausible allegation that the same PFAS compound is indistinguishable in the environment regardless of its source, such questions remain "inevitable." *Maryland*, 130 F.4th at 392; *see* Dkt. 99 at 15.

The State leans on the Ninth Circuit's decision in *California by & through Harrison v. Express Scripts, Inc.*, 2025 WL 2586648 (9th Cir. Sept. 8, 2025), but that decision is unavailing. That court explained that its decision concerned "readily traceable" opioid prescriptions, which it distinguished from "pollution discharged into a waterway in which the source of the contaminant might be difficult to identify." *Id.* at *14. Like other courts, the Ninth Circuit acknowledged that PFAS commingling presents "unique facts." *Id.*; *see also Pappagallo v. Redco Corp.*, 2025 WL 2496034, at *5 (E.D. Pa. Aug. 29, 2025) (noting PFAS cases are different because "it is nearly impossible to identify the source of contamination") And it reiterated that "impermissible"

disclaimers include those that "purport[] to disavow claims based on a defendant's act or omission that make up . . . a core component of the plaintiff's claims." *Harrison*, 2025 WL 2586648, at *7. As explained above, that is exactly what the State is attempting here: Despite purporting to disclaim recovery for PFAS from the Landfill, the State still seeks to recover at sites with indistinguishable PFAS compounds commingled from various sources, including MilSpec CCLs disposed of at the Landfill.

### B.    The State Cannot Evade A Federal Forum By Altering Jurisdictional Facts.

Wrapping itself in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), the State argues that its proposed amendment would change the factual landscape relevant to removal by removing an unspecified array of sites from the case without regard to what the causation and apportionment analyses would show. Dkt. 145 at 2–4. The State's reliance on *Royal Canin* fails for two reasons.

*First*, *Royal Canin* itself makes clear that a plaintiff cannot defeat removal by attempting to manipulate real-world facts that establish federal-court jurisdiction. *Royal Canin* addressed the jurisdictional consequences of an amended complaint in a case removed on the basis of federal-question jurisdiction under 28 U.S.C. § 1331. The Court held that, when "the plaintiff eliminates the federal-law *claims* that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves." *Royal Canin*, 604 U.S. at 30 (emphasis added). But the Court expressly and carefully distinguished its precedent holding that plaintiffs cannot amend their pleadings to eliminate federal jurisdiction if doing so would contradict the "*facts on the ground*." *Id.* at 36 n.5 (emphasis added). The Court reiterated that a plaintiff cannot destroy federal jurisdiction by amending its complaint to add allegations simply decreeing facts in the world. *Id.* For example, an amended complaint cannot thwart diversity jurisdiction by purporting to "reduce[] the alleged amount-in-controversy to below the statutory threshold." *Id.* at 38 n.8. The amount of

damages a particular claim implicates is a real-world fact, not a litigation choice left to the plaintiff. *Id. Royal Canin* added that "the rule responds to the difficulties of assessing a suit's value" and the "constant" and "wasteful" jurisdictional litigation that would ensue if a changing amount in controversy could alter the court's jurisdiction. *Id.*

The State's proposed amendment is nothing more than an attempt to evade federal jurisdiction by altering "facts on the ground." *Royal Canin*, 604 U.S. at 36 n.5. Unlike the plaintiff in *Royal Canin*, who "amended her complaint to delete its every mention of the [federal-law claim]," *id.* at 29, the State seeks to vaguely disclaim "contamination . . . *from* the Rutland City Landfill," Dkt. 144-1 ¶ 13. The State does not specify which other sites or wells are affected by "contamination . . . from" the Landfill, let alone how or whether it will carve out those sites. For those other affected sites, the State's disclaimer does not "subtract claims"; it is more akin to an amendment that arbitrarily and impermissibly seeks to cap the "value" of its potential recovery irrespective of reality. *Royal Canin*, 604 U.S. at 38 n.8; *see* Dkt. 144 at 6 (noting reduced damages). Whether MilSpec PFAS "from" the Rutland landfill are present—for example, at hundreds of wells in the vicinity of the Landfill—is a preexisting, real-world fact that the State cannot change by rewriting its pleading. *Royal Canin*, 604 U.S. at 38 n.8 (amendments that merely alter the "value" of a claim and will result in "constant litigation" over the scope of the claim change a "fact on the ground" and do "not destroy" federal jurisdiction). For that reason, the State's proposed amendment cannot defeat removal.

*Second*, the State's reliance on *Royal Canin* fails on its own terms. As the State acknowledges, *Royal Canin*'s holding dealt only with removal based on federal-question jurisdiction. Dkt. 145 at 4. It did not address federal-officer removal. *See, e.g.*, *Steib v. Huntington Ingalls, Inc.*, 2025 WL 2532696, at *3 (E.D. La. Sept. 3, 2025) ("*Royal Canin* is inapposite" to federal-officer

removal).  There is ample reason not to extend *Royal Canin*'s rule regarding the effect of a post-removal amendment in a federal-question-jurisdiction case to the altogether different circumstances of federal-officer removal jurisdiction under § 1442(a)(1).

There are fundamental differences between federal-question jurisdiction and federal-officer removal under § 1442(a)(1).  Unlike the "the general removal statute," which "must be strictly construed," the federal-officer removal statute "must be read broadly."  *Agyin*, 986 F.3d at 175.  Federal-question jurisdiction is also determined by evaluating the complaint, *Royal Canin*, 604 U.S. at 26, but for federal-officer removal the focal point is the *defendant's* "allegations" in the "notice of removal," *Agyin*, 986 F.3d at 182.  Courts "must credit the defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer," and federal-officer jurisdiction does not wax and wane as facts change. *Id.* at 175, 181 (brackets and citations omitted).

In addition, *Royal Canin* directs that a court should remand a case only when a plaintiff's post-removal amendment means "nothing" in the action provides a hook for federal jurisdiction any longer.  *Royal Canin*, 604 U.S. at 33–34; *see also id.* at 39 ("And with *any* federal anchor gone, supplemental jurisdiction over the residual state claims disappears as well") (emphasis added).  Here, even if amended, the State's complaint would still leave at issue many sites where 3M has plausibly alleged that PFAS from MilSpec AFFF have plausibly contaminated the groundwater, giving rise to a federal government-contractor defense and therefore federal jurisdiction on that basis.  *Id.* at 28 (after removal, "the case (including supplemental state claims) usually remains" in federal court unless an amendment means the court "'lacks subject matter jurisdiction'") (quoting 28 U.S.C. § 1447(c)).

The State once again looks to the Ninth Circuit's decision in *Harrison*, which relied on *Royal Canin* in finding an amended complaint's disclaimer sufficient to defeat jurisdiction. But once again that decision has little bearing. *Harrison* did not address the jurisdictional distinctions that *Royal Canin* explicitly preserved between amendments concerning "fact[s] on the ground" and legal claims. *Royal Canin*, 604 U.S. at 38 n.8. In addition, as explained, *Harrison* understood the "comprehensive disclaimer" in that case to carve out federal opioid prescriptions, which it said were "readily traceable" by source. 2025 WL 2586648, at *2, *14. *Harrison* distinguished cases like this one based on their "unique facts": Because it is "difficult to identify" the source of "pollution discharged into a waterway," a disclaimer does not defeat jurisdiction, *id.* at *14—it seeks to deny or change real-world facts. *See supra*. Moreover, it is well-settled in this circuit that "the factual sufficiency of the defendant's [federal government-contractor] defense" must be decided by a "federal, not a state, court." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014). The State's disclaimer of relief "at or from the Rutland City Landfill" would not and cannot deprive this Court of subject matter jurisdiction. Dkt. 144-1 ¶ 13; *Cuomo*, 771 F.3d at 116.

### C.    The Court Should Deny The State's Motion To Amend To Add Its Proposed Disclaimer Or, In The Alternative, Should Exercise Ancillary Jurisdiction.

For all the reasons set forth above, the State's attempt to destroy jurisdiction based on the Rutland Removal by amending its complaint yet again is futile. But even if the State's proposed amendment and disclaimer *would* have that effect, that would only provide more reason to reject the State's effort. It makes no secret of the forum-manipulation goal animating its request to amend its pleading after the close of discovery—mere months from the "trial-ready" date the State routinely invokes. *E.g.*, Dkt. 144 at 5. It freely admits it "now seeks to amend its complaint to disclaim relief with respect to the Rutland Landfill to remove the alleged basis" for 3M's first removal. *Id.* at 1. And it seeks to do so more than six years after filing suit, long after the Rule 15

deadline for amending the complaint passed, over a year after the close of fact discovery, and nearly *two years* after 3M originally removed this case to federal court. It does so now only because the Second Circuit rejected the State's primary argument against the Rutland Removal, and its other arguments on the merits of removal fall well short of justifying remand to state court. The Court should reject the State's gamesmanship by denying leave to amend its complaint or by retaining ancillary jurisdiction over this case.

1. The State cannot credibly contend that justice demands granting leave to amend its complaint in these circumstances. Fed. R. Civ. P. 15(a)(2). To the contrary, the interests of justice decisively favor denying the State leave. Courts routinely deny leave if the proposed amendment is, as here, dilatory, prejudicial, or nothing more than a "deliberate" effort "to divest[] th[e] court of jurisdiction." *Edwards v. CVS Health Corp.*, 714 F. Supp. 3d 239, 250 (S.D.N.Y. 2024).

*First*, the State has unduly delayed. 3M first removed this case in January 2024. But the State waited 20 months before seeking leave to amend—doing so only after the Second Circuit rejected the State's earlier theory regarding the timeliness of removal. The State offers no justification for its delay, and the only plausible explanation is "legal gamesmanship." *Haider v. Lyft, Inc.*, 2023 WL 2711553, at *1 (S.D.N.Y. Mar. 30, 2023) (denying leave to amend to avoid arbitration proceedings when plaintiffs delayed and then moved to amend "just weeks after judges in similar cases declined to reconsider compelling to arbitration").

*Second*, 3M would be prejudiced by amendment if this Court also finds that the disclaimer divests 3M of its entitlement to a federal forum. Dkt. 144 at 5. Although the amended complaint purports to reduce 3M's exposure in this action, it does not "zero[] out," *id.*, the difficult causation and apportionment issues, as explained above. Indeed, the State even resists a court order confirming its claims are dismissed with prejudice—raising the prospect that it intends to re-raise them

at a later date in a separate suit.  Dkt. 145 at 5–6 n.5.  3M has a substantial interest in having its federal "defenses," including those causation and apportionment issues, "litigated in the federal courts."  *Willingham*, 395 U.S. at 407.  That is why, "'if there be a single . . . ingredient'" of a federal contractor defense in a case, a federal court has jurisdiction to hear it.  *Mesa*, 489 U.S. at 129.  This interest goes beyond dollars and cents of ultimate liability.  At stake is 3M's statutory entitlement to a federal forum that Congress has promised to resolve disputes over work 3M did at the direction of the federal government.  *Maryland*, 130 F.4th at 392.

*Third*, courts routinely deny leave to amend when the plaintiff seeks to amend "primarily for the purpose of defeating federal jurisdiction."  *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009).  Courts, for example, have refused to allow amendments that purport to destroy diversity jurisdiction by joining parties, *id.*, or reducing the amount in controversy, *e.g.*, *Cueva v. Allstate Fire & Cas. Ins. Co.*, 2019 WL 3818035, at *1 (W.D. Tex. June 11, 2019) ("Plaintiff's proposed amendment to reduce the amount in controversy from $1,000,000 to $75,000 or less is a clear attempt to destroy this Court's jurisdiction."); *Bombliss v. Sprung*, 2017 WL 2766438, at *2 (C.D. Ill. June 26, 2017).  In fact, as the Eighth Circuit recognized in the decision *Royal Canin* affirmed, denying leave to amend is the "straightforward procedural answer to curbing potential forum manipulation" in the removal context.  *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 923 n.2 (8th Cir. 2023).  Where "the only reason for the change[] is to destroy federal jurisdiction," the solution is simply to "withhold 'leave' to amend."  *Id.*  This Court should address the State's "forum manipulation" by refusing to allow its amendment.  *Id.*

2.    Even if this Court permitted the State to amend its complaint to include a disclaimer related to the Landfill and concluded that disclaimer eliminates the clear federal basis for jurisdiction in the Rutland Removal, this Court still can and should exercise ancillary jurisdiction over

this case. Unlike federal-question removal arising under § 1331 (addressed in *Royal Canin*), federal-officer removal arises under § 1442(a)(1), which affords a court jurisdiction over the "action." In that circumstance, "the federal court assumes jurisdiction over all the claims and parties in the case regardless of whether the federal court could have assumed original jurisdiction over the suit," through its "ancillary or pendent-party jurisdiction." *District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132–33 (D.C. Cir. 1985); *accord Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, 2021 WL 5194662, at *9 (S.D. Ohio Nov. 8, 2021); *see Westchester Cnty. v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 227 (S.D.N.Y. 2024) (noting that § 1442(a)(1) may provide jurisdiction, rather than § 1367).[2]

A district court thus "does not lose jurisdiction under § 1442 even if 'the facts later indicate the federal defense fails.'" *Steib*, 2025 WL 2532696, at *3. Instead, courts consider the equities—"fairness," "judicial economy," and "comity"—in deciding whether to continue to exercise ancillary jurisdiction over a case properly removed under § 1442. *Merit Sys.*, 762 F.3d at 133. And for all the reasons discussed above, the equities favor this Court retaining jurisdiction and putting an end to the State's jurisdictional games. *See Myers v. Moore Eng'g, Inc.*, 42 F.3d 452, 454 (8th

---

[2] The State urges this Court to decline to exercise *supplemental* jurisdiction under 28 U.S.C. § 1367, overlooking that federal-officer removal implicates this Court's *ancillary* jurisdiction under 28 U.S.C. § 1442(a)(1). That oversight is important: Section 1367 grants a district court supplemental jurisdiction over "purely state law claims" so long as those claims are "'so related' to other claims over which the court has original [federal] jurisdiction as to 'form part of the same case or controversy.'" *Healthcare Venture Partners*, 2021 WL 5194662, at *9 n.5 (quoting 28 U.S.C. § 1367). But federal-officer cases are removed under § 1442(a)(1), through which the court assumes jurisdiction over the "action" itself, not just particular claims within the case. 28 U.S.C. § 1442(a)(1); *accord Merit Sys.*, 762 F.2d at 132–33. "Stated differently, it is unnecessary for a court to invoke its powers of § 1367 supplementary jurisdiction in a case where § 1442(a)(1) jurisdiction applies, because § 1442(a)(1) grants the court jurisdiction over the *entire* case, not merely certain claims *within* the case." *Healthcare Venture Partners*, 2021 WL 5194662, at *9 n.5. Whether a court should adjudicate the remaining claims in federal-officer cases thus turns on a court's distinct ancillary jurisdiction, which *Royal Canin* did not address.

Cir. 1994) (district court did not err in retaining jurisdiction when motion to remand filed 14 months into proceeding). That is especially true where this Court has as much substantive experience with this case as the state court. *See* Dkt. 79-38 (order assigning case to Judge Shafritz on October 10, 2024). The state court judge was assigned to the case less than a year ago and has not issued any orders on substantive motions. *See* Dkts. 79, 80. And 3M will still have plausible federal defenses to the State's claims relating to PFAS from MilSpec AFFF. The AFFF Removal was proper and timely, Dkt. 99, but even if this Court were to hold otherwise, it would retain "discretion to consider" an untimely invoked jurisdictional basis even if the original basis for removal jurisdiction falls away. *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 206–08 (2d Cir. 2024); *see Enbridge Energy, LP v. Nessel*, No. 24-783 (U.S.) (reviewing whether 28 U.S.C. § 1446 is subject to equitable exceptions). For the reasons explained, the Court should exercise that discretion here.

\* \* \*

Congress established federal-officer removal to ensure that federal contractors' federal defenses are "litigated in the federal courts." *Willingham*, 395 U.S. at 407. The plausible allegations in 3M's notice of removal make clear that this case falls squarely within that statute's reach. The Second Circuit's recent decision—and other recent legal and factual developments—confirm as much. And the State's last-ditch motion to amend to add a disclaimer basically gives the game away. But that gambit is futile. This Court should retain jurisdiction as a matter of discretion in any event, rather than sanctioning the State's delayed attempt to manipulate jurisdiction.

## CONCLUSION

The Court should deny the State's motion to remand regarding the Rutland Removal, regardless of the proposed amendment and disclaimer. The Court should also deny leave to amend or, alternatively, exercise ancillary jurisdiction.

Dated: September 30, 2025

Respectfully submitted,

*/s/ Lauren R. Goldman*
Lauren R. Goldman (*pro hac vice*)
Justine Goeke (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-2375
lgoldman@gibsondunn.com
jgoeke@gibsondunn.com

*/s/ Ritchie E. Berger*
Ritchie E. Berger
Kendall Hoechst
Anne Rosenblum
DINSE P.C.
209 Battery Street
Burlington, VT 05402
Tel: (802) 864-7571
rberger@dinse.com
khoechst@dinse.com
arosenblum@dinse.com

Beth A. Wilkinson
Jolee Porter
WILKINSON STEKLOFF LLP
2001 M Street, NW
Washington, DC 20036
Tel: (202) 847-4000
Fax: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com

*Counsel for Defendant 3M Company*