# UNITED STATES DISTRICT COURT
# DISTRICT OF VERMONT

| | |
|---|---|
| STATE OF VERMONT, | ) |
| | ) |
| Plaintiff, | ) Case Nos. 2:24-cv-19-MKL and 2:25- |
| | ) cv-660-MKL (lead) |
| v. | ) |
| | ) |
| 3M COMPANY, EIDP, INC., THE CHEMOURS | ) |
| COMPANY, THE CHEMOURS COMPANY | ) |
| FC, LLC, CORTEVA, INC., and DUPONT DE | ) |
| NEMOURS, INC., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF STATE OF VERMONT'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO AMEND COMPLAINT AND
## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF REMAND

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    3M cannot make new, untimely factual allegations to shore up its notice of removal. ........ 2

    II.   The Court should grant the State's motion to amend its complaint.................................... 6

    III.  The State's amendment requires remand. ......................................................................... 8

        A.    The disclaimer eliminates any potential removal jurisdiction. ....................................... 8

        B.    The disclaimer does not propose to alter any facts. ....................................................... 9

        C.    The Court should decline to exercise supplemental jurisdiction. ................................. 11

    IV.  Even without amendment of the complaint, 3M fails to demonstrate removability.......... 12

    V.   If this Court grants remand, it should reject 3M's automatic stay argument.................... 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbo-Bradley v. City of Niagara Falls*,
  73 F.4th 143 (2d Cir. 2023) .................................................................................. 1, 4, 5

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006).......................................................................................... 11

*Agudath Israel of Am. v. Cuomo*,
  979 F.3d 177 (2d Cir. 2020)........................................................................................... 15

*Artis v. D.C.*,
  583 U.S. 71 (2018).......................................................................................................... 11

*Bailey v. Bayer CropScience L.P.*,
  563 F.3d 302 (8th Cir. 2009) ...................................................................................... 6, 7

*Behrens v. JPMorgan Chase Bank, N.A.*,
  96 F.4th 202 (2d Cir. 2024) ............................................................................................ 5

*Blumberger v. California Hosp. Med. Ctr.*,
  No. 222CV06066FLAJCX, 2022 WL 18359101 (C.D. Cal. Dec. 5, 2022) ............................ 14

*Bombliss v. Sprung*,
  No. 4:17-cv-04030-SLD-JEH, 2017 WL 2766438 (C.D. Ill. June 26, 2017)............................ 7

*California by & through Harrison v. Express Scripts, Inc.*,
  139 F.4th 763 (9th Cir. 2025) ......................................................................................... 14

*California by & through Harrison v. Express Scripts, Inc.*,
  No. 24-1972, __ F.4th__, 2025 WL 2586648 (9th Cir. Sept. 8, 2025)................................ 7, 10

*Cavaleri v. Amgen Inc.*,
  No. 20CV1762PKCRML, 2021 WL 951652 (E.D.N.Y. Mar. 12, 2021) ................................ 14

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) .............................................................................................. 9

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023)....................................................................................................... 14

*Colorado v. Symes*,
  286 U.S. 510 (1932)........................................................................................................... 2

*Common Cause v. Lewis*,
No. 5:18-CV-589-FL, 2019 WL 248881 (E.D.N.C. Jan. 17, 2019) ......................................... 14

*Connecticut v. EIDP, Inc.*,
2024 WL 5135601 (D. Conn. Dec. 17, 2024) ........................................................................ 9

*Connecticut v. Exxon Mobil Corp.*,
83 F.4th 122 (2d Cir. 2023) ................................................................................................. 12

*Cueva v. Allstate Fire & Casualty Ins. Co.*,
No. 5:19-CV-00324-OLG, 2019 WL 3818035 (W.D. Tex. June 11, 2019) ............................ 7

*District of Columbia v. Merit Sys. Protection Board*,
762 F.2d 129 (D.C. Cir. 1985) ........................................................................................... 11

*Doe v. Univ. Health Sys., Inc.*,
No. 3:23-cv-357-KAC-DCP, 2024 WL 3050367 (E.D. Tenn. Mar. 15, 2024) ...................... 14

*Edwards v. CVS Health Corp.*,
714 F. Supp. 3d 239 (S.D.N.Y. 2024) ................................................................................... 7

*Forty Six Hundred LLC v. Cadence Educ., LLC*,
15 F.4th 70 (1st Cir. 2021) ............................................................................................ 14, 15

*Gale v. Chicago Title Ins.*,
929 F.3d 74 (2d Cir. 2019) .................................................................................................. 10

*Gavert by & through Gavert v. CF Modesto, LLC*,
No. 121CV01719AWISKO, 2022 WL 705613 n.1 (E.D. Cal. Mar. 9, 2022) ........................ 15

*Gonzalez v. El Centro Del Barrio*,
No. SA-24-CV-00852-OLG, 2025 WL 522248 (W.D. Tex. Feb. 7, 2025) ............................ 15

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
119 F.4th 174 (1st Cir. 2024) .......................................................................................... 9, 11

*Haider v. Lyft, Inc.*,
2023 WL 2711553 (S.D.N.Y. Mar. 30, 2023) ........................................................................ 7

*Illinois ex rel. Raoul v. 3M Co.*,
111 F.4th 846 (7th Cir. 2024) ........................................................................................... 8, 9

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
488 F.3d 112 (2d Cir. 2007) ............................................................................................. 2, 3

*Lamarr v. Goshen Health Sys., Inc.*,
    No. 1:23-cv-01173-JRS-MJD, 2024 WL 706909 (S.D. Ind. Feb. 21, 2024)........................... 14

*Lupo v. Human Affairs Int'l, Inc.*,
    28 F.3d 269 (2d Cir. 1994)....................................................................................................... 3

*Maranino v. Cabrini of Westchester*,
    No. 22-CV-4816 (CS), 2022 WL 17995107 (S.D.N.Y. Dec. 29, 2022)................................... 15

*Marathon Petroleum Co. LP v. Arkema, Inc.*,
    No. C25-1250 MJP, 2025 WL 2528353 (W.D. Wash. Sept. 3, 2025).................................... 13

*Martin v. LCMC Health Holdings, Inc.*,
    No. CV 23-411, 2023 WL 5173791 (E.D. La. Aug. 11, 2023) ............................................... 15

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) .............................................................................................. 8, 9

*McNutt v. General Motors Acceptance Corp. of Ind.*,
    298 U.S. 178 (1936)................................................................................................................. 3

*New Hampshire v. 3M Co.*,
    665 F. Supp. 3d 215 (D.N.H. 2023)......................................................................................... 9

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................................................... 15

*Rockwell Int'l v. United States*,
    549 U.S. 457 (2007)............................................................................................................... 10

*Royal Canin U.S.A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025)........................................................................................................ passim

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,
    990 F.3d 447 (5th Cir. 2021) ................................................................................................ 10

*Tennessee ex rel. Slatery v. Tennessee Valley Auth.*,
    No. 3:17-cv-01139, 2018 WL 3092942 (M.D. Tenn. June 22, 2018) .................................... 15

*UMLIC Consol., Inc. v. Spectrum Fin. Servs. Corp.*,
    665 F. Supp. 2d 528 (W.D.N.C. 2009) .................................................................................... 3

*United States v. Bruno*,
    No. 1:09-CR-29 (GLS), 2009 WL 2601249 (N.D.N.Y. Aug. 21, 2009) ................................... 6

*Verizon N.Y., Inc. v. Sheehy*,
　　No. 05CV733A, 2005 WL 3132724 (W.D.N.Y. Nov. 22, 2005) ............................................ 14

*Vermont v. 3M Co.*,
　　No. 2:24-cv-19, 2024 WL 1596887 (D. Vt. Apr. 12, 2024) ...................................................... 4

*Vermont v. 3M Co.*,
　　No. 24-1250-CV, 2025 WL 2394534 (2d Cir. Aug. 19, 2025) .................................................. 4

*Westchester Cnty. v. Mylan Pharms., Inc.*,
　　737 F. Supp. 3d 214 (S.D.N.Y. 2024) ..................................................................................... 11

*Wood v. Crane Co.*,
　　764 F.3d 316 (4th Cir. 2014) ............................................................................................... 5, 9

*Wullschleger v. Royal Canin U.S.A., Inc.*,
　　75 F.4th 918 (8th Cir. 2023) .............................................................................................. 6, 10

*Yorkshire Pioneer Cent. Sch. Dist. v. Travelers Prop. Cas.*,
　　No. 02-CV-0525E(SC), 2002 WL 31194561 (W.D.N.Y. Sept. 17, 2002) ................................ 3

## Statutes

28 U.S.C. § 1446 ................................................................................................................... 1, 5

28 U.S.C. § 1446(b)(3) ............................................................................................................. 4

28 U.S.C. § 1447(c) ................................................................................................................ 14

28 U.S.C. § 1447(e) .................................................................................................................. 7

28 U.S.C. § 1450 .................................................................................................................... 15

## Other Authorities

Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2025) .............................................. 8

Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3733 (Rev. 4th ed. 2025) ............................... 2

## INTRODUCTION

In response to the State's straightforward motion to amend its complaint to eliminate the one site on which 3M based its 2024 removal, 3M devises a new removal theory, invokes inapposite case law, and relies on inaccurate information contradicted by the record.

3M's new theory goes well beyond its notice of removal, which was expressly based on contamination "at the Rutland City landfill," Dkt. 1 in 2:24-cv-19, ¶¶ 9, 11, 13, and seeks to encompass the alleged spreading of that contamination miles away from the landfill where 3M now says it has hit hundreds of *other* sites.  3M openly bases this new theory on the now-familiar (though highly distorted) ███████████████████, which means that even by its own argument, 3M is out of time to add a new basis of removal.  Not to worry, says 3M on the final page of its brief, the Court can "consider an untimely invoked jurisdictional basis."  But this is wrong: "a notice of removal must follow the timeliness requirements Congress set forth in 28 U.S.C. § 1446."  *Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 146 (2d Cir. 2023).

Even if 3M's new basis of removal were timely, the State's disclaimer requires remand under *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), because it covers contamination "at *or from*" the landfill.  3M attempts to escape *Royal Canin* by invoking a narrow exception applicable to diversity jurisdiction, but this is not a diversity case.  3M's "facts on the ground" argument is, moreover, irreconcilable with *Royal Canin*'s holding allowing the plaintiff to withdraw "the allegations supporting federal jurisdiction," *id*. at 36, and with extensive case law upholding disclaimers in federal officer cases.  So is its argument based on alleged causation and apportionment issues, which 3M's own case law from the Fourth and Seventh Circuits reject as moot when it comes to PFAS disclaimers like the one here.

3M' rehashing of the 2024 remand motion also fails as Second Circuit law has not changed, nor has 3M's failure of proof.  3M wrongly says the State "all but admits" that removal

was proper in 2024 but the State stands firm that it was not.  In fact, 3M's original theory for removal, as well as its new one, cannot be reconciled with its own expert disclosure, which says that ██████████████████████████████████████████████████████ ████████████████████████████ Exh. 1 at 3–4.

The Court should remand the case to state court.

**ARGUMENT**[1]

**I.    3M cannot make new, untimely factual allegations to shore up its notice of removal.**

3M's First Notice of Removal (FNOR) was expressly based on "alleged PFAS contamination at the Rutland City landfill."  Dkt. 1 in 2:24-cv-19, FNOR ¶¶ 2, 4, 6, 7, & 11.  But it now says that PFAS from the Rutland landfill may have traveled miles away and contaminated a wastewater treatment facility and hundreds of private drinking water wells.  The law does not allow such after-the-fact allegations to bolster insufficient removals.

"In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal."  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. (MTBE)*, 488 F.3d 112, 124 (2d Cir. 2007).[2]  In *MTBE*, dealing with groundwater contamination from a gasoline additive, the court held that an allegation in the notice of removal that EPA knew there was an insufficient capacity of ethanol could not support the argument that it was

---

[1] 3M takes a series of gratuitous digs at the State, but they are incorrect.  For example, 3M suggests that the State concealed the Rutland landfill and that the State brought 3M's Rutland manufacturing facility to 3M's attention rather than vice versa, Opp. at 3, but these contentions are disproved by the record.  Dkt. 139 at 3–6.  3M also contends the State's supplemental expert disclosures were "out-of-time," but the state court never ruled on this disputed point, Dkt. 98 at 2 n.1, and 3M has served seven supplemental expert disclosures of its own.

[2] *Accord Colorado v. Symes*, 286 U.S. 510, 518–19 (1932) (removing party must "plainly . . . set forth . . . *all the facts* relating to the occurrence, as he claims them to be, on which the accusation is based" (emphasis added)), *quoted in MTBE*, 488 F.3d at 124; Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3733 (Rev. 4th ed. 2025) (after 30-day removal period defendant "may not add completely new grounds for removal *or furnish missing allegations*" (emphasis added)).

2

impossible for the ethanol supply to expand because "we do not find this specific allegation in the Notices of Removal." *Id.* at 129. And in *Lupo v. Human Affairs International, Inc.*, the Second Circuit ordered remand because "defendant's notice of removal fail[ed] to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount" and thus "it would be contrary to any concept of sensible judicial administration to permit [defendant] to amend its notice of removal at this juncture." 28 F.3d 269, 274 (2d Cir. 1994). *Lupo*, in turn, drew heavily from *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936), in which the court held that the removing party "must allege in his pleading the facts essential to show jurisdiction." Only amendments that are "technical in nature" may be made outside the 30-day period.[3] Removal procedures are strictly construed. *MTBE*, 488 F.3d at 124 (addressing federal officer jurisdiction).

Likely anticipating this deficiency, 3M attempts to sew together allegations from its notice of removal and the State's Second Amended Complaint (SAC). *See* Opp. at 11–12 (contending that it "alleged in its notice of removal" that "PFAS from MilSpec CCLs . . . plausibly entered the 'groundwater' at the Landfill and—according to the State's operative complaint—were plausibly 'released' into the surrounding environment, affecting numerous sites"). But 3M's citation for this contention is paragraph 9 of the FNOR, which is limited to contamination "at" the landfill and says nothing about the contamination spreading and affecting other sites: "According to the State, PFAS was released at landfills, among other sites. *See, e.g.*,

---

[3] *Yorkshire Pioneer Cent. Sch. Dist. v. Travelers Prop. Cas.*, No. 02-CV-0525E(SC), 2002 WL 31194561, at *1 (W.D.N.Y. Sept. 17, 2002) (amendment that seeks to correct the dollar value in a notice of removal from the "superseded jurisdictional amount" of $50,000 to $75,000 is not "a 'technical defect' that may be overlooked"); *UMLIC Consol., Inc. v. Spectrum Fin. Servs. Corp.*, 665 F. Supp. 2d 528, 533 (W.D.N.C. 2009) (argument that non-diverse plaintiff "is not a real party in interest and its citizenship should be disregarded" rejected as untimely even though notice of removal alleged diversity jurisdiction).

[SAC] ¶¶ 57, 247." FNOR ¶ 9. Nor do the two paragraphs of the complaint cited in paragraph 9 help 3M patch this hole. SAC paragraph 57 merely mentioned landfills as one of the areas of PFAS use associated with industrial activity. Dkt. 1-1 ¶ 57. And paragraph 247, which listed various landfills with PFAS contamination (not including Rutland), undercuts 3M's new theory as it distinguished between landfills with contamination "at" the landfills and those where the PFAS had resulted in injury both at the landfill as well as "injury of drinking water wells." Dkt. 1-1 ¶ 247(d). 3M's FNOR placed Rutland in the former category. FNOR ¶ 9 (referencing PFAS released "at" landfills); *see also* Dkt. 140 at 2 (3M opposition to remand referencing "one site" as basis for removal).[4] And the FNOR's reference to groundwater contamination was similarly limited to "groundwater at the Rutland City Landfill," FNOR ¶¶ 11, 12, which, as 3M recognizes in its brief, ██████████████████████████████████ *see* Opp. at 6–7. At no time, until now, did 3M refer to the Rutland landfill causing contamination at wells or wastewater treatment facilities as a basis for its removal.

3M had to make its new allegations within 30 days of receiving a paper from which it could ascertain this new basis of removal. *See* 28 U.S.C. § 1446(b)(3); *Abbo-Bradley*, 73 F.4th at 148.[5] But 3M says that its first notice from the State that ██████████████████ ████████████████████████████ and contends that this testimony applies equally

---

[4] 3M made the same "one site" representation to the Second Circuit, which accepted that representation. Brief for Defendant-Appellant at 9–10, *Vermont v. 3M Co.*, No. 24-1250-CV (2d Cir. July 22, 2024) (Dkt. 26.1) ("one of the sites at issue in this case"); *Vermont v. 3M Co.*, No. 24-1250-CV, 2025 WL 2394534, at *1–3 (2d Cir. Aug. 19, 2025).

[5] There can be no dispute that 3M received orders and papers long ago from which it could ascertain its alleged production of CCLs pursuant to a MilSpec and their disposal at the Rutland landfill. *Vermont v. 3M Co.*, No. 2:24-cv-19, 2024 WL 1596887, at *3–5 (D. Vt. Apr. 12, 2024) (describing the basis of 3M's first removal); *Vermont v. 3M Co.*, No. 24-1250-cv, 2025 WL 2394534, at *2 (2d Cir. Aug. 19, 2025) (same); Dkt. 53 at 6 (same); State of Vermont's Motion to Remand at 3–11, *State of Vermont v. 3M, et al.*, No. 2:24-cv-0019-WKS (D. Vt. Jan. 26, 2024) (Dkt. 10) (describing evidence used as the basis of 3M's first removal).

to PFAS from non-AFFF sites like Rutland.  Opp. at 6, 15 (contending that FNOR allegations "have now been expanded by" the ███████████.  Thus, by 3M's own admission, its 30 days to remove based on PFAS traveling from the Rutland landfill began on July 9, 2025.  In fact, 3M *did* file a new notice of removal based on this deposition testimony on July 18, 2025, but did not mention the Rutland landfill.

*Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), addressed a similar situation.  The plaintiff there sued manufacturers of asbestos-containing valves and gaskets and when a defendant removed based on a federal officer defense as to its production of valves, the plaintiff disclaimed recovery for injury caused by the valves.  *Id.* at 319.  The defendant then argued it could assert a federal defense as to its gaskets despite failing to do so in its notice of removal.  *Id.* at 320.  Although the defendant did mention the gaskets in its notice of removal, the court, citing the Second Circuit decision in *MTBE*, held this new basis for the defense to be untimely because "[c]ourts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis."  *Id.* at 319, 323, 325.

3M all but admits to its untimeliness when it says, on its final page, that the court has "'discretion to consider' an untimely invoked jurisdictional basis."  Opp. at 25 (quoting *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 206 (2d Cir. 2024)).  This is incorrect: "No matter the grounds for removal, however, a notice of removal must follow the timeliness requirements Congress set forth in 28 U.S.C. § 1446."  *Abbo-Bradley*, 73 F.4th at 146.  *Behrens*, cited by 3M, was not even a removal case and at any rate it *rejected* the argument that a new basis for federal subject matter jurisdiction may be untimely raised.  96 F.4th at 208–09.

3M also says a pending Supreme Court case may change the law.  Opp. at 25.  But district courts must "adhere to the settled law of this Circuit as it stands today" since a "grant of

certiorari does not create new law." *United States v. Bruno*, No. 1:09-CR-29 (GLS), 2009 WL 2601249, at *3 (N.D.N.Y. Aug. 21, 2009).

3M's attempt to expand the basis for its removal is out of time.

## II.    The Court should grant the State's motion to amend its complaint.

3M's arguments against amendment fail under Rule 15's permissive standard.

3M wrongly accuses the State of undue delay in removing the landfill from the case. Opp. at 22.  When 3M removed in 2024, the State immediately moved to protect its state court forum by seeking remand.  And the State prevailed in this Court on grounds of untimeliness, which must surely mean that the State had a reasonable position on that issue.  And the State then reasonably relied on that ruling in proceeding with the case on the understanding that 3M was out of time to remove based on the landfill.  Notably, 3M never sought a stay of the remand order from this Court or the Second Circuit, which undermines 3M's attempt to fault the State for proceeding based on an order that was then law of the case.  After the Second Circuit ruled, the State even filed an appellate motion seeking prompt issuance of the mandate to expedite proceedings in this Court.  3M's accusation of delay is groundless.

3M also repeatedly accuses the State of seeking to amend (presumably in bad faith) as a form of "forum-manipulation" or "gamesmanship," Opp. at 21 & 22; *see also id.* at 1, 2, 14, 18, 19, 23, & 25, as if it were somehow improper for the State to seek to have its state law claims heard in state court.  3M relies on Eighth Circuit cases stating that a court may deny a motion to amend where the only purpose of amendment is jurisdictional, to prevent "forum manipulation." Opp. at 23 (citing *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918, 923 n.2 (8th Cir. 2023) (dictum); *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302 (8th Cir. 2009)).  But the Supreme Court rejected this very point: "forum-manipulation concerns fail[] on multiple levels" because, among other things, they "cannot trump a federal statute." *Royal Canin*, 604 U.S. at 43 n.9.

Under *Royal Canin*, the plaintiff "may avoid federal jurisdiction by limiting its claims to avoid triggering federal officer removal jurisdiction." *California by & through Harrison v. Express Scripts, Inc.*, No. 24-1972, __ F.4th__, 2025 WL 2586648, at *15 (9th Cir. Sept. 8, 2025).

3M also relies on pre-*Royal Canin* case law denying leave to amend to add new parties. *See* Opp. at 22–33 (citing *Bailey*, 563 F.3d at 309; *Edwards v. CVS Health Corp.*, 714 F. Supp. 3d 239, 250 (S.D.N.Y. 2024); *Bombliss v. Sprung*, No. 4:17-cv-04030-SLD-JEH, 2017 WL 2766438, at *2 (C.D. Ill. June 26, 2017)). But even if those cases remain good law, they involve 28 U.S.C. § 1447(e) (not at issue here), which specifically authorizes a court to grant or deny a request "to join additional defendants whose joinder would destroy subject matter jurisdiction." 3M fares no better with *Haider v. Lyft, Inc.*, 2023 WL 2711553 (S.D.N.Y. Mar. 30, 2023), which did not involve jurisdiction at all but rather an attempt to add a new class representative to avoid court-ordered arbitration; the "legal gamesmanship" at issue there entailed counsel's manipulation of multiple cases against the same defendant in various jurisdictions. *Id.* at *1. And *Cueva v. Allstate Fire & Casualty Ins. Co.*, No. 5:19-CV-00324-OLG, 2019 WL 3818035, at *1 (W.D. Tex. June 11, 2019), dealt with the amount in controversy, which the Supreme Court held in *Royal Canin* is an "exception," unique to diversity cases, 604 U.S. at 38 n.8, to the general rule that "jurisdiction follows from (and only from) the operative pleading," *id.* at 35.

3M's arguments that it would be prejudiced by the proposed amendment, Opp. at 22, fare no better. The State is not proposing to add a new claim to the lawsuit but the opposite, *i.e.*, to drop claims as to the landfill and thus ensure that 3M is not liable for contamination at or from the landfill. *Wood*, 764 F.3d at 320, 326 (upholding decision that "amendment would not prejudice" defendant). 3M says the State could re-raise its claims later but, as the State has made clear, it has no objection to "an order that dismisses with prejudice the State's claims with

respect to the landfill." Dkt. 145 at 5–6 n.5. The State does not intend to reassert claims for the landfill. 3M also claims prejudice because of its alleged "entitlement to a federal forum," Opp. at 22, but that merely begs the question of whether 3M has any such entitlement. As set forth below, it does not. And where an amendment is not "frivolous" or "clearly futile, then denial of leave to amend is improper." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2025).

The Court should grant the State's motion to amend under Rule 15(a)(2).

## III.    The State's amendment requires remand.

3M says the proposed amendment would be futile, but in fact it would prevent the need for any court to address 3M's alleged federal officer defense when the case reaches the merits, and would streamline this Court's consideration of the State's motion to remand.

### A.    The disclaimer eliminates any potential removal jurisdiction.

The State's proposed amendment disclaims not only contamination "at" the Rutland City landfill, but also any contamination "from" the landfill. Dkt. 144 at 3. Thus, even if 3M were allowed to expand its notice of removal, it would not matter because the State's proposed amendment disclaims all recovery that originates from the landfill. The disclaimer thus includes any sites where contamination from the landfill caused a portion of the contamination, regardless of whether the pollution coming from the landfill is ever demonstrated to be MilSpec.

This type of disclaimer is like the disclaimer Illinois made—and the Seventh Circuit upheld—in *Illinois ex rel. Raoul v. 3M Co.*, where the State "would not seek relief against 3M for mixed PFAS contamination" and the federal officer defense was therefore "wholly irrelevant under the State's theory of recovery." 111 F.4th 846, 849 (7th Cir. 2024). 3M points to the Fourth Circuit's decision in another PFAS case, *Maryland v. 3M Co.*, but the plaintiffs there "envision[ed] recovering for mixed PFAS contamination" even after the court invited them to clarify their position in light of *Raoul*. 130 F.4th 380, 392 (4th Cir. 2025). In fact, the Fourth

Circuit agreed with *Raoul* that Illinois' disclaimer "mooted the causation and apportionment questions 3M now cites." *Id.* (quoting *Raoul*, 111 F.4th at 849). Those moot "causation and apportionment" questions are the ones that 3M repeatedly says are at issue here. Opp. at 2, 15, 16, 18, 22, 23. But the State's disclaimer is the same as in *Raoul* and thus 3M's attack on the disclaimer fails under its own case law.[6]

3M's reliance on *Government of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024), is similarly misplaced. In that case, the First Circuit held that "disclaimers that clearly carve out certain factual bases, whether by time span or location, such that any alleged injury could not have happened under the direction of a federal officer will prevent removal." *Id.* at 187 (quotation and alteration marks omitted). The State has made that type of disclaimer here.

**B.    The disclaimer does not propose to alter any facts.**

3M invokes a narrow exception to *Royal Canin* to argue the State is attempting to alter "facts on the ground" through its disclaimer. Opp. at 18. 3M is wrong.

First, the exception identified in *Royal Canin* does not apply. *Royal Canin* identified an "exception" in diversity cases, where post-removal changes impacting the amount in controversy or party citizenship will not divest a court of jurisdiction. 604 U.S. at 38 n.5 & n.8. But the State's disclaimer has nothing to do with a party's citizenship or the amount in controversy.[7]

---

[6] Other courts have upheld disclaimers to defeat federal officer jurisdiction. *See, e.g.*, *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) (disclaimer "carve[s] out a small island that would needlessly complicate their cases"); *Wood*, 764 F.3d at 321 ("As we have no reason to believe that the state court will fail to hold Joyner to this disclaimer, it effectively precludes any defense based on the valves alone."); *Connecticut v. EIDP, Inc.*, 2024 WL 5135601, at *4 (D. Conn. Dec. 17, 2024) (non-AFFF PFAS disclaimer), *appeal filed*, No. 25-11 (2d Cir.); *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 227–28 (D.N.H. 2023) ("there is no scenario under which 3M could be found liable" for MilSpec AFFF), *aff'd on other grounds*, 132 F.4th 556 (1st Cir. 2025).

[7] 3M fails to cite a single case where the exceptions identified in *Royal Canin* have been applied outside the context of the amount in controversy or the citizenship of the parties; notably, the

Second, the State's disclaimer is plainly *not* an attempt to alter any "facts on the ground." Instead, it does precisely what the Supreme Court contemplated in *Royal Canin* when it held that when a plaintiff "'voluntarily amends the complaint' to 'withdraw' the allegations supporting federal jurisdiction, that amendment 'will defeat jurisdiction.'" 604 U.S. at 36 (quoting *Rockwell*, 549 U.S. at 473–74). *Royal Canin* drew upon *Rockwell* for this proposition, and *Rockwell* held that the plaintiff's amended factual allegations in a False Claims Act case no longer satisfied a jurisdictional requirement even if the original, broader factual allegations would have done so. *Rockwell*, 549 U.S. at 473–74. Thus, narrowing the facts at issue in the case, as the State has done with respect to the Rutland landfill, is within the rule of *Royal Canin*.

3M says that the State's disclaimer seeks to alter which sites have contamination from the Rutland landfill, Opp. at 19, but that is not correct. The disclaimer means that if there is contamination at other sites from the landfill, 3M is legally absolved of liability for them just as it is with respect to the landfill itself (and regardless of whether the contamination is MilSpec).

Finally, 3M's argument is irreconcilable with numerous federal officer cases honoring disclaimers in which plaintiffs disclaim recovery for the factual bases on which defendant had removed.[8] By necessity, disclaimers in federal officer cases "carve[] out certain factual bases, whether by time span or location" in order to dispose of the need for a defendant to assert a

---

Supreme Court and Second Circuit have refused to expand this exception. *See Rockwell Int'l v. United States*, 549 U.S. 457, 473 (2007) (elimination of whistleblower allegations destroyed jurisdiction); *Gale v. Chicago Title Ins.*, 929 F.3d 74, 78 (2d Cir. 2019) (elimination of class allegations destroyed CAFA jurisdiction); *see also Wullschleger*, 75 F.4th at 924 ("[I]t is not even clear that [this exception] applies in federal-question cases."), *aff'd*, 604 U.S. 22.

[8] *See supra* 9 n.6; *California*, 2025 WL 2586648, at *4 ("Federal courts across the country have frequently recognized disclaimers, such as the one here, as a mechanism available to plaintiffs who wish to limit their complaints and avoid federal jurisdiction."); *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) (courts generally "respect express disclaimers").

federal defense.  *Express Scripts, Inc.*, 119 F.4th at 187 (collecting cases).  And both pre- and post- *Royal Canin*, these disclaimers have been held to defeat federal jurisdiction.  *See id.*  3M's argument is irreconcilable with this body of law.

### C.     The Court should decline to exercise supplemental jurisdiction.

The Court should also indicate that it would decline to exercise supplemental jurisdiction.

3M simply ignores the State's Second Circuit cases governing the supplemental jurisdiction analysis and the case law declining to exercise supplemental jurisdiction under § 1367 after a plaintiff's post-removal disclaimer of the alleged basis of federal officer jurisdiction.  Dkt. 145 at 5.  It argues that a common law "ancillary jurisdiction" test applies, but Congress replaced the common law doctrines of ancillary and pendent jurisdiction with § 1367.[9]

3M says that the equities and judicial economy favor retaining jurisdiction, Opp. at 24–25, but it is 3M, not the State, that has engaged in delay in this case.  *See, e.g.*, Dkt. 54 at 1–4.  On judicial economy, 3M says that this Court "has as much substantive experience with this case as the state court" because Judge Shafritz allegedly "has not issued any orders on substantive motions."  Opp. at 25.  But Judge Shafritz ruled on (and denied) defendants' motion to quash the trial preservation deposition of a State expert witness, Dkt. 79-39; she also denied in large part defendants' motion to compel further expert discovery from the State, a ruling that required her to review all the State's expert disclosures and in which she held that the "information provided

---

[9] *Artis v. D.C.*, 583 U.S. 71, 75 (2018) (Section 1367 "codifies the court-developed pendent and ancillary jurisdiction doctrines under the label 'supplemental jurisdiction'"); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (same); *see also Westchester Cnty. v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 227 n.10 (S.D.N.Y. 2024) (ancillary and supplemental jurisdiction "'tests are essentially identical in practice'"), *appeal filed, sub nom. Cnty. of Westchester v. Express Scripts*, No. 24-1639 (2d Cir.).  3M cites *District of Columbia v. Merit Sys. Protection Board*, 762 F.2d 129 (D.C. Cir. 1985), but that case pre-dates the statute. It also undercuts 3M's argument: "federal courts in this circuit and elsewhere regularly remand cases removed under section 1442(a)(1) once the federal party is eliminated."  *Id.* at 133.

in the State's 265-page expert disclosure easily satisfies its obligation under Rule 26."  Dkt. 80-7.

Judge Shafritz also entered a revised case schedule and scheduled a hearing on the "proposed

length, scheduling, and procedural of trial" shortly before 3M removed.  Dkts. 80-18, 53-17, 53-

18.  And the Superior Court generally has managed this case for over six years except for brief

interludes caused by 3M's removals.  All the factors, including judicial economy, favor remand.

## IV.    Even without amendment of the complaint, 3M fails to demonstrate removability.

3M spends much of its brief rehashing the issues in the 2024 motion to remand, which

need not be addressed under the State's proposed amendment.  The State responds only briefly.

With respect to the "acted under" prong, Opp. at 9–11, 3M's new case law cannot change

the fact that its vague, conclusory declaration does not address whether 3M made any sales of

CCLs to any government contractor at all or whether 3M produced MilSpec CCLs pursuant to

any contract.  Dkt. 141 at 7–8.  With respect to 3M's "for or relating to" argument, Opp. at 11–

12, 3M's new case law does not alter the Second Circuit's controlling decision in *Connecticut v.*

*Exxon Mobil Corp.* that "there must be a causal connection between the charged conduct and

asserted official authority,"  83 F.4th 122, 144 (2d Cir. 2023) (quotation marks omitted).  3M

suggests the Supreme Court may change the law, Opp. at 11 n.1, but that is speculative (and

telling).  And though 3M contends that *Maryland* "forecloses the State's 'de minimis' theory,"

Opp. at 12, and makes similar arguments regarding *Raoul* and *Puerto Rico*, those cases did not

address whether removal could be based on a tiny fraction of a case.

And even if the law changes, 3M still would be unable to meet any "for or relating to"

standard because its own expert has debunked its lawyer-driven thesis: ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ Exh. 1 at 3–4;  *see Marathon Petroleum Co. LP v. Arkema, Inc.*, No. C25-1250 MJP, 2025 WL 2528353, at *5 (W.D. Wash. Sept. 3, 2025) (remanding because expert's "plausible inference" that PFAS came from MilSpec insufficient to contradict contrary record evidence).

As far as offsite impacts, that puts him in agreement with Department of Environmental Conservation (DEC) expert witness Kasey Kathan, who has overseen DEC's investigation of PFAS at landfills, including the Rutland City landfill and its groundwater, and testified ████ ████████████████████████████████████████████████████████ Exh. 2 at 11:10–24, 111:5–12; Exh. 3 at 13:15–19, 39:3–40:6.  And according to another DEC expert witness, Eamon Twohig, the Rutland Wastewater Treatment Facility receives its waste from offsite, *i.e.*, sewage pipes and truck deliveries, not from groundwater, so "there is no basis to conclude that PFAS from the Rutland City landfill has reached the Rutland Wastewater Treatment Facility."  Twohig Decl. ¶ 6.[10]  This evidence is fatal to 3M's attempt to establish a new basis for federal officer jurisdiction.

## V.    If this Court grants remand, it should reject 3M's automatic stay argument.

In response to the State's motion to expedite, 3M argued that the Court "could not send the case back to state court" within 30 days after remand, Dkt. 150 at 4–5, but this is incorrect.

3M invokes Rule 62(a), but the suggestion "that the court has the authority and the obligation to ensure that the remand order is not mailed until the 30-day 'Automatic Stay' period

---

[10] 3M says that State expert Dr. Mark Benotti "disclaimed" opinions about the quantity of 3M waste transported to the landfill by quoting its own attorney's question as if it were Dr. Benotti's testimony, Opp. at 5, but he never offered such an opinion in the first place.  Consistent with his declaration, Dr. Benotti testified that 3M manufactured PFAS products from the 1950s through 1972 at its Rutland manufacturing facility and produced solid wastes.  *Compare* Benotti Decl. ¶¶ 5–6, Dkt. 10-29 in 2:24-cv-19, *with* Exh. 1 to Opp. 217:16–218:22, 235:25–236:8.  Dr. Benotti did not quantify the amount of waste, and it was not necessary to do so to show that waste during the 1950s through 1972 dwarfed any such waste from 1973–1975.

set forth" in this rule "has expired is at odds with the plain language of § 1447(c), which requires

the court to remand the case as soon as it appears the court lacks subject matter jurisdiction and

requires the clerk to mail the remand order, without qualification." *Common Cause v. Lewis*, No.

5:18-CV-589-FL, 2019 WL 248881, at *2 (E.D.N.C. Jan. 17, 2019).  The statute says that "[a]

certified copy of the order of remand *shall* be mailed by the clerk to the clerk of the State court,"

28 U.S.C. § 1447(c) (emphasis added).  And even if it applied here, Rule 62 provides for a stay

"unless the court orders otherwise"—which authorizes district courts to direct the Clerk to issue

the certified remand order immediately.[11]

3M also contradicts the Second Circuit in contending that *Coinbase, Inc. v. Bielski*, 599

U.S. 736 (2023), which deals with automatic stays pending appeal of arbitration orders, "made

clear" that remand of this case must be stayed pending appeal.  In *Westchester County v. Express

Scripts, Inc.*, No. 24-1639 (2d Cir. Sept. 6, 2024) (attached as Exh. 4), the court denied a stay

motion in an appeal of a remand order and rejected the applicability of *Coinbase* in that federal

officer case: "the request to stay is DENIED because the Appellants are not entitled to an

automatic stay pending appeal under *Coinbase*."  *Id.*; *accord California by & through Harrison

v. Express Scripts, Inc.*, 139 F.4th 763, 766 (9th Cir. 2025) (same).[12]

---

[11] *See, e.g.*, *Doe v. Univ. Health Sys., Inc.*, No. 3:23-cv-357-KAC-DCP, 2024 WL 3050367, at *1
(E.D. Tenn. Mar. 15, 2024) ("[T]he Court 'order[ed] otherwise' by remanding this action to state
court, entering judgment, and directing the Clerk to mail a copy of the Court's Remand Order to
the state court and close the case."); *Lamarr v. Goshen Health Sys., Inc.*, No. 1:23-cv-01173-
JRS-MJD, 2024 WL 706909, at *1 (S.D. Ind. Feb. 21, 2024) (same); *Blumberger v. California
Hosp. Med. Ctr.*, No. 222CV06066FLAJCX, 2022 WL 18359101, at *1–4 (C.D. Cal. Dec. 5,
2022) (same).

[12] 3M also cites *Forty Six Hundred LLC v. Cadence Educ., LLC*, but that case merely says that
"the district court *may* wish to avoid immediately certifying the remand order" and "[i]n the end,
it is the district court's province to manage its dockets."  15 F.4th 70, 81 (1st Cir. 2021)
(emphasis added).  *Compare with Cavaleri v. Amgen Inc.*, No. 20CV1762PKCRML, 2021 WL
951652, at *1 (E.D.N.Y. Mar. 12, 2021) (certifying remand order immediately); *Verizon N.Y.,
Inc. v. Sheehy*, No. 05CV733A, 2005 WL 3132724, at *2 (W.D.N.Y. Nov. 22, 2005) (same).

3M thus would have to satisfy the elements for a stay set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009), including by making a "strong showing that [the movant] is likely to succeed on the merits." *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 180 (2d Cir. 2020).[13]  In other words, 3M would have to convince this Court that a just-issued remand order was so wrong that it would likely be reversed on appeal.  There is no need to hold off on returning the case to state court to decide a stay motion predicated on such a contradiction.  Further, this large and important case can make progress in state court (starting with *Daubert* and summary judgment), even if 3M later prevails on appeal.  *See* 28 U.S.C. § 1450 (state court orders remain valid after removal); Dkt. 96.  This would avoid further prejudice to the State from yet more delay.[14]

There is no automatic stay applicable here.

## CONCLUSION

The State respectfully requests that the Court grant leave to amend the complaint and grant the State's motion to remand.

---

[13] *Nken* applies to requests to stay remand orders.  *See, e.g.*, *Gonzalez v. El Centro Del Barrio*, No. SA-24-CV-00852-OLG, 2025 WL 522248, at *2 (W.D. Tex. Feb. 7, 2025); *Martin v. LCMC Health Holdings, Inc.*, No. CV 23-411, 2023 WL 5173791, at *1 (E.D. La. Aug. 11, 2023); *Gavert by & through Gavert v. CF Modesto, LLC*, No. 121CV01719AWISKO, 2022 WL 705613, at *1 n.1 (E.D. Cal. Mar. 9, 2022) (collecting federal officer remand cases), *aff'd*, No. 22-15516, 2023 WL 4105203 (9th Cir. June 21, 2023).

[14] *See Gonzalez*, 2025 WL 522248, at *2 ("[P]rolonging the action from proceeding in state court—which is where the action originated—deprive[d] Plaintiff . . . from conducting proceedings that ha[d] been halted for almost a year."); *Maranino v. Cabrini of Westchester*, No. 22-CV-4816 (CS), 2022 WL 17995107, at *2 (S.D.N.Y. Dec. 29, 2022) (denying stay to avoid "additional delay in an already lengthy litigation process"); *Tennessee ex rel. Slatery v. Tennessee Valley Auth.*, No. 3:17-cv-01139, 2018 WL 3092942, at *3 (M.D. Tenn. June 22, 2018) (holding any further delay of six-year-old case involving "time-sensitive data and expert work" would "prejudice the State's evidentiary case").  3M's case law says that when a remand order is reversed on appeal the case may be retrieved from state court, *Forty Six Hundred*, 15 F.4th at 81, which undercuts any claim of prejudice by 3M.

October 14, 2025

Respectfully submitted,

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Laura B. Murphy*
Laura B. Murphy
Assistant Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
laura.murphy@vermont.gov

Matthew F. Pawa
Benjamin A. Krass
Kyle Landis-Marinello
MacKennan Graziano (*pro hac vice*)
Gillian Cowley (*pro hac vice*)
Pawa Law Group, P.C.
1280 Centre Street, Suite 230
Newton Centre, MA  02459

Kyle J. McGee (*pro hac vice*)
Viola Vetter (*pro hac vice*)
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000

16