# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | |
|---|---|
| STATE OF VERMONT, | ) |
| | ) |
| Plaintiff, | ) Case Nos. 2:24-cv-19-MKL and 2:25- |
| | ) cv-660-MKL (lead) |
| v. | ) |
| | ) |
| 3M COMPANY, EIDP, INC., THE CHEMOURS | ) |
| COMPANY, THE CHEMOURS COMPANY FC, | ) |
| LLC, CORTEVA, INC., and DUPONT DE | ) |
| NEMOURS, INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF STATE OF VERMONT'S [PROPOSED] SUPPLEMENTAL**
**MEMORANDUM ADDRESSING RECENT SUPREME COURT DECISIONS**

The State respectfully notifies the Court of three recent Supreme Court decisions that

bear on issues in the State's pending motions: *Hain Celestial Group v. Palmquist*, 607 U.S.__,

146 S. Ct. 724 (2026); *Chevron USA Inc. v. Plaquemines Par., Louisiana*, 608 U.S.__, 146 S. Ct.

1052 (2026); and *Enbridge Energy, LP v. Nessel*, 608 U.S.__, 146 S. Ct. 1074 (2026).

**I.    *Hain***

The parties have disputed whether it is proper for the State to amend its complaint in a

way that is intended to preserve its state court forum by withdrawing the allegations on which

3M based its first removal.  Dkt. 156 at 23 (3M Consolidated Resp. to Mot. to Amend Compl. &

Supp. Mem. ISO Remand); Dkt. 164 at 6-7 (State Reply ISO Mot. to Amend Compl. & Supp.

Mem. ISO Remand).  The dispute centers on whether *Royal Canin U. S. A., Inc. v. Wullschleger*,

604 U.S. 22 (2025), stands for the proposition that a plaintiff may amend its complaint to defeat

federal subject matter jurisdiction, with 3M contending it does not.  But in *Hain*, where the Court

unanimously held that a defendant cannot use Rule 21 to obtain dismissal of a non-diverse co-

defendant against the wishes of a plaintiff that seeks to stay in state court, the Court expressly contrasted this tactic with the plaintiff's "ability to amend the complaint" under *Royal Canin* in a manner that exercises its "right to choose" to be in state court:

> The identity of the party asking for the dismissal is important because "[t]he plaintiff is 'the master of the complaint,'" and generally has the right to choose whether to proceed in federal or state court. *Royal Canin*, 604 U.S. at 35. Dismissing a nondiverse party with the plaintiff's consent is consistent with that right, as is a plaintiff's ability to amend the complaint to "bring the suit either newly within or newly outside a federal court's jurisdiction." *Id.*, at 35-36.

*Hain*, 146 S. Ct. at 733. *Hain* thus supports the State's position on amendment of the Complaint.

## II.    *Chevron*

The State and 3M have disagreed about whether 3M can meet the second prong of federal officer jurisdiction in 3M's first removal, which requires the removing defendant to plausibly allege that the plaintiff's claims are "for or relating to" the defendant's purported conduct under a federal officer. *See* 28 U.S.C. § 1442(a)(1); Dkt. 156 at 11-12; Dkt 164 at 12-13. 3M pointed out that the Supreme Court had granted certiorari in *Chevron* and would hear arguments on the scope of this provision. Dkt. 156 at 11 n.1. The State argued that 3M cannot satisfy the "for or relating to" standard even if *Chevron* were to alter the Second Circuit standard requiring a causal connection. Dkt. 164 at 12-13.

This remains true. *Chevron*'s interpretation of this provision does not help 3M under the facts at issue here. While *Chevron* held that "for or relating to" is not a "strict" causation standard, it rejected a literalist interpretation of "related to," which the Court held would be overbroad:

> [A] removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct.

> The ordinary meaning of "relating to," however, is not so broad that it is meaningless. To be sure, in a literalist sense, everything is related to everything else. But, generally

2

> in statutory interpretation, it is the ordinary, not literalist, meaning that is the better one.
>
> The ordinary understanding of "relating to" requires a connection that is not tenuous, remote, or peripheral.  Ordinary readers would not understand the statement that someone is "related to Joe" to refer to a mutual tie to Adam and Eve.  Nor would they understand the fluttering of a butterfly's wings to "relate to" the next week's weather.  And, in this context, they would not understand the federal officer removal statute to reach all suits with any attenuated connection to federal duties.  For instance, the D. C. Circuit has held that a false-advertising suit targeting an oil company's statements to consumers about the future effects of fossil fuels on climate change did not relate to its decades-earlier production for the Government.

*Chevron*, 146 S. Ct. at 1060-61 (quotation marks, citations, and footnotes omitted).

In *Chevron*, the defendant (Chevron) satisfied the "for or related to" standard because the lawsuit challenged Chevron's oil production methods, including vertical drilling, at a specific oil field that Chevron used to satisfy a federal government contract requiring it to supply refined aviation fuel, and where the government "required production methods that increased crude-oil production, such as vertical drilling." *Id*. at 1058.  Those facts are materially different from the ones here, where (i) even without amendment of the Complaint, contamination from the Rutland Landfill is a tiny fraction of the case and too "peripheral" to support the "relating to" prong, especially given 3M's position on contamination at the Landfill, and (ii) with amendment of the Complaint—disclaiming relief for contamination at or from the Landfill—there is no connection whatsoever, legally or factually.  *See* Dkt. 139 at 14-15 (State Mot. to Remand First Removal); Dkt. 145 at 2-5 (State Supplemental Mem. of Law ISO Mot. to Remand First Removal); Dkt 164 at 8-9, 12-13.

### III.    *Enbridge*

In *Enbridge*, the Supreme Court unanimously held that the statute governing removal does not allow for any judicially created equitable tolling of the 30-day deadline to remove in 28

U.S.C § 1446(b)(1) given the existing, statutory tolling in § 1446(b)(3) and other provisions. 146 S. Ct. at 1082-83. *Enbridge* supports the State on several of the remand issues here.

**First**, *Enbridge* makes clear that 3M was wrong to invoke "equitable exceptions" to the timing requirement for removal. With respect to its first removal, 3M argued that this Court could retain this case if the basis for the first removal (the Rutland Landfill) fell away and "even if" the Court were to hold the second removal (the AFFF removal) untimely. Dkt. 156 at 23-25. 3M contended that the Court would have discretion to consider such an "untimely invoked jurisdictional basis" and pointed out that *Enbridge* would soon decide "whether 28 U.S.C. § 1446 is subject to equitable exceptions." Dkt. 156 at 25. *Enbridge*, however, has now foreclosed any argument that an untimely removal could be cured by equitable tolling.

**Second**, with respect to its second removal, 3M sought to defend its failure to timely file a copy of the state court process, pleadings, and orders by noting that the Second Circuit's decision in *Taylor v. Medtronic, Inc.*, 15 F.4th 148 (2d Cir. 2021)—which requires strict adherence to statutory removal procedures—"may be overtaken" by *Enbridge*. Dkt. 99 at 25 n.7 (3M Opp. to Mot. to Remand Second Removal). However, the Supreme Court's decision leaves intact *Taylor*'s holding that "nothing in the statute provides a court with any discretion to allow a party to cure a failure to meet the statute's requirements once the thirty-day period for removal lapses." 15 F.4th at 153. In fact, like *Taylor*, *Enbridge* found that the statute "speaks in strict, mandatory terms." 146 S. Ct. at 1082. *Enbridge* thus undercuts 3M's attempt to cure its defective Second Notice of Removal after the 30-day removal period lapsed.[1]

---

[1] In *Taylor*, the Supreme Court construed § 1446(b)(1), which requires a defendant to remove within 30 days of receiving certain initial pleadings. The requirement under § 1446(a) to file all "process, pleadings and orders" is expressed in similarly mandatory terms. *See* 28 U.S.C. § 1446(a)(1) ("shall file" specified items). Moreover, 3M failed to file the documents required by § 1446(a) within 30 days, making the issue necessarily one of timeliness under § 1446(b)(1).

***Third***, *Enbridge* has declared that "the 'ascertain[ment]' provision in § 1446(b)(3) functions much like a discovery rule, giving defendants extra time to remove after the date on which they learned *or should have learned* that a case was removable."  146 S. Ct. at 1083 (emphasis added).  This is at odds with 3M's construction of § 1446(b)(3).

The ascertainment provision authorizes removal within 30 days after the defendant receives a paper "from which it may first be ascertained" that the case is removable (if it was not removable at the outset).  28 U.S.C. § 1446(b)(3).  Here, the parties dispute what it means for removability to be "ascertainable."  3M relied in part on *Vermont v. 3M Co.*, 152 F.4th 103 (2d Cir. 2025), to argue that "ascertain" means "find out or learn with certainty" and that the paper in question must provide "'certain[]', *unequivocal* notice" that the case is removable.  Dkt. 99 at 17, 22 (emphasis in original ).[2]  Even before *Enbridge*, *Vermont* did not require notice to 3M of "certain, unequivocal" removability.  Rather, the question was whether the basis for removability could or "could not be found out or learned with certainty," 152 F.4th at 108 (internal quotation marks omitted); and it turned not just on information in the "paper" in question, but on the level of "difficulty" for a defendant to make an "inquiry," including whether information was "within the defendant's ready knowledge and control."  *Id.* (emphasis omitted).

But now, *Enbridge* makes 3M's position on ascertainment even more implausible than it was before.  *Enbridge* says that § 1446(b)(3) operates like the discovery rule, a familiar standard holding that a party "who fails to learn something that a reasonably diligent person would have learned" is charged with knowledge of it.  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178,

---

[2] 3M also relied on *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137 (2d Cir. 2014), but *Cutrone* was specific to the amount-in-controversy requirement of the Class Action Fairness Act, recognizing that defendants should not have to guess information uniquely within plaintiff's control.  Dkt. 130 at 6 (State Reply ISO Mot. to Remand Second Removal).

185 (2020); *see also id.* at 185 n.4 (referencing "common-law 'discovery rule' . . . under which a limitations period begins when 'the plaintiff discovers (or reasonably *should have* discovered) the injury giving rise to the claim'" (emphasis in original) (citation omitted)).   And here it is plain that 3M "learned or should have learned" of its basis for removal—potential AFFF commingling—long before July 2025.[3]  *See* Dkt. 53 at 14-16 (State Mot. to Remand Second Removal) (describing clear notice to 3M many months and even years before Second Notice of Removal that, among other things, PFAS is persistent in environment and can travel long distances in groundwater); Dkt. 130 at 2-6 (similar).  To be clear, and consistent with the State's prior arguments, 3M's basis for removal was ascertainable long ago under *any* reasonable interpretation of "ascertainment"—but now even more so under the *Enbridge* formulation of the standard.[4]

   **Fourth**, consistent with its approach of hewing closely to the statutory text, *Enbridge* stated that the 30-day deadline of § 1446(b)(3) is triggered by "'receipt' of the paper 'from which

---

[3] Potential AFFF commingling remains insufficient to establish an *actual* basis for removal.  Dkt. 53 at 21-25; Dkt. 130 at 7-13.

[4] If the Court were to decide that the outcome of the (b)(3) timeliness issue is different under pre-*Enbridge* law than under *Enbridge*'s "learned or should have learned" standard as applied to the facts here, it would be obliged to follow *Enbridge*.  *See Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007) (affirming district court decision deviating from circuit precedent because of "intervening Supreme Court decision that casts doubt on our controlling precedent" and holding that "the intervening decision need not address the precise issue already decided by our Court" to override contrary circuit precedent); *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (district courts must follow Second Circuit precedent "unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit" (citation and quotation marks omitted)), *aff'd*, (2d Cir. 2017).  A similar rule applies where the precedent in question is law of the case.  *See United States v. Aquart*, 92 F.4th 77, 93 (2d Cir. 2024).  And the Second Circuit also holds that there is an "obligation to accord great deference to Supreme Court *dicta*."  *Clemente v. Lee*, 72 F.4th 466, 474 (2d Cir. 2023) (citation and quotation marks omitted).  That obligation "is particularly compelling" where, as here, the Supreme Court has "addressed one of the [statutory] provisions directly at issue in this case . . . and expressly" interprets it.  *Id.*

it may first be ascertained that the case is . . . removable.'" *Enbridge*, 146 S. Ct. at 1083 (quoting statute). This emphasis on the defendant's "receipt" of the paper in question is at odds with 3M's theory that the paper must come from the plaintiff. To be sure, the Court was not deciding the issue, but its phrasing was notable.

*Finally*, 3M's reading of the statute is inconsistent with the Supreme Court's larger emphasis in *Enbridge* on resolving jurisdictional issues efficiently and expeditiously. To give effect to "Congress's manifest interest in resolving threshold removal questions early and conclusively," *Enbridge* adopted a rule in which "the forum question has been put to rest and the case will proceed in the chosen court" rather than one where "the possibility of a late removal would hang over a case, generating uncertainty and risking significant waste of resources in one forum before a possible belated removal to another." 146 S. Ct. at 1084.

Yet 3M has frustrated the Supreme Court's goal of early and expedited resolution of jurisdictional disputes. For example, in response to the State's motion to amend its complaint to remove from the case the one site on which the first removal was based—a motion that would reduce 3M's liability—3M sought to expand its First Notice of Removal with new, post hoc allegations about supposed off-site contamination from the site in question. *See* Dkt. 156 at 2, 11-12, 15-16; Dkt. 164 at 2-6. And 3M's second removal came six years into the case on the eve of summary judgment, based on a purported AFFF "revelation" in a deposition on July 9, 2025. Dkt. 1-5 at 1 (State's witness "revealed" a "basis" for removal), 2 (similar), 6 ¶ 10 (noting removal was filed within 30 days of "revelation"), 13 ¶ 32 (noting information "was first revealed" on July 9, 2025). When the State moved to remand based on information demonstrating the deep inaccuracy of this statement—because the allegedly "revelatory" information was in fact disclosed to 3M months and even years previously—3M shifted ground

to argue that AFFF removability became ascertainable only later as a result of 3M's own investigation regarding *MilSpec* AFFF specifically.  Dkt. 99 at 22-23.

But this new theory directly contradicted 3M's prior representation that the clock had commenced running with the purportedly revelatory information about MilSpec AFFF on July 9, 2025.[5]  It also contradicts Second Circuit law: "Defendants are permitted to remove outside of these periods *when the time limits of 28 U.S.C. § 1446(b) are not triggered.*"  *Cutrone*, 749 F.3d at 147 (emphasis added).  And to the extent 3M seeks an exception to the § 1446(b)(1) and (3) deadlines with its new theory, the reasoning of *Enbridge* leaves no room for judicially created tolling of the statutory removal scheme.  *See Enbridge*, 146 S. Ct. at 1082 ("This Court has repeatedly held that an explicit listing of exceptions, set forth in a detailed manner, strongly indicates that Congress did not intend courts to read other unmentioned, open-ended, equitable exceptions into the statute that it wrote." (quotation marks omitted)).

3M's removal tactics are profoundly at odds with the principle of efficient forum determination articulated in *Enbridge.*  While the State continues to deal with the widespread environmental and public health implications of defendants' toxic PFAS chemicals, 3M's repeat removals and shifting rationales have caused continued delay in resolution of the State's claims for relief.

---

[5] Dkt. 1-5 at 2-3 ¶ 2 (Second Notice of Removal: "Last week, however, it became clear that the alleged widespread PFAS contamination at issue in this action plausibly has resulted in part from the use, storage, and/or disposal of PFAS-containing aqueous film-forming foams ('AFFF') that 3M and others developed and sold to the U.S. military in accordance with rigorous military specifications ('MilSpec') issued by the Department of Defense ('DOD').");  1-2, 6 ¶ 10 (noting July 9 deposition "was the first clear and unambiguous demonstration of removability based on federal officer jurisdiction related to MilSpec AFFF");  13 ¶ 32 (referencing 30-day deadline and noting that "connection between this case and MilSpec AFFF . . . was first revealed by the State on July 9, 2025").

Dated: May 4, 2026

Respectfully submitted,

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Laura B. Murphy*
Laura B. Murphy
Assistant Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
laura.murphy@vermont.gov

Matthew F. Pawa
Benjamin A. Krass
MacKennan Graziano (*pro hac vice*)
Gillian Cowley (*pro hac vice*)
PAWA LAW GROUP, P.C.
1280 Centre Street, Suite 230
Newton Centre, MA 02459
(617) 641-9550
mp@pawalaw.com
bkrass@pawalaw.com
mgraziano@pawalaw.com
gcowley@pawalaw.com

Kyle J. McGee (*pro hac vice*)
Viola Vetter (*pro hac vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
(302) 622-7000
kmcgee@gelaw.com
vvetter@gelaw.com

9